# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | | |
|---|---|---|
| **ROBERT C. GORDON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **NO. 3:24-cv-01121** |
| | ) | |
| **WILLIAMSON COUNTY SHERIFF'S** | ) | |
| **OFFICE, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

Robert Gordon, an inmate of the Williamson County Jail, filed a pro se civil rights Complaint under 42 U.S.C. § 1983 (Doc. No. 1) and an application for leave to proceed in forma pauperis (IFP). (Doc. No. 2). Plaintiff also filed a motion to appoint counsel. (Doc. No. 5).

This case is before the Court for ruling on Plaintiff's IFP application and for initial review under the Prison Litigation Reform Act (PLRA), 28 U.S.C. § 1915A.

## I. PAUPER STATUS

A prisoner bringing a civil action may be permitted to proceed as a pauper, without prepaying the filing fee. 28 U.S.C. § 1915(a). Because it appears from Plaintiff's IFP application that he lacks the funds to pay the entire filing fee, that application (Doc. No. 2) is **GRANTED** and a $350 filing fee is **ASSESSED**.[1] The fee will be collected in installments as described below.

---

[1] Prisoners bringing civil lawsuits or appeals are "required to pay the full amount of a filing fee," 28 U.S.C. § 1915(b)(1), either in a lump sum at the time of filing or—if pauper status is granted—in installments over time via an assessment against the prisoner's inmate trust account. Where the prisoner is granted pauper status and allowed to pay in installments, the fee is $350. See 28 U.S.C. § 1914(a)–(b) & Dist. Ct. Misc. Fee Schedule, provision 14 (eff. Dec. 1, 2023).

The warden of the facility in which Plaintiff is currently housed, as custodian of his trust account, is **DIRECTED** to submit to the Clerk of Court, as an initial payment, the greater of: (a) 20% of the average monthly deposits to Plaintiff's credit at the jail; or (b) 20% of the average monthly balance to Plaintiff's credit for the six-month period immediately preceding the filing of the Complaint. 28 U.S.C. § 1915(b)(1). Thereafter, the custodian shall submit 20% of Plaintiff's preceding monthly income (or income credited to Plaintiff for the preceding month), but only when the balance in his account exceeds $10. Id. § 1915(b)(2). Payments shall continue until the $350 filing fee has been paid in full to the Clerk of Court. Id. § 1915(b)(3).

The Clerk of Court **MUST** send a copy of this Order to the warden of the facility in which Plaintiff is currently housed to ensure compliance with that portion of 28 U.S.C. § 1915 pertaining to the payment of the filing fee. If Plaintiff is transferred from his present place of confinement, the custodian must ensure that a copy of this Order follows Plaintiff to his new place of confinement, for continued compliance with the Order. All payments made pursuant to this Order must be submitted to the Clerk of Court for the United States District Court for the Middle District of Tennessee, 719 Church Street, Nashville, TN 37203.

## II. INITIAL REVIEW

### A. Legal Standard

In cases filed by prisoners, the Court must conduct an initial screening and dismiss the Complaint (or any portion thereof) if it is facially frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A; 42 U.S.C. § 1997e(c). Review under the same criteria is also authorized under 28 U.S.C. § 1915(e)(2) when the prisoner proceeds IFP.

To determine whether the Complaint states a claim upon which relief may be granted, the

2

Court reviews for whether it alleges sufficient facts "to state a claim to relief that is plausible on its face," such that it would survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). Hill v. Lappin, 630 F.3d 468, 470–71 (6th Cir. 2010) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). At this stage, "the Court assumes the truth of 'well-pleaded factual allegations' and 'reasonable inference[s]' therefrom," Nat'l Rifle Ass'n of Am. v. Vullo, 602 U.S. 175, 181 (2024) (quoting Iqbal, 556 U.S. at 678–79), but is "not required to accept legal conclusions or unwarranted factual inferences as true." Inner City Contracting, LLC v. Charter Twp. of Northville, Michigan, 87 F.4th 743, 749 (6th Cir. 2023) (citation omitted). The Court must afford the pro se Complaint a liberal construction, Erickson v. Pardus, 551 U.S. 89, 94 (2007), while viewing it in the light most favorable to Plaintiff. Inner City, supra.

Plaintiff filed the Complaint under Section 1983, which authorizes a federal action against any person who, "under color of state law, deprives [another] person of rights, privileges, or immunities secured by the Constitution or conferred by federal statute." Wurzelbacher v. Jones-Kelley, 675 F.3d 580, 583 (6th Cir. 2012) (citations omitted); 42 U.S.C. § 1983. The Complaint must therefore plausibly allege (1) a deprivation of a constitutional or other federal right, and (2) that the deprivation was caused by a "state actor." Carl v. Muskegon Cnty., 763 F.3d 592, 595 (6th Cir. 2014).

**B. Allegations and Claims**

Plaintiff effectively filed two complaints at once, the first of which utilizes a civil rights complaint pleading form (Doc. No. 1 at 1–11, 33–34) and the second of which is written in longhand. (Id. at 12–32). On the form, Plaintiff indicates that he sues under Section 1983, claiming "multiple violation[s] of Prison Rape Elimination Act" (PREA). (Id. at 3). He alleges that, on May 12, 2024, "Deputy Aper demanded I masturbate for his sexual gratification while I showered and

he watched. The Deputy admitted to this and resigned. Lindquist, Gray, Youker, Hughes, and Carson were specifically aware of situation, concealed & retaliated, by also stating 'it only happened once.'" (Id. at 6). The form complaint also alleges that, after Plaintiff reported the PREA violation, he was "retaliated against" by being "placed in segregation for over 100 days with no privileges." (Id. at 9). Plaintiff requests $25 million in damages for the emotional trauma he has suffered. (Id.).

The separately captioned, longhand portion of Plaintiff's pleading is styled "Complaint for Violation of the Prison Rape Elimination Act 34 U.S.C. Sections 30301 – 30309." (Id. at 12). It details the statutory and regulatory provisions which set national standards for eliminating sexual abuse and harassment. (Id. at 13–18). It also contains the following additional factual allegations concerning the incident that occurred on May 12, 2024:

> Plaintiff was undressed fully nude in the shower when Deputy Aper approached the shower, where Deputy Aper demanded & instructed the plaintiff to "go fondle yourself" as he stood gazing at the plaintiff licking his lips and making motions to his genitals. The plaintiff asked the deputy to repeat himself. The deputy replied twice instructing the plaintiff loudly for multiple witness[e]s to hear, "Fondle yourself" as the plaintiff was nude in the shower.

(Id. at 20). Plaintiff claims that he was traumatized because he and "any reasonable person would be in fear of being raped in that situation." (Id. at 25).

Plaintiff filed a verbal and written PREA complaint with staff supervisor Cpl. Johnson within an hour of this incident and followed up with another PREA complaint on the jail kiosk two days later, despite being "terrified of retaliation." (Id.). Staff Sergeant Gray and Lt. Lindquist met with Plaintiff on May 14, 2024, and determined that his complaint was not PREA-related and was therefore unsubstantiated. (Id.). The next day, Plaintiff appealed this determination to Captain Chad Youker, who determined on May 21 that "it was not (sexual) harassment because it only was

4

stated one time and not repeated." (Id.). Plaintiff then wrote to "Williamson County's counsel, Lisa Carson Esq.," and explained the incident. (Id.).

Deputy Aper continued working on the same floor of the Jail for another month, until June 15, 2024. (Id.). On May 23, 2024, Plaintiff was placed on "involuntary segregation," which meant that he was on lockdown for 23 hours per day, without access to privileges including religious, educational, and rehabilitative programming. (Id. at 22). He claims that this segregation was in retaliation for his PREA complaint, while Captain Youker documented on the kiosk that Plaintiff was placed in protective custody because he reported being afraid for his safety. (Id.). On June 15, 2024, Youker also documented on the kiosk that "Deputy Aper admitted" to Plaintiff's allegations and "resigned for personal reasons." (Id.). The next day, June 16, 2024, Plaintiff began filing requests and grievances seeking to be removed from segregation, but such relief was denied by Gray, Youker, and Lindquist until August 20, 2024, when Plaintiff was returned to general population. (Id. at 22–23).

Plaintiff sues the Williamson County Sheriff's Office, Youker, Lindquist, Aper, Gray, Hughes, and Carson. (Id. at 2–4). He claims that Youker, Lindquist, Gray, and Carson "are equally culpable as Deputy Aper for their gross negligence and deliberate indifference which escalated into a full blown retaliatory attack on the plaintiff." (Id. at 26). He alleges that these defendants "were aware of the sexual abuse, harassment, and voyeurism and made a deliberate choice to conceal the violation" during the grievance process. (Id.).

**C. Analysis**

1. Claims based on sexual harassment

To the extent that the Complaint asserts a violation of Plaintiff's federal rights under the PREA, it fails to state a colorable claim. While the PREA sets standards directed at eliminating

5

prison rape and related misconduct, it does not provide for a private cause of action, as found by the district court in Montgomery v. Harper, No. 5:14CV-P38-R, 2014 WL 4104163 (W.D. Ky. Aug. 19, 2014):

> Although not addressed in the Sixth Circuit, district courts have found that the PREA does not create a private cause of action which can be brought by an individual plaintiff. *Good v. Ohio Dep't of Rehab. & Corr.,* No. 2:11–cv–00857, 2011 U.S. Dist. LEXIS 127558, at *5 (S.D. Ohio Nov. 3, 2011). *See also Pope v. Oregon Dep't of Corr.,* No. 3:10–cv–00632–KI, 2012 U.S. Dist. LEXIS 71218, * 4, 2012 WL 1866601 (D. Or. May 22, 2012) ("[I]t is well established that there is no private right of action under PREA.") (citing *Porter v. Jennings,* No. 1:10–cv–01811–AWI–DLB PC, 2012 U.S. Dist. LEXIS 58021, at *1, 2012 WL 1434989 (E.D. Cal. Apr. 25, 2012) (citing numerous cases)); *LeMasters v. Fabian,* Civil No. 09–702 DSD/AJB, 2009 U.S. Dist. LEXIS 53016, at *2, 2009 WL 1405176 (D. Minn. May 18, 2009) (PREA "does not create a right of action that is privately enforceable by an individual civil litigant."). "The PREA is intended to address the problem of rape in prison, authorizes grant money, and creates a commission to study the issue.... The statute does not grant prisoners any specific rights." *Chinnici v. Edwards,* No. 1:07–cv–229, 2008 U.S. Dist. LEXIS 61460, at *3, 2008 WL 3851294 (D. Vt. Aug. 12, 2008) (quoting *Gonzaga Univ. v. Doe,* 536 U.S. 273, 280, 122 S.Ct. 2268, 153 L.Ed.2d 309 (2002)); *Jones v. Schofield,* No. 1:08–CV–7 (WLS), 2009 WL 902154, at *2 (M.D. Ga. Mar. 30, 2009).

Montgomery, at *2; see also, e.g., Montiel v. Johnson, No. 1:25-CV-122, 2025 WL 807756, at *10 (W.D. Mich. Mar. 14, 2025) (finding that inmate alleging sexual harassment while in jail "has no independent cause of action for any [individual's] failure to comply with the [PREA]") (citation omitted). The Complaint thus fails plausibly to claim entitlement to relief based on the statutory standards of the PREA.

Nevertheless, the Court liberally construes the Complaint to assert a constitutional claim based on Aper's sexual harassment and the other Defendants' response to Plaintiff's written and kiosk complaints. (See Doc. No. 1 at 13, 23 (referring to Eighth Amendment prohibition of punishment that is "cruel and unusual")). Because he is a pretrial detainee, Plaintiff's right to be free from harassment that amounts to punishment arises from the Fourteenth Amendment's Due Process Clause. See Phillips v. Roane Cnty., Tenn., 534 F.3d 531, 539 (6th Cir. 2008) (finding that

"the Due Process Clause of the Fourteenth Amendment is the proper starting point" for evaluating a pretrial detainee's claim of cruel and unusual punishment) (citing City of Revere v. Mass. Gen. Hosp., 463 U.S. 239, 244 (1983) ("[T]he due process rights of a [pre-trial detainee] are at least as great as the Eighth Amendment protections available to a convicted prisoner.")). Such claims were traditionally required to satisfy both objective and subjective criteria, but the standard for analyzing a detainee's claim involving physical contact—including a claim for sexual assault/abuse involving physical contact, which the Sixth Circuit views as an excessive force claim, see Hale v. Boyle Cnty., 18 F.4th 845, 852–53 (6th Cir. 2021)—was modified by the Supreme Court's decision in Kingsley v. Hendrickson, 576 U.S. 389 (2015). Kingsley eliminated the subjective component of an excessive force claim asserted by a pretrial detainee, holding that the detainee "must show only that the force purposely or knowingly used against him was objectively unreasonable." Id. at 396–97. However, a detainee's claim of sexual misconduct that does *not* involve physical contact is still analyzed using both objective and subjective standards, to determine whether the misconduct posed "a substantial risk of serious harm" (the objective standard) and whether the defendants who perpetrated or responded to the misconduct acted "deliberately (not accidentally), [and] also recklessly in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known" (the subjective standard). Montiel, 2025 WL 807756, at *8 (quoting Farmer v. Brennan, 511 U.S. 825, 834 (1994); Brawner v. Scott Cnty., 14 F.4th 585, 596 (6th Cir. 2021)).

Here, Plaintiff's claim based on sexual harassment did not involve physical contact. Although "[f]ederal courts have long held that sexual abuse is sufficiently serious" to satisfy the objective component of a claim of cruel and unusual punishment, Rafferty v. Trumbull Cnty., Ohio, 915 F.3d 1087, 1095 (6th Cir. 2019), abuse or harassment that is merely verbal must also be

7

ongoing and/or coercive in order to rise to the requisite level of objective seriousness, i.e., the level at which the verbal harassment can be said to pose a substantial risk of serious harm to Plaintiff. See id. (noting that "isolated, brief, and not severe" instances of sexual harassment had been held not sufficiently serious, citing Jackson v. Madery, 158 F. App'x 656, 662 (6th Cir. 2005), but finding that plaintiff's compliance with guard's demands that she expose her breasts and masturbate while he watched "on up to six occasions" was not "isolated, brief, and [non-]severe").

Construing the Complaint liberally and drawing all reasonable inferences from its allegations in Plaintiff's favor, the Court finds that it plausibly claims that Plaintiff was naked in the showers with no one else in close proximity; that Deputy Aper told him to masturbate for Aper's sexual gratification and twice repeated this demand; and that Plaintiff complied while Aper gazed at Plaintiff, licked his lips, and made motions to his genitals, in apparent enjoyment of Plaintiff's actions. (Doc. No. 1 at 20). This took place on May 12, 2024, and for more than 30 days—until June 15, 2024—Aper "flaunted" his abuse of Plaintiff on May 12 every day. (Id. at 21). Aper admitted his behavior when he resigned. For purposes of initial review, these allegations are sufficient to establish the objective and subjective components of Plaintiff's Fourteenth Amendment sexual harassment claim, both as to Deputy Aper and as to the Defendant officials (Youker, Lindquist, Aper, Gray, Hughes, and Carson) who are alleged to have been involved in the cover-up of Aper's abuse while allowing Aper to continue working in close proximity to Plaintiff. This claim will proceed for further development.

However, Plaintiff's claim against the Williamson County Sheriff's Office (WCSO) cannot proceed, nor could the County itself be held liable for Plaintiff's injuries at the hands of County officials. It is well established that county sheriff's offices and city police departments are not suable under Section 1983, and that the municipality itself cannot be liable unless the plaintiff's

injuries resulted from the application of a municipal policy or custom. E.g., Berry v. Delaware Cnty. Sheriff's Off., 796 F. App'x 857, 860 (6th Cir. 2019); Matthews v. Jones, 35 F.3d 1046, 1049 (6th Cir. 1994). Plaintiff does not allege that any Williamson County policy or custom caused his injuries. The Court will dismiss the WCSO as a Defendant to this case.

2. Retaliation claim

Plaintiff claims that his placement in involuntary segregation from May 23 to August 20, 2024, was in retaliation for lodging his complaints under the PREA. (Doc. No. 1 at 22). Plaintiff filed his PREA complaints on May 12 and 14, 2024 and they were denied on May 14 by Defendants Gray and Lindquist. (Id. at 21). Plaintiff then appealed on May 15 to Defendant Youker, who denied the appeal on May 21. (Id.). On May 23, Plaintiff was placed in segregation "in Pod 305," "the sexual predator [and] child molester/sex crime pod," "on 23 hours lockdown per day with all sexual offenders of the jail." (Id. at 22).

To establish a claim of First Amendment retaliation, "a prisoner must prove that (1) he engaged in protected conduct, (2) the defendant took an adverse action that is capable of deterring a person of 'ordinary firmness from continuing to engage in that conduct,' and (3) 'the adverse action was motivated at least in part by the [prisoner's] protected conduct.'" Hill v. Lappin, 630 F.3d 468, 472 (6th Cir. 2010) (quoting Thaddeus-X v. Blatter, 175 F.3d 378, 394, 398 (6th Cir. 1999) (en banc)). For purposes of initial review, the Court finds it plausibly alleged that Plaintiff's filing of PREA complaints/grievances was protected conduct, and that placement in segregation was sufficiently adverse action. See id. at 472, 474 (finding, at PLRA screening stage, that grievances "for being abusive" are protected conduct, and restriction to segregated housing is adverse action). The causal connection element presents a closer question.

9

"[C]ausation in retaliatory claims may really be considered a two-part inquiry: A plaintiff must show both (1) that the adverse action was proximately caused by an individual defendant's acts, but also (2) that the individual taking those acts was motivated in substantial part by a desire to punish an individual for exercise of a constitutional right." King v. Zamiara, 680 F.3d 686, 695 (6th Cir. 2012) (internal citations and quotation marks omitted). According to the Complaint, Plaintiff first complained of Deputy Aper's misconduct on the jail kiosk on May 14, 2024, and that same day Defendants Gray and Lindquist informed him that the complaint was unsubstantiated. He appealed that determination to Defendant Youker, who replied on May 21 that Aper's conduct did not qualify as sexual harassment "because it only was stated one time and not repeated." (Doc. No. 1 at 21). On May 23, 2024, nine days after Gray and Lindquist's initial denial of his grievance and two days after Youker's denial of his appeal, Plaintiff was placed in segregated confinement. This timeline does not support a finding of "suspicious temporal proximity" between Plaintiff's *initial* grievance and the alleged retaliatory action, Maben v. Thelen, 887 F.3d 252, 268 (6th Cir. 2018), but the proximity between the action and the denial of his appeal by Youker is arguably suspicious. That proximity, combined with Plaintiff's one additional, pertinent allegation that "Captain Youker stated, 'I'm placing you in [protective custody] because you stated you are in fear for your safety'" (Doc. No. 1 at 22), is sufficient for purposes of initial review to support a plausible claim that Youker took the adverse action to punish Plaintiff for his persistence in pursuing the PREA complaint. See King, 680 F.3d at 695. Accordingly, Plaintiff's First Amendment retaliation claim survives initial review and will proceed for further development against Defendant Youker.

10

### III. CONCLUSION

As explained above, the Complaint in this case will be allowed to proceed[2] against all Defendants other than the Williamson County Sheriff's Office, which is hereby **DISMISSED** from this action.

The Clerk is **DIRECTED** to send Plaintiff a service packet (a blank summons (AO 440) and USM 285 form) for each of the remaining defendants. Plaintiff **MUST** complete the service packets and return them to the Clerk's Office within **30 DAYS** of the entry of this Order. Failure to do so may result in the dismissal of this case. Upon return of the properly completed service packets, the Clerk is **DIRECTED** to issue summonses to the U.S. Marshals Service for service on the defendants. Fed. R. Civ. P. 4(b) and (c)(3).

This action is **REFERRED** to the Magistrate Judge to oversee service of process, to enter a scheduling order for the management of the case, to dispose or recommend disposition of any pretrial motions under 28 U.S.C. §§ 636(b)(1)(A) and (B), and to conduct further proceedings, if necessary, under Rule 72(b) of the Federal Rules of Civil Procedure and the Local Rules of Court.

Finally, with the case in the pleading stage, Plaintiff's motion for appointment of counsel (Doc. No. 5) is **DENIED** as premature, without prejudice to his ability to refile such a motion after process is served.

IT IS SO ORDERED.

_____
WAVERLY D. CRENSHAW, JR.
UNITED STATES DISTRICT JUDGE

---

[2] The Court's determination that the Complaint states colorable claims for purposes of this initial screening does not preclude the Court from dismissing any claim at any time for the reasons set forth in 28 U.S.C. § 1915(e)(2), nor does it preclude any Defendant from filing a motion to dismiss any claim under Federal Rule of Civil Procedure 12.