| | |
|---|---|
| ROBERT C. GORDON, <br><br> Plaintiff, <br><br> v. <br><br> WILLIAMSON COUNTY SHERIFF'S OFFICE, CHAD YOUKER, ASHLEY LINDQUIST, f/n/u APER, CHRIS GRAY, JEFF HUGHES, and LISA CARSON, ESQ., <br><br> Defendants. | Case No. 3:24-cv-01121 <br><br> Judge Waverly D. Crenshaw, Jr. <br> Magistrate Judge Luke A. Evans |

To:     The Honorable Waverly D. Crenshaw, Jr., District Judge

## REPORT AND RECOMMENDATION

Pending before the Court are multiple motions, including Defendant Lisa Carson's motion to dismiss (Doc. No. 18), motion to stay the proceedings until resolution of her motion to dismiss (Doc. No. 28), and motion to strike pro se Plaintiff Robert Gordon's "objection" to Carson's motion to stay (Doc. No. 42). Gordon opposes Carson's motions and they are ripe for consideration.

For the reasons that follow, the Magistrate Judge will recommend that Carson's motion to dismiss be granted and Gordon's claim against Carson be dismissed. Accordingly, Carson's motion to stay and motion to strike should be denied as moot.

## I.     Background

### A.     Factual Background

At the time of the events underpinning his complaint, Gordon was a pretrial detainee being held at the Williamson County jail. (Doc. No. 1.) Gordon alleges that, on May 12, 2024, he was showering when Williamson County Sheriff's Office ("WCSO") Deputy f/n/u Aper "demanded

[Gordon] masturbate for [Aper's] sexual gratification and he watched." (*Id.* at 6.) Gordon later states in his complaint that Aper "instructed the Plaintiff to 'go fondle [him]self' as [Aper] stood gazing at the Plaintiff[,] licking his lips[,] and making motions to his genitals." (*Id.* at 20.) As a result of the alleged incident, Gordon states that he requested mental healthcare because he experienced "severe [Post-traumatic stress disorder], anxiety, emotional distress, thoughts of suicide, and depression" but that WCSO Defendants refused his request. (*Id.* at 6.)

Despite Gordon allegedly filing multiple grievances, requests, and appeals, Aper maintained his employment and continued to work on the first floor of the jail where Gordon was housed from May 12, 2024, until June 15, 2024. (Doc. No. 1.) Gordon also states that he was placed in involuntary segregation on or about May 23, 2024. (*Id.*) While Gordon's timeline is somewhat confusing, he alleges that he faced a continuous threat of sexual abuse at Aper's hands during this period. (*Id.*) In light of this threat, Gordon states that he "contacted [WCSO's] counsel Lisa Carson Esq. [and] explained in writing the situation with Deputy Aper." (*Id.* at 21.) Nevertheless, Aper remained employed for some length of time. (Doc. No. 1.) Gordon does not state when Aper left his position with the WCSO, but he asserts that Defendant Youker notified him of Aper's resignation on or about June 15, 2024. (*Id.*)

### B. Procedural History

Prior to filing the instant civil rights action, Gordon states that he utilized the administrative grievance process to report Aper's behavior. (Doc. No. 1.) On the same day as the alleged incident, Gordon states that he filed a "'PREA' complaint" with WCSO staff supervisor "Corporal Johnson[.]" (Doc. No. 1 at 21.) Gordon alleges that his initial grievance was reviewed and denied as "not PREA related" and "unsubstantiated." (*Id.* at 21.) Between June and August 2024, Gordon claims that he filed numerous requests and grievances to be returned to general population, to receive mental health treatment or assistance due to the purported harassment, and for a resumption

2

of inmate privileges. (Doc. No. 1.) He also states that all of his requests were subsequently denied by the WCSO staff. (*Id*. at 22–23.) Once Gordon felt he had exhausted the internal grievance process, he contacted Carson, who Gordon understood to be WCSO's counsel during the relevant time, and "explained in writing the situation with . . . Aper." (*Id.* at 21.) At times in his complaint, Gordon alleges that Carson failed to act despite being informed of the conduct, while at other times he accuses Carson of being involved in a "cover up" of Aper's abuses. (Doc. No. 1.)

Gordon filed the instant civil rights action on September 17, 2024, and applied to proceed *in forma pauperis* ("IFP") (Doc. Nos. 1, 2.) As relevant for the instant motion, Gordon's complaint implicates Carson in the purported violation of his rights through "gross negligence and deliberate indifference which escalated into a full blown retaliatory attack" on Gordon. (*Id.* at 26.) Explaining further, Gordon claims that the named defendants, including Carson, "made a deliberate choice to conceal" the alleged misconduct. (*Id*.) Elsewhere in his complaint, Gordon appears to argue that Carson, in collaboration with the other named defendants, aided or attempted to aid in Aper's alleged criminal conduct. (*Id.*) Gordon's complaint concludes by stating that "the co-defendants attempted to facilitate . . . further crimes by isolating the plaintiff and making coordinated efforts to conceal the abuse." (*Id.* at 29.)

Due to Gordon's status as a pro se and IFP litigant held in pretrial detention, the Court was obligated to conduct an initial screening of his complaint consistent with 28 U.S.C. §§ 1915(e)(2) and 1915A. (Doc. No. 10.) As relevant for this Report and Recommendation, the Court found that Gordon had pled one facially plausible claim of the cruel and unusual punishment of a pretrial detainee in violation of the Fourteenth Amendment against Carson for allegedly "be[ing] involved in the cover-up of Aper's abuse while allowing Aper to continue working in close proximity to Plaintiff." (*Id.* at 8.)

In response to the Court's determination at the screening stage, and in lieu of filing an answer, Carson filed the instant motion to dismiss for failure to state a claim upon which relief may be granted under Federal Rule of Civil Procedure 12(b)(6). (Doc. No. 18.) Gordon responded in opposition to the motion on December 19, 2025. (Doc. No. 24.) While Carson's motion was pending, Gordon filed a motion requesting the production of a broad array of documents. (Doc. No. 27.) In response, Carson filed a motion to stay the proceedings until resolution of her motion to dismiss because Gordon's discovery request is burdensome and disproportional to the needs of the case. (Doc. No. 28.) Gordon filed in opposition to Carson's motion to stay on February 18, 2026 (Doc. No. 39), and Carson subsequently filed a motion to strike Gordon's filing or, in the alternative, to allow Carson to file a sur-reply (Doc. No. 42).

On March 12 and 13, 2026, Gordon filed a motion for leave to amend his complaint (Doc. No. 46)[1] and a motion to compel the defendants to disclose Defendant Aper's contact information (Doc. No. 47), respectively. The WCSO Defendants jointly filed a response in opposition to Gordon's motion on March 26, 2026, and Carson joined in that response. (Doc. No. 52.) The WCSO Defendants later filed a motion for judgment on the pleadings on March 26, 2026 (Doc. No. 55), to which Carson joined to state the following:

> Carson joins the motion for Judgment on the Pleadings because the exhibits attached to the Williamson County Defendants' Amended Answer refute the allegations in the Complaint and the Amended Complaint. However, Carson maintains her arguments in her Motion to Dismiss, and that that Motion to Dismiss should be granted on the merits.

(Doc. No. 56 at 1).

---

[1]    Gordon's motion for leave to file a first amended complaint and related motions are addressed by separate order.

## II. Legal Standard

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff." *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016). Federal Rule of Civil Procedure 8(a)(2) requires only that a complaint contain "a short and plain statement of the claim[.]" Fed. R. Civ. P. 8(a)(2). However, "[t]he factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible, i.e., more than merely possible." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). A plaintiff must plead more than "'labels and conclusions[,]'" "'a formulaic recitation of the elements of a cause of action[,]'" or "'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (third alteration in original) (quoting *Twombly*, 550 U.S. at 555, 557). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Because Gordon appears pro se, the Court construes his filings "'liberally'" and holds his complaint "'to less stringent standards than formal pleadings drafted by lawyers[.]'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). "However, this lenient treatment has limits." *Frengler v. Gen. Motors*, 482 F. App'x 975, 976 (6th Cir. 2012). "[C]ourts are not required to conjure up unpleaded allegations or guess at the nature of an

5

argument." *Brown v. Cracker Barrel Rest.*, 22 F. App'x 577, 578 (6th Cir. 2001) (citing *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)).

**III.    Analysis**

In moving for dismissal, Carson argues that Gordon's Fourteenth Amendment claim necessarily fails because she is not a state actor for purposes of § 1983. (Doc. No. 19.) If the Court determines otherwise, Carson argues that the claim must still fail because she is entitled to qualified immunity. (*Id.*) In response, Gordon states in conclusory fashion that Carson "serv[ed] as a state agent [and] officer of the court" and that Carson "is considered a 'government employee' . . . acting under the color of law in this context." (Doc. No. 24 at 3.) Due to Carson's purported status as a state actor, according to Gordon, she is not entitled to qualified immunity because her responses to Gordon's internal complaints and grievances violated his constitutional rights that were clearly established at the time the misconduct allegedly occurred. (Doc. No. 24.) The Court notes that Gordon's response also levies a number of assertions attempting to show Carson's role in the purported violations of his First and Eighth Amendment rights. (*Id.*) However, the Court already explained that the sole claim to be considered against Carson is for sexual harassment as cruel and unusual punishment arising under the Due Process Clause of the Fourteenth Amendment. (Doc. No. 10.) As a result, the Court's analysis is restricted to arguments on that question.

**A.    Section 1983**

"Section 1983 creates a federal cause of action against state or local officials who deprive a person of a federal right while acting under the color of state law." *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). To establish § 1983 liability against a defendant in his or her individual capacity, "a plaintiff must (1) identify a right secured by federal law or the United States Constitution, and (2) demonstrate a deprivation of that right by a person acting under

6

color of state law." *Kelly v. Moose*, No. 3:12–cv–01339, 2013 WL 141132, at *1 (M.D. Tenn. Jan. 10, 2013) (citing West v. Atkins, 487 U.S. 42, 48 (1988)).

As it applies to Carson in her individual capacity, Gordon must plead sufficient facts showing she "acted under the color of state law[,]" *Fritz v. Charter Twp. Of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010), and that her conduct "deprived [him] of rights secured under federal law." *Id.* Gordon's complaint alleges that, after Aper's purported harassment and the WCSO Defendants' alleged refusal to take action, Gordon wrote to Carson in her capacity as WCSO's counsel to report the incident and Aper's alleged violation of Gordon's rights. (Doc. No. 1.) Gordon then states that "the co-defendants[,]" which the Court construes to include Carson, ". . . made a deliberate choice to conceal the violation . . . ." (Doc. No. 1 at 26.) Gordon adds the following regarding Carson's alleged role in the misconduct:

D. What are the facts underlying your claim(s)? *(For example: What happened to you? Who did what? Was anyone else involved? Who else saw what happened?)*

DEPUTY APER DEMANDED I MASTURBATE FOR HIS SEXUAL GRATIFICATION WHILE I SHOWERED AND HE WATCHED. THE DEPUTY ADMITTED TO THIS AND RESIGNED.
LINDQUIST, GRAY, YOUKER, HUGHES, AND CARSON WERE SPECIFICALLY AWARE OF SITUATION, CONCEALED & RETALIATED, BY ALSO STATING "IT ONLY HAPPENED ONCE"

CAPTAIN YOUKER, SGT GRAY, LT LINDQUIST, SHERIFF HUGHES, AND LISA CARSON, ESQ ACTED WITH INTENT TO PROMOTE & ASSIST THE COMMISSION OF THE OFFENSE, OR TO BENEFIT OR RESULTS OF THE OFFENSE BY AIDING OR ATTEMPTING TO AIDE THE FUTHERANCE OF THE OFFENSE, BY ACTING WITH THE CULPABILITY REQUIRED OR AIDS A PERSON TO ENGAGE IN CONDUCT, BY HAVING DUTY IMPOSED BY LAW TO PREVENT COMMISSION OF THE OFFENSE AND ACTING

> WITH INTENT OR FAILS TO MAKE A REASONABLE EFFORT TO
> PREVENT COMMISSION OF THE OFFENSE.
>
> HERE, THE CO-DEFENDANTS ATTEMPTED TO FACILITATE TO FURTHER
> CRIMES BY ISOLATING THE PLAINTIFF AND MAKING COORDINATED
> EFFORTS TO CONCEAL THE ABUSE.

(*Id.* at 6, 28–29.)

The Court will first examine Gordon's complaint to determine whether he has pled sufficient facts to plausibly show Carson is a state actor for purposes of § 1983.

### 1. State Actor

In contesting Gordon's claim, Carson raises multiple arguments. First, Carson contends that, because she is a private party employed by a private law firm, she is not a state actor for purposes of § 1983, even if she represents the WCSO. (Doc. No. 19.) Carson asserts that, even where Gordon's factual and non-conclusory allegations must be considered true, his complaint at most shows that the complained of conduct arose where Carson was allegedly aware of an instance of sexual harassment and either acted to conceal the harassment or took affirmative steps to "flaunt" Aper's impunity. (*Id.*) Carson also argues that Gordon has failed to sufficiently plead facts showing that she conspired with the WCSO Defendants to deprive Gordon of his rights. (*Id.*)

In opposing the instant motion to dismiss, Gordon takes two contradictory positions. First, he states in conclusory fashion that Carson was "serving as a state agent and officer of the court" during the alleged misconduct. (Doc. No. 1 at 2.) In furthering this assertion, Gordon argues that "if Ms. Carson is entitled to rights of an attorney, 'retained by the government to carry out government business[–]that is[,] retained to perform a government function[–then she] is entitled to the same qualified immunity as a government employee.'" (Doc. No. 24 at 3 (citing *Filarsky v.*

*Delia*, 566 U.S. 377 (2012).) In the following paragraph, however, Gordon states unequivocally that "Ms. Carson is a private attorney and not entitled to qualified immunity." (*Id.* at 4.)

### a. Public Function Test

Although Gordon does not explicitly say so, he invokes the "public function test" that the Sixth Circuit uses to determine whether a private individual acts under the color of state law for the purposes of § 1983 liability. *Webb v. Verizon Wireless Crossville, Tenn.*, No. 3:25-cv-00022, 2025 WL 1828634, at *2 (M.D. Tenn. July 1, 2025) (explaining that "a private party is deemed a state actor if [s]he exercises the powers traditionally and exclusively held by the state.") Under this test, a defendant's conduct is "fairly attributable to the state" where she "exercise[s] powers traditionally reserved exclusively to the state." *Id.*; *see also Chapman v. Higbee Co.*, 319 F.3d 825, 833 (6th Cir. 2003) (internal citations omitted). However, courts have concluded that "[t]he public function test has been interpreted narrowly[ ]" and only applies to functions such as holding elections, exercising eminent domain, and operating company-owned towns. *Chapman*, 319 F.3d at 833–34. Nothing in Gordon's allegations suggests Carson engaged in any of these recognized public functions and she is not a state actor under this theory.

### b. Alternative Tests

The Sixth Circuit also employs two alternatives to the public functions test for determining whether a private party is a state actor. An individual may be considered a state actor if either the "state compulsion test" or the "symbiotic relationship or nexus test" is satisfied. *Id.* at 833. In order to be a state actor under the state compulsion test, it is necessary "that a state exercise such coercive power or provide such significant encouragement, either overt or covert, that in law the choice of the private actor is deemed to be that of the state." *Wolosky v. Huhn*, 960 F.2d 1331, 133 (6th Cir. 1992). "Under the symbiotic or nexus test," the Sixth Circuit has explained, "a section 1983 claimant must demonstrate that there is a sufficiently close nexus between the government and the

9

private party's conduct so that the conduct may be fairly attributed to the state itself." *Chapman*, 319 F.3d at 834 (citing *Wolosky*, 960 F.2d at 1336).

Gordon has not sufficiently pled facts that, taken as true as required at the motion to dismiss stage, *Iqbal*, 556 U.S. at 681, show Carson is a state actor under either theory. As to Carson, the complaint states that she and the WCSO Defendants "made a deliberate choice to conceal [Aper's alleged actions] on every facet of the internal grievance process[ ]" and that she acted in such a way as to "promote and assist the commission of the offense . . . ." (Doc. No. 1 at 6, 28.) Nothing in Gordon's allegations alleges that the state compelled Carson to take any action and thus the second test is not met. Nor do Gordon's allegations satisfy the fact-specific question of whether Carson's conduct was sufficiently "'entwined with government policies or the government [wa]s entwined in [Carson's] management or control.'" *Webb*, 2025 WL 1828634, at *3 (quoting *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)).

Gordon has not met his burden of showing that Carson's conduct is attributable to the state under any of the three tests. Therefore, the Court cannot find that Gordon's allegations support his position that Carson is a state actor for purposes of his § 1983 claim.

### c.      Remaining Arguments

Nor is Carson a state actor, as Gordon asserts, simply because she is an officer of the court. The Supreme Court concluded that "a lawyer representing a client is not, by virtue of being an officer of the court, a state actor 'under the color of state law' within the meaning of § 1983." *Polk Cnty. v. Dodson*, 454 U.S. 312, 318 (1981) (footnotes omitted). Generally, the Sixth Circuit has understood this to mean that "[p]rivate attorneys are not considered to be state actors for purposes of § 1983." *Cudejko v. Goldstein*, 22 F. App'x 484, 485 (6th Cir. 2001). Finally—and without weighing the merits or viability of his argument—the Court finds that Gordon's allusions to Carson being in a conspiracy with the WCSO Defendants to violate Gordon's rights fail as a matter of

law. The Sixth Circuit and courts therein have explained that "[a]n attorney representing a client cannot 'conspire' within the attorney-client relationship." *Horen v. Bd. of Educ. of Toledo City Sch. Dist.*, 594 F. Supp. 2d 833, 842 (N.D. Ohio 2009) (citing *Doherty v. Am. Motors Corp.*, 728 F.2d 334, 339–40 (6th Cir. 1984).

After considering Gordon's factual allegations regarding Carson's alleged role in the violation of his rights, the Court finds that Gordon has failed to sufficiently plead facts demonstrating Carson plausibly acted under the color of state law for purposes of his § 1983 claim. Because he has not shown she is a state actor, she cannot be held liable for an alleged constitutional violation. *See Webb*, 2025 WL 1828634, at *2 (stating that a private party acting on her own cannot deprive a citizen of federal constitutional rights). Accordingly, the Court finds it unnecessary to consider the parties' arguments regarding qualified immunity or municipal liability. Gordon's lone Fourteenth Amendment claim against Carson should be dismissed.

## IV.     Recommendation

For the foregoing reasons, the Magistrate Judge **RECOMMENDS** that Defendant Lisa Carson's motion to dismiss (Doc. No. 18) be **GRANTED** and Plaintiff Robert Gordon's cruel and unusual punishment claim be **DISMISSED**. Because the Magistrate Judge recommends dismissal of Carson as a defendant, it is further **RECOMMENDED** that Carson's motion to stay the proceedings (Doc. No. 28) and motion to strike Gordon's response to that motion (Doc. No. 42) be **DENIED AS MOOT**.

Any party has fourteen days after being served with this Report and Recommendation to file specific written objections. Failure to file specific objections within fourteen days of receipt of this Report and Recommendation can constitute a waiver of appeal of the matters decided. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004).

A party who opposes any objections that are filed may file a response within fourteen days after being served with the objections. Fed. R. Civ. P. 72(b)(2).

Entered this 29th day of April, 2026.

_____
LUKE A. EVANS
United States Magistrate Judge