| | | |
|---|---|---|
| **ROBERT C. GORDON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:24:CV-1121** |
| | ) | |
| **WILLIAMSON COUNTY SHERIFF'S** | ) | **Judge Waverly D. Crenshaw, Jr.** |
| **OFFICE, CHAD YOUKER, ASHLEY** | ) | **Magistrate Judge Luke A. Evans** |
| **LINDQUIST, f/n/u APER, CHRIS GRAY,** | ) | |
| **JEFF HUGHES, and LISA CARSON,** | ) | **JURY DEMAND** |
| | ) | |
| **Defendants.** | ) | |

**WILLIAMSON COUNTY DEFENDANTS' RESPONSE TO THE PLAINTIFF'S
EMERGENCY MOTION FOR TEMPRORARY RESTRAINING ORDER AND
PRELIMINARY INJUNCTIONS AND SUPPORTING MEMORANDUM**

Comes now, pursuant to LR 7.01, Captain Chad Youker, Lieutenant Ashley Lindquist,

Sergeant Chris Gray, and Sheriff Jeff Hughes (collectively, the "Williamson County Defendants"

or "these Defendants"), by and through undersigned counsel, and submit this Response and

Memorandum of Law in Opposition to the Plaintiff's "Emergency Motion Ex-Parte TRO,

Memorandum of Law, Emergency Motion for TRO & Preliminary Injunction" (DE 74).

## I.     Relevant Procedural Background

On April 29th, 2026, one Memorandum Order (DE 64) and two Reports and

Recommendations (DEs 65, 66) were filed in this matter. The Memorandum Order granted the

Plaintiff's Motion for Leave to File a First Amended Complaint (DE 46), denied as moot the

Williamson County Defendants' Motion for Judgment on the Pleadings (DE 55), and denied

certain of the Plaintiff's discovery motions (DEs 27, 32, & 47).

1

The first Report and Recommendation (DE 65) recommended that Defendant Lisa Carson's Motion to Dismiss (DE 18) be granted and that Carson's Motion to Stay Proceedings (DE 28) and Motion to Strike Gordon's Response to that Motion (DE 42) be denied as moot.

The second Report and Recommendation recommended that the Plaintiff's Emergency Motion for Injunctive Relief (DE 30) be denied and that Defendant Lisa Carson's Motion to Strike Gordon's Reply (DE 42) be denied as moot. Those three documents addressed nearly all the pending matters before the Court in this case at that time.

However, the Plaintiff has since filed a bevy of Motions with the Court since April 29th, 2026 (DE 68, DE 70, DE 71, DE 74, DE 76, DE 78, DE 79, and DE 80). Most material to this Response are DEs 68, 70, 71, and 74, which all request the same or similar equitable remedies from this Court, all of which pertain to the Plaintiff's access to non-legal and legal mail while detained and his removal, at times, from the Williamson County Jail's general population. One of the Plaintiff's Motions for Temporary Restraining Orders and Preliminary Injunctions (DE 74) contains all but precisely the same language contained in two earlier motions (DEs 70, 71), but combined in that document. Specifically, see that DE 74 is approximately the same as DE 71 until Page ID 1104, and then approximately the same as DE 70 until Page ID 1126.

The primary differences between DE 74 and DEs 70, 71 are that DE 70 begins with a separate list of requested Court actions that, while not identical linguistically, are substantively the same as those offered in DE 74 and that each docket entry contains different exhibits. DE 74 contains limited supplementations to DEs 70, 71.

DE 74 requests the following relief from the Court, more or less verbatim: (1) Enforce the status quo as of 4/23/26 at 1:00 PM housing the Plaintiff in general population; (2) enjoin and restrain Defendants from further sexual abuse, threats, intimidation, or retaliation; (3) enjoin and

2

restrain Defendants from placing Plaintiff in any form of isolation or segregated housing; (4) require the Defendants to immediately deliver all incoming and outgoing mail, legal mail to the person to whom addressed or return the letter; (5) enjoin and restrain Defendant from opening and reading, sharing, or publishing any legal mail or privileged communication; (6) enjoin and restrain the Defendants from coming about the Plaintiff to sexually abuse or ordering, directing, encouraging any other person to retaliate against the Plaintiff; (7) enjoin and restrain Defendants from denial of access to courts, attorneys, or due process; and (8) enjoin the policy of refusing to deliver properly marked legal mail to the intended recipient or from an attorney, their staff, private investigators, "or work product communication without a warrant or threat to jail security" (DE 74, Page ID 1094).

DE 71 contains a virtually identical list (DE 71, Page ID 1060). The only meaningful difference is that the list in DE 71 contains one additional request: "enjoin Defendants to all PREA policy for victims" (Id.). The list of seven equitable remedies requested in DE 70 are also significantly similar. One of two differences worth noting between the requests listed in DE 70 and those listed in DE 74 is that DE 70 contains a request similar to request number four in the immediately preceding paragraph, but only contemplating inmates' mail, and containing a clause requesting individualized notice and an opportunity to be heard to any inmate whose mail is not delivered. This request is necessarily a component of request number four in the immediately preceding paragraph, aside from that clause. The only other distinction between the relief requested in DE 74 and DE 70 is that DE 70's list of requests concludes by moving the Court to "enjoin the Defendants from coming about the Plaintiff or his mail in any capacity".

The Plaintiff also submitted two purported proposed temporary restraining orders (DE 73-1, DE 75-1) that are substantially the same as the portions contained in his various motions for

3

temporary restraining orders and injunctive relief requesting relief, except that the Plaintiff has written "it is ordered: to all persons" added. These are not proposed orders, they are recitations of the lists of requests for relief made in his various motions, but with the words "it is ordered" at the beginning of the document.

Before the bevy of motions requesting temporary restraining orders and preliminary injunctions, the Plaintiff filed a Motion to Receive Mail (DE 59), to which the Williamson County Defendants responded (DE 69). At the onset of his filings for temporary restraining orders and preliminary injunctions, the Plaintiff filed an insubstantial Motion for Temporary Restraining Order (DE 68), to which these Defendants responded (DE 84). These Defendants filed a Response (DE 87) to the Plaintiff's second and third Motions for Temporary Restraining Orders. These Defendants incorporate those Responses into this Response.

These Defendants and then co-defendant Lisa Carson have made various filings containing factual statements, evidence, and argument that are potentially applicable to the Court's preliminary understanding of the facts of the case, and therefore its analysis of the Plaintiff's requests for equitable relief (DEs 18, 19, 20, 23, 28, 33, 34, 42, 49, 52, 55, 56, 63, 69, 82, 83, 84, and 87). In lieu of describing these documents in this Response, these Defendants incorporate them to the extent that they are referenced in this Response or that the Court may have the inclination to consider them in its analysis of the Plaintiff's various requests for temporary restraining orders and preliminary injunctions.[1]

II.     **Standard of Review**

Issuing a temporary restraining order or preliminary injunction is an extraordinary measure and one of the most drastic of judicial remedies.[2] Courts consider four factors when asked to decide

---

[1] These Defendants also note the Court's Screening Order (DE 10).
[2] ACLU v. McCreary County, 354 F.3d 438, 444 (6th Cir. 2003).

whether to grant a motion for a temporary restraining order: (1) the likelihood that the movant will succeed on the merits; (2) whether the movant will suffer irreparable harm without the injunction; (3) the probability that granting the injunction will cause substantial harm to others; and (4) whether the public interest will be advanced by issuing the injunction.[3] When equitable relief is requested pursuant to the alleged violation of a constitutional right(s), the likelihood of the existence of the violation is often the dispositive factor.[4]

### III.   Statement of Facts

To make the Plaintiff's recent filings and this Response more digestible, the Williamson County Defendants offer the following recitation of the Plaintiff's allegations and arguments such as they are in the Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction. Following that summary, these Defendants offer their own, and truthful, statement of the facts in the instant matter.

### A.  The Plaintiff's Factual Statement

Following a brief introductory paragraph and the requested equitable relief described *supra*, the Plaintiff begins his Motion with the unconscionable proposition that it is undisputed that the Plaintiff was sexually abused by a deputy (DE 74, Page ID 1095). The Plaintiff continues with his customary allegations that he is being retaliated against for reporting alleged sexual abuse by removal from the jail's general population, but this time goes further, stating that he was previously sexually abused in his current housing situation and insinuating that one of the Williamson County Defendants will sexually assault him (Id., see also Page IDs 1097, 1098).

---

[3] La Riccia v. Cleveland Clinic Found., 2022 U.S. App. LEXIS 142, at *3 (6th Cir. Jan. 4, 2022); Wilson v. Williams, 961 F.3d 829, 836 (6th Cir. 2020).
[4] Vitolo v. Guzman, 999 F.3d 353 (6th Cir. 2021)

The Plaintiff next offers a two-paragraph statement of facts. In that statement, he alleges that: (1) he has been sent to involuntary segregation for filing a FOIA request, obtaining a bible, and reporting sexual abuse by a deputy; (2) the deputy in question deleted his body camera footage; (3) the Plaintiff was at one point in "total isolation"; (4) the Plaintiff was assaulted by police while in church; (5) his legal materials were scattered on the ground; and (6) the preceding items in this list were performed at the behest of Captain Youker (ID, Page ID 1095).

The Plaintiff then makes a conclusory argument that he will suffer irreparable injury without an "ex-parte TRO" because Captain Youker is attempting to covertly intimidate the Plaintiff (Id.). The Plaintiff intermingles the following facts into his argument that his treatment constitutes a violation of the Fourteenth Amendment's Equal Protection Clause and the First Amendment's prohibition against retaliation for protected speech: (1) "the Plaintiff is the only one of 300 inmates locked in isolation"; (2) that the Plaintiff was punished for exercising constitutional rights and pursuing legal recourse; and (3) that "On 4/17/26 Judge Veile ordered Youker to not retaliate or change Plaintiff housing" (Id.).

The Plaintiff's argument in support of his motion is largely that he is suffering a violation of his Fourteenth Amended right to Equal Protection, purporting that he – as an alleged sexual assault victim – is a member of a protected class, and that he is being discriminated against on that basis. For the sake of brevity, efficiency, and access, the Williamson County Defendants reference the necessary elements of the Plaintiff's argument in the legal argument section of this Memorandum (Id., Page ID 1096). For now, it suffices to say that the Plaintiff argues that the restriction of his privileges while in pretrial detention constitute discrimination against him as an alleged sexual abuse victim and retaliation for reporting sexual abuse, that there is no rational basis

for the Williamson County Defendants' actions, and that the Plaintiff is likely to be sexually abused again.

The Plaintiff then argues that a temporary restraining order or preliminary injunction(s) should be provided pursuant to the standard four-factor test governing the Court's analysis (ID, Page ID 1110). Likewise, these Defendants address and refute these arguments in the legal argument section of this Response. Despite the Motion containing 28 additional pages, the Plaintiff provides his signature on Page ID 1103.

The next portion of the Motion pertains mostly to the Plaintiff's requests as they relate to his communications privileges while in pretrial detention, in particular his ability to send and receive mail (Id., Page ID 1104). The following is a summary of the facts alleged therein, including some of the Plaintiff's legal conclusions to the extent that they are necessary to understand his general position.

The Plaintiff states that the "Defendants conspired out of retaliation to seize, search, read, share, and publish the Plaintiff's privileged communications, specifically legal mail and work products associated with a pending legal case". The Plaintiff supports this contention with multiple misrepresentations of a Williamson County Criminal Circuit Court hearing to enforce that court's previous order restricting the Plaintiff's communications to legitimate legal mail with the Court and its officers, employees, etc. (Id.).

First, the Plaintiff alleges that the hearing on the State's motion to enforce the court's previous order (DE 49-5) resulted in a ruling in the Plaintiff's favor (DE 74, Page ID 1104). Next, the Plaintiff avers that Captain Youker testified that he and Lt. Lindquist conspired to "steal, seize, and share" the Plaintiff's "legal mail" (Id. and throughout DE 74). The Plaintiff alleges that Captain Youker and Lieutenant Lindquist took the allegedly stolen legal mail to the Assistant District

7

Attorney prosecuting a criminal case, who used the mail as an exhibit at the April 17th, 2026, hearing as evidence that the Plaintiff was circumventing the State court's order (Id). Later, the Plaintiff alleges that Captain Youker admitted at the April 17th, 2026, hearing, that the Plaintiff was in fact sexually abused by a deputy and that Captain Youker said, "I wanted to retaliate without making it look like retaliation" (Id., Page ID 1105). There is a conclusory allegation that "Youker and his co-defendants" have violated attorney-client privilege (Id.).

In essence, the Plaintiff's allegations are that Captain Youker directs the screening of the Plaintiff's mail to ensure that outgoing/incoming mail complies with the State court's orders that the Plaintiff is only permitted to send and receive legal mail in relation to pending legal matters. The Plaintiff alleges that in doing so, one, all, or some of these Defendants kept unidentified legal mail, "marked as legal mail", opened and read the legal mail, and then provided the mail to the district attorney.

The Plaintiff's Motion alleges that body camera footage and surveillance footage of the alleged sexual assault was destroyed and makes conclusory and vague allegations that the "co-defendants suborned perjury, falsified court records, abused attorney-client privilege in an effort to gain some tactical advantage in litigation" (Id., Page ID 1105-06). The Plaintiff continues that the co-defendants inserted themselves into the Plaintiff's divorce action and the denial of Freedom of Information ("FOIA") and Open Records Acts Requests, and with more conclusory allegations that the Plaintiff was placed in involuntary segregation for filing a FOIA request, reporting sexual abuse, and having a bible (Id).

**B. Williamson County Defendants' Statement of Facts**

The Plaintiff was not sexually assaulted by a deputy at the Williamson County Jail. The Williamson County Defendants conducted a full investigation into the Plaintiff's allegations that he was sexually assaulted at the time the allegations were made and determined that the Plaintiff's

claims were without merit (DE 49-2, Page ID 752-764). Further, these Defendants vehemently object to the Plaintiff's insinuations that he is at risk of sexual assault by these Defendants or other jail personnel, as those allegations are false and have no grounding in legitimate evidence. Said allegations are shamelessly and unpersuasively improvised by the Plaintiff to provide an alleged irreparable harm to the Court in an attempt to move the Court to modify a valid State criminal court order so that the Plaintiff can continue using any privileges afforded to him during his detention to harass and harm others (DE 84-1; DE 49-7; DE 49-5).

Also absurd is the Plaintiff's allegation that he was placed in "involuntary segregation" for filing a FOIA request, having a bible, and reporting sexual abuse. The Plaintiff's FOIA and Public Records Act requests were properly denied because he sought information about an individual who held a valid restraining order against him (DE 49-7). The Plaintiff was not sexually assaulted, nor was he separated from general population as punishment for making the false reports of sexual assault that he made (DE 49-2, Page ID 752-764). These Defendants are at a loss as to how the Plaintiff argues that he was placed in solitary confinement for having a bible or for some sort of Christian expression. These claims cannot be proven with evidence, nor is any provided in the Plaintiff's several motions for equitable relief, because the Plaintiff, in fact, is removed from general population because he frequently claims he is danger from virtually everyone at the jail he interacts with, uses his detention privileges to harass members of the public, particularly his ex-wife, and conspires with or manipulates other members of general population to aid him in harassing members of the public in contravention of a binding State criminal court order restricting his communications privileges because of his abuse of those privileges (DE 56; DE 49-7; DE 84-1; DE 70-9).

9

The Plaintiff's allegations that the deputy in question deleted body camera footage of the incident and that he was assaulted by the police in church are false. In fact, the deputy in question never turned on his body camera during the incident in which the Plaintiff alleges to have been assaulted (DE 49-2, Page ID 753). It is not possible to discern from the Motion how the Plaintiff is alleging he was assaulted by the police. As such, these Defendants simply aver that the Plaintiff has never been assaulted by jail personnel and to the extent that personnel have had to force him to exit general population, they have done so with a legal amount of force, if any.

As the Williamson County Defendants have explained, and now do again in more detail, the Plaintiff's various motions for equitable relief regarding his communication privileges and access to general population are a result of a recent hearing before the Honorable David Veile of the Williamson County Circuit Criminal Court on the State of Tennessee's Motion to Enforce Court Order (DE 84-1). That court's original order (DE 49-5) created procedures for limiting the Plaintiff's access to communications at the Williamson County Jail.

The Williamson County Defendants represent that the justification for this action was that the Plaintiff was using his communication privileges to harass members of the public, and in particular, his ex-wife. For example, the Plaintiff mailed her objects associated with prior domestic abuse in an attempt to harass and abuse her further and used other inmates and their access to jail kiosks to communicate with her in contravention of at least one binding court order against him doing so. The State court's order primarily required defense counsel for the Plaintiff to submit an allowed contact list, which would consist of the Plaintiff's criminal attorney, civil attorney, opposing counsel in civil cases in which he represents himself pro se, and County, State, and Federal Clerk's Offices (DE 49-5). The Plaintiff was meant to only have contact with individuals on the list (Id.).

10

Over time, it became clear to the State of Tennessee, through the Williamson County District Attorney's Office, that the Plaintiff was violating the court's order by communicating with individuals outside the no-contact list and using other inmates and their access to privileges not afforded to the Plaintiff to circumvent the court's order.[5] The State moved the court to enforce its previous order by issuing a supplemental order, a hearing was held on April 17th, 2026, and the court found in the State's favor (DE 84-1).[6] In the supplemental order, the Plaintiff modified the procedures designed to restrict the Plaintiff's access to non-legal communications, before making the express finding that:

> [Robert Gordon] used the kiosk log-in information of other inmates to circumvent the Court's prior order restricting [Robert Gordon's] electronic communications, and that [Robert Gordon's] housing in general population with multiple other inmates made it difficult for the Jail to monitor and prevent such activity. However, this Court finds that that the decision on how to classify and house criminal defendants is to be left to the discretion of local detention officials and declines to order that [Robert Gordon] is to be specifically housed in a particular method.

> DE 84-1, Page ID 1243-44.

The Williamson County Circuit Criminal Court declined to order that the Plaintiff be housed by any particular method, instead leaving that decision to "the discretion of local detention officials" (Id.). As such, and because the Plaintiff was using his access to the general population to subvert a valid court order and harass and abuse members of the public from the jail, the Plaintiff was placed a different housing situation, referred to her as "Pod 101". Pod 101 is a smaller area

---

[5] The State has yet to determine exactly how the Plaintiff is doing so, but it represented that Ms. Mishkin was/is still receiving mail from the Plaintiff. The State also argued that the Plaintiff is marking mail as "legal mail" that is not legal mail and is misidentifying the recipient of the mail to make mail appear to be legal in nature, amongst other deceitful tactics.

[6] Notably, that hearing did not feature inquiry into the Plaintiff's claims in the instant matter and Captain Youker did not make the admissions the Plaintiff alleges in his various motions for equitable relief.

designed for less inmates. The plan was to house the Plaintiff there, where he would have access to smaller and more easily monitored groups of people, and to only place individuals with the Plaintiff who the Williamson County Defendants were confident would not help the Plaintiff violate the State court's order or be manipulated to do so. However, the Plaintiff refused this arrangement. For doing so, the Plaintiff received a disciplinary ticket and was placed into protective custody.

The State court order (Id.) proves that the Plaintiff's claims that the hearing was decided in his favor and that the Judge ordered Captain Youker not to alter the Plaintiff's housing are false. The court explicitly left the Plaintiff's housing to Captain Youker's discretion. That order and the previous state court order (DE 49-5) also refute the proposition that the Plaintiff was "punished" for exercising his constitutional rights. The most recent court order (DE 84-1) renders it extremely unlikely that Captain Youker confessed to the Plaintiff's claims.

The Plaintiff makes much of the fact that a piece of his mail was allegedly used in that hearing.[7] However, aside from general statements about mail, the Plaintiff offers very little specific information about the mail. For example, the Plaintiff does not state who the mail was addressed to or what its contents were except for conclusory statements, such as stating that the mail contained work product, privileged information, non-privileged confidential information, and defense strategy. The Plaintiff does not provide specific information alleged to have been contained in the mail. The Plaintiff does not provide the mail used as an exhibit or provide a reason for not doing so, and contains conflicting theories as to why the mail was privileged of confidential (DE

---

[7] The Williamson County Defendants are in the process of acquiring a transcript of the hearing and further documentary evidence supporting its factual statement, particularly evidence of the Plaintiff's misuse of his communications privileges. These Defendants note, for now, that the State court issuing the orders (DEs 49-5, 84-1) was presented evidence sufficient to support its findings and mandates in those orders.

74). The Williamson County Defendants are aware that evidence was offered at the hearing to support the proposition that the Plaintiff violates the State court's order, but submit to the Court that the Plaintiff has not provided information or description of the mail he purports to have been used illegally at the April 17th, 2026, hearing such that the Court can ascertain what that mail is for the purposes of the Plaintiff's instant motions for equitable relief.

## IV. Legal Argument

The Plaintiff's Motions for Temporary Restraining Orders and Preliminary Injunctions Fails for a plethora of reasons, described in detail *infra*.

### A. The Plaintiff's Motion Fails Because the Plaintiff Argues, in Large Part, for the Likelihood of Success of Claims That Are Not the Underlying Claims in this Matter.

"A party moving for a preliminary injunction must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint".[8] A Plaintiff cannot seek an injunction for conduct that was not alleged in the complaint.[9]

Here, the Plaintiff's Complaint (DE 1), as decided by the Court in its Screening Order (DE 10), is an action for pretrial punishment in violation of the Fourteenth Amendment against these Defendants and for First Amendment Retaliation against Captain Youker. There is no mention of the Plaintiff's access to communication privileges during pretrial detention, denial of access to courts, bibles, or testimony at civil and criminal hearing in that Complaint (DE 1). As such, the Plaintiff cannot move the Court for equitable relief related to these topics, as he does not establish a relationship between these topics and the subject matter of the Complaint (Id.), nor are those

---

[8] <u>Memphis A. Phillip Randolph Inst. v. Hargett</u>, 48 F. Supp. 3d 699, 709 (M.D. Tenn. 2020) (quoting <u>Colvin v. Caruso</u>, 605 F.3d 282, 300 (6th Cir. 2010)) (Quoting <u>Devose v. Herrington</u>, 42 F.3d 470, 471 (8th Cir. 1994)).
[9] <u>Memphis A. Phillip Randolph Inst.</u> at 709.

topics referenced in that Complaint. As such, these claims are not the "underlying claims" to which the standard for preliminary injunctions and temporary restraining orders refer.

The Court would be correct in observing that an Amended Complaint (DE 77) was filed in this matter. While that Amended Complaint was filed after the instant Motion, it does refer to some of the subject matter referred to in the instant Motion. However, the Court explained to the Plaintiff that his Amended Complaint would be limited "to allegations and argument that the Court has already explained are potentially viable" (DE 64, Page ID 928). Therefore, to the extent that the Amended Complaint, although filed after the instant Motion, mentions these topics, such mention should not be considered in the analysis of this motion because the Plaintiff includes them in violation of the Court's Order (Id., Page ID 930).

### B. The Plaintiff Does Not Demonstrate Any Likelihood of Success on His Pretrial Detention Punishment Claims or His Retaliation Claims.

The Plaintiff does not demonstrate in his instant Motion, nor does the record indicate that the Plaintiff is likely to succeed on the merits of the underlying claims of this suit. These Defendants' Memorandum in Support of their Motion for Judgment on the Pleadings (DE 56, Page ID 872-888), while moot, provides thorough explanation that the Plaintiff was not sexually assaulted, nor was he punished because of his filing of a false report of sexual assault. The Plaintiff's Motions (DEs 70, 71, & 74) do not negate the explanation and argument provided in that Memorandum.

Since that time, the Plaintiff claims that he continues to be retaliated against for the same reasons, arguing that his privileges while an inmate are restricted. Any novel restrictions are a result of his continued use of his privileges to harass and abuse members of the public, particularly, his ex-wife, and contemporaneous court orders providing for those restrictions (DEs 49-5, 84-1). These restrictions are necessary pursuant to the State court's findings that the Plaintiff abused his

14

privilege to interact with general population by using those privileges to circumvent that court's order and harass and abuse members of the public. The Court ordered that the discretion to decide the Plaintiff's housing parameters resided with these Defendants, amongst other jail personnel and officials. These Defendants allowed the Plaintiff to share space with some other inmates, which he ostensibly wants, but he denied that opportunity.

The Plaintiff improvises false narratives to support his claims. He states in his Motion that his current "isolated" housing situation is the same as that which he was in when alleges to have been sexually assaulted (DE 74-12). In fact, the Plaintiff alleges that he was assaulted in the showers with others present (DE 1, Page ID 20). He submits to the Court that these Defendants destroyed evidence, but the record shows that the deputy in question did not turn on that equipment (49-2, Page ID 753). He lies about a court order (DE 84-1) before the Court. Incredibly, the Plaintiff has the gall to suggest, for the first time, that these Defendants will enable or even participate in his sexual assault, an irresponsible contention that these Defendants emphatically reject (DE 74-12).

### C. The Plaintiff is Not Entitled to Injunctive Relief Because the Restriction of His Jail Privileges Does Not Constitute a Violation of Equal Protection.

The Plaintiff's various arguments that he is the subject of a violation of the equal protection clause are unpersuasive and dealt with in short order. First, and again, the underlying claims are not brought by, nor do they relate to, equal protection. Beyond that, real sexual assault victims, much less those bringing patently false allegations of sexual assault, are not a suspect or quasi-suspect group pursuant to the Fourteenth Amendment's Equal Protection Clause.[10] As the Plaintiff has not been sexually assaulted nor retaliated against, or at the least, has not approached such a

---

[10] Green Genie, Inc. v. City of Detroit, 63 F.4th 521, 527-28 (6th Cir. 2023).

showing, no fundamental right has been burdened. Therefore, any government action related to the Plaintiff is subject to rational basis scrutiny. To the extent that the Plaintiff is alleging to be a class of one, any treatment of him as such would also be subject to rational basis scrutiny.

There was, and is, a rational basis to restrict the Plaintiff's detention privileges. Aside from the fact that the Williamson County Defendants were abiding by a court order and making housing decisions within their discretion, the Williamson County Defendants were motivated by public safety, orderly administration of the jail, and the safety of the Plaintiff, amongst other good-faith objectives. The Plaintiff incessantly complains that he is in fear for his life from a significant amount of the people he engages with at the jail, uses his jail privileges to harass and abuse members of the public, and creates substantial disruption in the facility through interactions with others and his behavior generally. These behaviors provide more than a rational basis to remove the Plaintiff from general population and restrict his mail privileges, particularly when the Plaintiff is the only one of his fellow inmates to have two hearings held to determine that his detention privileges must be restricted. The court's orders and these Defendants' removal of the Plaintiff, at times, from general population, were rationally related to these legitimate State purposes.

### D. These Defendants Are Legally Justified in Restricting the Plaintiff's Access to Mail.

The Williamson County Defendants' decision to restrict the Plaintiff's mail to legal mail is justified in view of the Turner factors.[11] As described in the immediately preceding arguments, these Defendants decisions were at all times made pursuant to a recent State criminal court order and with the legitimate penological interests of public safety, inmate safety, and the general order

---

[11] Turner v. Safley, 482 U.S. 78 (1987). (1) whether there is a valid, rational connection between the regulation and the legitimate governmental interest; (2) whether alternative means of exercising the right remain available to the inmate; (3) the impact accommodating the right would have on guards, other inmates, and prison resources; and (4) whether there are ready alternatives that fully accommodate the inmate's rights at de minimis cost to valid penological interests.

16

of the facility in mind. The Plaintiff can bring, and has brought, his legal grievances about his access to jail communications, and anything else he can think of, to the State court and this Court, which remains a viable option. At least two hearings have been held in relation to the restrictions on the Plaintiff's detention privileges.

Allowing the Plaintiff greater access to communications would be too burdensome on the guards, other inmates, and prison resources, as the Plaintiff, who already encumbers a great deal of their time, would be in effect directing them to participate in the Plaintiff's constant harassment of others, and to spend an inordinate amount of time doing so. The Plaintiff is set on using his privileges to harass and abuse, so there is no reasonable alternative that fully accommodates his rights. Even with the present restrictions, the Plaintiff is apparently finding ways to violate the State court's order, send non-legal and harassing mail, and use other inmates and their privileges to do so.

The actions at issue are particularly justifiable given that "the constitutional rights that prisoners possess are more limited in scope than the constitutional rights held by society at large",[12] and that the 6th Circuit will "generally 'defer to the judgments of prison officials in upholding [prison] regulations against constitutional challenge' so long as the regulations are 'reasonably related to legitimate penological interests'".[13] As such, the restrictions on the Plaintiff's access to non-legal mail are justified.[14]

> **E. The Plaintiff Does Not Present Evidence Sufficient to Meet the Significant Evidentiary Burden Necessary to Obtain the Requested Injunctive Relief.**

---

[12] Shaw v. Murphy, 532 U.S. 223, 229 (2001).
[13] Hanrahan v. Mohr, 905 F.3d 947, 954 (6th Cir. 2018).
[14] Note also that the restrictions on the Plaintiff's access to general population is justified given that administrative segregation may be ordered to maintain institutional security, even when no rule infraction is charged. Smith v. Rose, 760 F.2d 102, 105 (6th Cir. 1985).

17

The burden of proof in establishing sufficient evidence is on the Plaintiff in moving the Court for the requested injunctive relief, and that burden is at least "much more" stringent than the proof required to survive a summary judgment motion.[15] Here, the Plaintiff offers numerous exhibits, but no substantial evidence, that he is likely to succeed on the underlying claims. He does not reference any of said exhibits in the body of his Motion. He attaches affidavits either of himself or that he handwrites allegedly on behalf of other inmates (DE 71-1; DE 73-3; DE 74-1). The majority of his exhibits are documents that are the exhibits to the Williamson County Defendants' Amended Answer. Interestingly, these aren't the only documents the Plaintiff attaches as exhibits that harm his argument, such as an order dismissing a lawsuit he attempted to bring against his ex-wife (DE 70-9) and cost-bill sheet from the Williamson County Chancery Court that he alleges is fabricated but looks completely legitimate (DE 70-8).

To the contrary, these Defendants submit to the Court a finding of the Williamson County Circuit Criminal Court that the restrictions on the Plaintiff's detention privileges are justified by the Plaintiff's actions. They submit a full investigation into the Plaintiff's frivolous claim that he was sexually assaulted, full investigations of various unrelated and frivolous claims brought by the Plaintiff (DEs 49-1 – 49-7; DE 49-5; DE 84-1), evidence that the Plaintiff targets his ex-wife from jail with frivolous legal action and harassment (Id., see also DE 70-9), and evidence of various reasonable and non-retaliatory motives for Captain Youker's actions (DE 56, starting at Page ID 882).

Critically, the Plaintiff does not offer any evidence of the alleged legal mail that he alleges was stolen from him. The Plaintiff does not provide the letter or a copy of a letter. The Plaintiff does not provide who the recipient of the letter would be, or explain whether the letter qualified as

---

[15] <u>McNeilly v. Terri Lynn Land</u>, 684 F.3d 611, 615 (6th Cir. 2012).

legal mail pursuant to the State court's order. The only statements in his Motion that approaches specificity regarding the mail's contents are that the letter contained tax documents and forensic reports.

The Plaintiff admits that whatever mail he was referring to was used at a hearing on April 17th, 2026, with apparently no sustained objection from his appointed counsel. The Plaintiff lied about the contents of that hearing within just this instant Motion. Given that the State criminal court order is afforded substantial deference from the Court and that the Plaintiff's Motion contains demonstrable misrepresentations of the April 17th, 2026, hearing that the State criminal court order related to, the evidence weighs in favor these Defendants. More importantly, these Defendants, and likely this Court, cannot tell from the language of the Plaintiff's Motion nor the exhibits provided therewith what piece of mail the Plaintiff is referring to, nor can we tell on what basis the Plaintiff claims that the mail was privileged or confidential. Most importantly, the Court cannot determine whether the mail was legal mail, whether privileged, confidential, or, more likely, neither.

### F. The Plaintiff Was Not Denied Access to the Courts in Violation of the Sixth Amendment of the United States Constitution.

The Plaintiff argues that the ambiguous legal mail that he is alleging to have been stolen in some way resulted in a denial of his access to an attorney and/or the courts. Even if the Court could determine what piece of mail the Plaintiff is talking about, and therefore whether the mail in question was, in fact, legal mail, the Plaintiff has not sufficiently demonstrated prejudice. The Plaintiff states that his trial strategy may be compromised, but does not explain how beyond making that statement. The Plaintiff does not provide a description of the alleged strategy contained in that mail or a specific argument or how that strategy amounts to prejudice.

### G. The Standard Temporary Restraining Order/Preliminary Injunction Analysis Weighs Against Granting the Plaintiff's Motions.

The Williamson County Defendants demonstrated that the Plaintiff does not have a likelihood of success on the merits on the claims underlying this suit *supra*. They also demonstrated that the Plaintiff is unlikely to succeed on claims that are not underlying this suit to the extent that the Plaintiff improperly brings them before the Court in the instant Motion. As such, the Plaintiff suffers no constitutional injury in relation to the underlying claims in this action or otherwise. Because there is no constitutional injury to the Plaintiff in relation to the underlying claims, nor is there likelihood of the success of such claims, the Plaintiff is not suffering irreparable injury.

The Williamson County Defendants aver that there is substantial risk of injury to the public if the requested relief is granted. The Williamson County Criminal Circuit Court found, on at least two separate occasions approximately two years apart, that the Plaintiff's communication privileges are to be restricted because he uses those privileges to harass others. The Plaintiff remains in pretrial detention largely for charges relating to his ex-wife, and he still uses his communication privileges to target her, notwithstanding a restraining order, and other members of the public (DE 49-7).

These Defendants draw the Court's attention to the Plaintiff's attempt to use the instant Motion to continue improper use of detention privileges. It speaks to the dangerousness of the Plaintiff to the public that he would legitimately attempt to use this Court as a mechanism to modify State court restrictions designed for the safety of others, not to mention specifically, identifiable individuals at risk.

Here, there is no public interest in equitable remedy because the Plaintiff's constitutional rights are not being violated. While the public has an interest in the preservation of individual constitutional rights, it does not have an interest in the provision of injunctive relief when no

20

constitutional violation is present. Rather, the public has an interest in the authority of the State court's orders being honored, in the safety of the public, and orderly administration of its penological institutions.

Finally, these Defendants submit that the relief requested in the Plaintiff's various motions and proposed orders is far too vague to fashion an order compliant with R. 65(d), F.R.C.P.

### H. The Court Should Apply the *Younger* Decision.

The Williamson County Defendants request that the Court apply the *Younger* decision, as these Defendants did in previous responses to similar or identical of the Plaintiff's Motions (DEs 69, 84, & 87).

### V. Conclusion

For the foregoing reasons, the Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunctions (DE 74), as well as his nearly identical motions (DEs 70, 71) should be denied.

/s/ ***Emmerson Y. Marlatt***
Robert M. Burns, #15383
Emmerson Y. Marlatt, #42797
HOWELL & FISHER, PLLC
3310 West End Avenue, Suite 550
Nashville, TN 37203
rburns@howell-fisher.com
emarlatt@howell-fisher.com
(615) 244-3370
*Attorneys for Williamson Co. Defendants*

*Certificate of Service on Next Page.*

21

**CERTIFICATE OF SERVICE**

I certify that the foregoing was filed electronically on this the 21st day of May, 2026. Notice of this filing will be sent by USPS Mail, postage-prepaid to the plaintiff, and/or by operation of the Court's electronic filing system to:

| | |
|---|---|
| Robert C. Gordon<br>#65920<br>Williamson County Sheriff's Office<br>408 Century Court<br>Franklin, TN 37064 | Brian S. Spitler, #32649<br>April D. Romeo, #30966<br>COPELAND, STAIR, VALZ & LOVELL, LLP<br>735 Broad Street, Suite 1100<br>Chattanooga, TN 37402<br>Ph: (423) 777-4693<br>bspitler@csvl.law<br>aromeo@csvl.law<br>*Attorneys for Lisa Carson* |

**/s/ *Emmerson Y. Marlatt***
Emmerson Y. Marlatt