UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| ROBERT C. GORDON,<br><br>        Plaintiff,<br><br>v.<br><br>WILLIAMSON COUNTY SHERIFF'S DEPARTMENT, CHAD YOUKER, ASHLEY LINDQUIST, f/n/u/ APER, CHRIS GRAY, JEFF HUGHES, and LISA CARSON, ESQ.,<br><br>        Defendants. | Case No. 3:24-cv-01121<br><br>Judge Waverly D. Crenshaw, Jr.<br>Magistrate Judge Luke A. Evans |

To:    The Honorable Waverly D. Crenshaw, Jr., District Judge

## **REPORT AND RECOMMENDATION**

This Report and Recommendation addresses numerous filings submitted by *pro se* Plaintiff Robert C. Gordon in just one of his pending cases before this Court. Due to the number and variety of motions filed, this Report and Recommendation will recommend disposition of motions considered dispositive and it will otherwise dispose of non-dispositive issues pursuant to referral under 28 U.S.C. §§636(b)(1)(A) and (B).

The Court addresses the following:[1] (1) four distinct "emergency" motions for temporary restraining orders ("TROs") and/or preliminary injunctions (Doc. Nos. 68, 70, 71, 74); (2) one motion to appoint counsel and for an extension of time (Doc. No. 76); and (3) miscellaneous motions seeking orders to provide mail (Doc. No. 59), to compel discovery (Doc. No. 78), and to "restore basic rights" (Doc. No. 79).

---

[1]    Also outstanding are three motions to consolidate cases (Doc. Nos. 80, 91, 95). However, the Magistrate Judge finds it necessary to defer ruling on these motions at this time.

At this juncture, only Williamson County Sheriff's Department ("WCSO") Defendants Chad Youker, Ashley Lindquist, Chris Gray, and Jeff Hughes (collectively, "WCSO Defendants") remain actively litigating this action. They have filed responses in opposition to multiple motions and the issues are ripe for consideration. For the reasons that follow, the Magistrate Judge will deny Gordon's non-dispositive motions found at docket entries 59, 76, 78, 79, and 91. The Magistrate Judge will then recommend that Gordon's motions for TROs and/or preliminary injunctions (Doc. Nos. 68, 70, 71, 74) be denied.

## I. Relevant Background

The instant Report and Recommendation is one of several orders issued by the Court in this matter and, generally, the Court would presume familiarity with the relevant background of this action. However, over the course of this action, Gordon has been less than clear on many of his factual assertions. To help remedy that confusion, the Court permitted Gordon to file a first amended complaint ("FAC"). (Doc. No. 64.) But, because an amended complaint typically "supersedes the pleading it modifies" such that "the original pleading no longer performs any function in the case[,]" 6 Charles Alan Wright & Arthur R. Miller, Fed. Prac. and P. § 1476 (3d ed. supp. July 2023), a *pro se* plaintiff's failure to restate factual assertions raised in an earlier complaint can cause further confusion.

Here, considering the leniency afforded to *pro se* litigants at the pleading stage, courts have the discretion to construe amended pleadings in conjunction with past pleadings in some circumstances. *See, e.g., Taylor-Merideth v. Metro. Gov't of Nashville & Davidson Cnty.*, No. 3:16-cv-00612, 2017 WL 1164583, at *1 (M.D. Tenn. Mar. 28, 2017) (construing a *pro se* plaintiff's complaints together where plaintiff "likely did not understand that her Amended Complaint would supersede the original Complaint, and that therefore she needed to re-allege the

facts entitling her [to] relief"); *see also* Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice.").

Like *Taylor-Merideth*, it appears to the Court that Gordon likely did not understand that his FAC would supersede his original complaint. *Taylor-Merideth*, 2017 WL 1164583, at *1. Given Gordon's *pro se* status, the Court will liberally construe the pleadings together where his original complaint is necessary to understand his FAC, rather than require an additional amendment. *Id. See also Fuchs v. Specialtycare, Inc.*, Case No. 3:23-cv-00892, 2025 WL 2382931, at *5 n.5 (M.D. Tenn. Aug. 15, 2025 (Campbell, C.J.) (collecting authorities that have established when a court may consider, among other things, items appearing in the record of the case) (internal citations omitted).

Gordon, a pretrial detainee at the WCSO, maintains that Deputy f/n/u Aper[2] violated his rights to be free of cruel and unusual punishment under the Fourteenth Amendment when Aper allegedly sexually abused Gordon while the he showered. After submitting complaints to one or more of the WCSO Defendants consistent with procedures supporting the Prison Rape Elimination Act, Gordon's grievances were ultimately denied on appeal by Defendant Youker. (Doc. No. 1.) Sometime after Gordon submitted his administrative grievance, he alleges that Youker placed him in solitary confinement. (Doc. Nos. 1, 77.) Gordon then filed the instant action on September 17, 2024, alleging that the WCSO Defendants were liable for violating his rights under the Eighth Amendment and liable for retaliation for exercising his right to report purported sexual abuse or harassment. (Doc. No. 1.)

Due to Gordon's IFP status, the Court issued an initial screening order wherein it permitted two relevant claims to proceed. (Doc. No. 10.) First, the Court identified in Gordon's original

---

[2] Since filing his FAC, Gordon has referred to the defendant as "Drew Aper." (Doc. No. 77.)

3

complaint plausible violations of his Fourteenth Amendment right as a pretrial detainee to be free from cruel and unusual punishment in the form of sexual harassment. (*Id.*) The Court further found that Gordon alleged one plausible count of First Amendment retaliation as to Youker due to his alleged retaliatory response to Gordon's reporting of the behavior. (*Id.*) After a flurry of filings that resulted in the Court dismissing one defendant, denying Gordon's previous motions for emergency injunctive relief, and permitting Gordon to amend his complaint, Gordon filed his FAC[3] on May 13, 2026. (Doc. No. 77.)

As relevant to the instant Report and Recommendation, Gordon alleges further retaliation from Defendant Youker, including continued isolation in retaliation for litigating the matter, violations of his religious rights by allegedly banning Gordon from possessing a Bible, and the alleged "theft" of or interference with his mail and communication privileges. (*Id.*) As a result of the alleged ongoing retaliation, Gordon has filed no less than four "emergency" motions for injunctive relief. (Doc. Nos. 68, 70, 71, 74.) He also asks the Court to appoint legal counsel, issue an order regarding his mailing privileges, consolidate the instant case with a separate case pending

---

[3]     On April 29, 2026, the Court entered an order permitting Gordon to file, with some restrictions, an amended complaint. (Doc. No. 64.) Accordingly, Gordon filed his FAC on May 13, 2026. (Doc. No. 77.) Because Gordon proceeds in this action *in forma pauperis* ("IFP"), the Court generally has an ongoing obligation to screen his claims. *Kitchen v. Lucasville Corr. Inst.*, Case No. 1:22-cv-500, 2023 WL 9015072, at *1 (S.D. Ohio Dec. 29, 2023) (citing *Nutt v. Seta*, No. 1:19-CV-460, 2020 WL 581837, at *1 (S.D. Ohio Feb. 6, 2020)), *report and recommendation adopted*, 2024 WL 475274 (S.D. Ohio Feb. 7, 2024).

However, the WCSO Defendants filed an answer to the FAC on May 27, 2026. (Doc. No. 93.) At least one court in the Sixth Circuit has previously declined to rescreen an IFP litigant's amended complaint where the defendants answered the amended complaint. *See, e.g., Howell v. Ohio State Highway Patrol Subdivision*, Case No. 1:18-cv-510, 2019 WL 6465508, at *2 n.1 (S.D. Ohio Dec. 2, 2019), *report and recommendation adopted*, 2020 WL 33127 (S.D. Ohio Jan. 2, 2020). Here, the Court did not rescreen Gordon's FAC.

against Youker, and compel the defendants here to disclose identifying information for Defendant Aper. (Doc. Nos. 59, 76, 78, 79, 80, 91.)

The WCSO Defendants filed a response in opposition to the emergency injunctive relief on May 21, 2026. (Doc. No. 90.) The defendants then filed a response in opposition to the non-injunctive relief motions on May 27, 2026. (Doc. No. 94.)

## II.     Discussion

As mentioned above, the Court will analyze multiple categories of motions in the instant Report and Recommendation: (1) four distinct "emergency" motions for temporary restraining orders and/or preliminary injunctions (Doc. Nos. 59, 68, 70, 71, 74, 79); (2) one motion to appoint counsel and for an extension of time (Doc. No. 76); and (3) two motions to consolidate cases (Doc. Nos. 80, 91).

### A.     Injunctive Relief Under Federal Rule of Civil Procedure 65[4]

Federal Rule of Civil Procedure 65 governs motions for preliminary injunctions ("PIs") under Rule 65(a) and temporary restraining orders ("TROs") as set forth by Rule 65(b). Fed. R. Civ. P. 65(a)(1)–(2), (b)(1)–(4).

An injunction, in either form, is "an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington–Fayette Urb. Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). In determining whether to grant an injunction, the court examines four  factors: (1) whether the movant is likely to prevail on the merits, (2) whether the movant would suffer irreparable injury if the court does not grant the injunction, (3) whether a preliminary injunction would cause

---

[4]     The Court notes that Gordon's complaints and subsequent motions contain a multitude of conclusory statements that, despite his *pro se* and IFP status, cannot be taken as true even at this stage of the litigation.

substantial harm to others, and (4) whether the injunction would be in the public interest. *See Samuel v. Herrick Mem'l Hosp.*, 201 F.3d 830, 833 (6th Cir. 2000).

As the Court has explained, "these factors are a balancing test, [but] 'even the strongest showing on the other three factors cannot eliminate the irreparable harm requirement.'" *Pavia v. Nat'l Collegiate Athletic Ass'n*, 760 F. Supp. 3d 527, 536 (M.D. Tenn. 2024) (Campbell, C.J.) (quoting *D.T. v. Sumner Cty. Sch.*, 942 F.3d 324, 326-27 (6th Cir. 2019)). *See also Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 21 (2008) ("Merely showing the possibility of irreparable harm is not sufficient; the plaintiff must demonstrate that "irreparable injury is likely in the absence of an injunction."). Moreover, "a finding that there is simply no likelihood of success on the merits is usually fatal" to a request for injunctive relief. *Gonzales v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000). The movant bears a heavy burden to demonstrate his entitlement to an injunction. "The movant 'faces a burden of proof "more stringent than the proof required to survive a summary judgment motion."'" *Pavia* 760 F. Supp. 3d at 535 (quoting *Enchant Christmas Light Maze & Mkt. Ltd. v. Glowco, LLC*, 958 F.3d 532, 539 (6th Cir. 2020)). The "'ultimate determination as to whether the four preliminary injunction factors weigh in favor of granting or denying preliminary injunctive relief' [is] in the court's discretion[.]" *Newsom v. Golden*, 602 F. Supp. 3d 1073, 1081 (M.D. Tenn. 2022) (quoting *Union Home Mortg. Corp. v. Cromer*, 31 F.4th 356, 366 (6th Cir. 2022)).

Before moving to Gordon's self-styled motions for injunctive relief, the Court notes that the motion styled "motion to restore basic rights" (Doc. No. 79), construed liberally in light of Gordon's *pro se* status, is effectively an additional motion for injunctive relief. Gordon again seeks relief in the form of an order compelling the WCSO Defendants to cease allegedly interfering with Gordon's legal mail and an order compelling Youker individually from purportedly infringing on

Gordon's right to practice his faith while in pretrial detention. (*Id.*) Similarly, the Court construes Gordon's "motion for order to provide mail" (Doc. No. 59) as another request for a form of injunctive relief. Accordingly, these motions will be considered alongside the others.

### 1. Sexual Abuse and Retaliation

Far from being a model of clarity, Gordon's motions pertaining to the threat of sexual abuse and further retaliation appear to invoke multiple arguments within the same analysis. As explained in the initial screening order, claims of retaliation—including Youker's decision to place Gordon in isolation—are appropriately considered under the First Amendment. (Doc. No. 10.) However, Gordon spends much effort arguing that the alleged ongoing isolation, or threat thereof, implicates his rights under the Eighth Amendment and the Substantive Due Process and Equal Protection Clauses of the Fourteenth Amendment. (Doc. Nos. 71, 74.) As the Court explained in its screening order, pretrial detainees vindicate their rights to be free of cruel and unusual punishment not through the Eighth Amendment, but through the Fourteenth Amendment. (Doc. No. 10.)

For their part, the WCSO Defendants first encourage the Court to deny the motions for injunctive relief because the motions were filed before the FAC and, at the time, included topics not related to the subject matter of the original complaint. (Doc. No. 90.) While the defendants' argument carries weight, the Court here prefers to exercise its discretion to reach the merits of the parties' arguments on the outstanding motions for injunctive relief. To address the merits of all of the arguments at this stage encourages judicial efficiency.

On the merits, then, WCSO Defendants maintain that the motions for injunctive relief should be denied because Gordon has not demonstrated any likelihood of success on the merits of his retaliation and pretrial detention as punishment and retaliation claims. (*Id.*) The Court will consider each in turn.

### a.     First Amendment Retaliation

Here, the Court finds that Gordon is unlikely to prevail on the merits of his First Amendment retaliation claims against Youker. Gordon alleges that Youker has retaliated against the former for filing grievances, seeking disclosures through public records requests, and filing multiple lawsuits. (Doc. Nos. 71, 74, 77.) To succeed on a claim of retaliation under the First Amendment, Gordon "must demonstrate that Defendants took adverse action against [hi]m which would deter a person of ordinary firmness from continuing to engage in the protected speech and that Defendants' actions were motivated at least in part by [Gordon's] protected speech." *Maben v. Thelen*, 887 F.3d 252, 262 (6th Cir. 2018) (quoting *Thaddeus–X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999)).

As the Court noted in its screening order, the filing of administrative grievances and legal actions are protected activity for purposes of a retaliation claim. (Doc. No. 10.) And there is no disputing that Gordon experienced "adverse action" as required to prove retaliation because he was removed from general population and placed in segregated housing. (*Id.*) However, whether Gordon can sufficiently prove First Amendment retaliation here turns on Youker's motivation for placing him isolation. Gordon maintains that it is in retaliation for engaging in protected activity. Youker and the other WCSO Defendants contest that notion and state that Youker placed Gordon in isolation for two permissible reasons. (Doc. No. 90.)

First, Youker states that he placed Gordon in protective custody due to Gordon's repeated statements that he feared for his safety in the jail. (*Id.*) Indeed, logs from Gordon's use of jail kiosks demonstrate that Gordon made multiple comments to WCSO staff indicating he feared for his safety. (Doc. No. 49-1.) Second, Gordon's conduct in the jail, according to the defendants, has necessitated isolation at times. (Doc. No. 90.) The WCSO Defendants state explicitly that restrictions on Gordon's housing and privileges "are necessary pursuant to the State court's

8

findings that [Gordon] abused his privilege to interact with general population . . . to circumvent the court's order and harass and abuse members of the public." (*Id.* at 14–15.) Gordon disputes their argument, insisting that the defendants cannot point to any policy he allegedly broke or abused. (Doc. Nos. 71, 74, 77.)

Considering the parties' arguments, the Court finds that Gordon has not satisfied his heightened burden of showing likelihood of success on the merits of his First Amendment retaliation claim. This factor therefore weighs against granting injunctive relief.

### b.    Fourteenth Amendment Due Process

Gordon also appears to argue that his rights under the Fourteenth Amendment's substantive and procedural due process components were or are being violated. (Doc. Nos. 71, 74, 77.) First, the FAC is construed as implicating substantive due process where he complains of alleged sexual abuse and the subsequent isolation as violating Gordon's rights to dignity and bodily integrity. (Doc. Nos. 71, 74, 77.) Gordon's FAC then goes on to imply that his rights to procedural due process have been ignored by the defendants. (Doc. Nos. 71, 74.)

### i.    Procedural Due Process

The Fourteenth Amendment to the U.S. Constitution "has a substantive due process component and a procedural due process component." *ARJN #3 v. Cooper*, 517 F. Supp. 3d 732, 744 (M.D. Tenn. 2021) (citing *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)). Core to procedural due process is the "'essential principle . . . that a deprivation of life, liberty, or property "be preceded by notice and opportunity for hearing appropriate to the nature of the case."'" *Novak v. Federspiel*, 140 F.4th 815, 821 (6th Cir. 2025) (quoting *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985)). Generally, jails must navigate "rigorous procedural safeguards before officials can *punish* an inmate for serious alleged misconduct." *Finley v. Huss*, 102 F.4th 789, 816 (6th Cir. 2024) (emphasis added). *But see Mitchell v. Dupnik*, 75 F.3d 517, 524 (9th Cir. 1996)

(explaining that jail administrators may discipline a pretrial detainee to "preserv[e] 'internal order and discipline'"). However, "administrative or managerial decisions, including *non-punitive* classification to administration segregation" allow for less rigorous procedure. *Id.*

To establish a likelihood of success on the merits of a procedural due process claim, Gordon must demonstrate two elements. First, there must be deprivation by state action of a protected interest in life, liberty, or property and, second, he must show that the state process for remedying the deprivation is inadequate. *See Novak*, 140 F.4th at 821. Here, the Court finds that Gordon has failed to meet his burden of showing that the WCSO lacks adequate procedure. The record clearly demonstrates that Gordon availed himself of the jail's kiosk grievance process to contest his continued isolation. (Doc. No. 49-1.) Those same records indicate that, when Gordon sought removal from protective custody, he was told that review of inmates' requests to leave protective custody are reviewed quarterly. (*Id.*) The WCSO Defendants add that, at some point, options were provided to Gordon that would allow him to leave isolation, even if it did not allow for his immediate return to general population. (Doc. No. 90.) The WCSO Defendants state, however, that Gordon declined. (*Id.*) Gordon has plainly failed to demonstrate that he was deprived of procedural due process.

### ii.      Substantive Due Process

As to the substantive due process component, it has been interpreted as barring certain government actions regardless of the fairness of the procedures in place to implement such actions. *Guertin v. State*, 912 F.3d 907, 918 (6th Cir. 2019); *ARJN #3*, 517 F. Supp. 3d at 744 ("The substantive due process component protects specific fundamental rights of individual freedom and liberty from deprivation at the hands of arbitrary and capricious government action.") (internal citation omitted). Here, Gordon invokes his right to bodily integrity, which the Supreme Court has held to be a fundamental right, due to the purported sexual assault. *Guertin*, 912 F.3d at 918. But

Gordon also includes the subsequent alleged retaliatory placement in protective custody as part of this claim. (Doc. Nos. 71, 74, 77.) To prevail on this hybrid claim, Gordon must demonstrate that his placement in protective custody means he is "being 'subjected to unconstitutional punishment' by showing a 'restriction or condition' of [his] confinement 'is not rationally related to a legitimate government objective or is excessive in relation to that purpose.'" *Friedmann v. Parker*, 573 F. Supp. 3d 1221, 1228 (M.D. Tenn. 2021) (quoting *J.H. v. Williamson Cnty.*, 951 F.3d 709, 717 (6th Cir. 2020)).

Gordon has failed to meet his burden for establishing the need for injunctive relief. Regarding what Gordon considers to be sexual abuse, courts differentiate between instances of alleged sexual misconduct where one is physically touched and where one is subjected to verbal sexual talk. *See, e.g., Williams v. Clayton*, C/A No. 9:23-cv-04663, 2025 WL 2582155, at *12 n.12 (D.S.C. June 12, 2025) (finding that, absent allegations of physical touching, the conduct complained of constituted sexual harassment). As a result, courts have found in the analogous Eighth Amendment context that conduct like that Gordon complains fails to state a viable claim. *Morales v. Mackalm*, 278 F.3d 126, 132 (2d Cir. 2002) (allegations that a prison guard asked an inmate to . . . masturbate in front of her did not rise to the level of an Eighth Amendment violation), *abrogated on other grounds by Porter v. Nussle*, 534 U.S. 516 (2002).

The Court finds that Gordon has failed to show a likelihood of success on the merits of either of his theories under the Due Process Clause. Accordingly, this factor weighs against a grant of injunctive relief.

### c. Fourteenth Amendment Equal Protection

Gordon alleges one final claim related to what he claims is unconstitutional conduct related to his housing. Here, Gordon seeks to enjoin the defendants from violating his rights under the Equal Protection Clause of the Fourteenth Amendment. The Equal Protection Clause is meant to

ensure that every individual within a state's jurisdiction is free from intentional and arbitrary discrimination, such as discrimination that burdens a fundamental right, targets a suspect class, or otherwise treats an individual differently than others who are similarly situated without any rational basis for that differential treatment. *Nichols*, 2025 WL 3299727, at *10 (first citing *Sunday Lake Iron Co. v. Wakefield Twp.*, 247 U.S. 350, 352 (1918), and then citing *TriHealth, Inc. v. Bd. of Comm'rs*, 430 F.3d 783, 788 (6th Cir. 2005)).

In arguing that he has a high likelihood of success on the merits of his equal protection claims, Gordon argues that he is entitled to heightened review of the WCSO Defendants' conduct because he is a member of a "protected class." (Doc. Nos. 71, 74, 77.) To meet his burden, Gordon must demonstrate that "the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'" *ARJN #3*, 517 F. Supp. 3d at 748 (quoting *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011)). Construed liberally, Gordon implicates all three theories. However, the bulk of his argument on this claim involves the second pathway—that he is a member of a targeted suspect class.

For purposes of this claim, Gordon asserts that he is part of a protected class because he is a victim of sexual abuse. (Doc. No. 77.) Here, Gordon fails. As the WCSO Defendants correctly note, "victim of sexual abuse[,]" while no doubt distressing, is not a classification for purposes of an equal protection analysis. And because he does not belong to a "suspect" or "quasi-suspect" classification as averred, the Court assesses his claim under the rational basis test. That means that Gordon must demonstrate that the WCSO Defendants' alleged conduct is not rationally related to a legitimate government objective. *Wagner v. Haslam*, 112 F. Supp. 3d 673, 692 (M.D. Tenn. 2015). "When a federal court conducts a rational basis review, the review is limited to determining

only whether there is a *conceivable* rational relationship between the policy and a legitimate governmental objective." *Id.* Here, there is an easily conceivable and rational relationship between Defendant Youker's decision to place Gordon in protective custody and the legitimate objective of ensuring Gordon's safety and security. As explained above, Gordon repeatedly stated he was in fear of his safety and it was rational, if not prudent, of Youker to take protective action. Gordon has failed to meet his burden on this point.

Gordon also appears to raise an equal protection challenge under the "class-of-one" theory. (Doc. Nos. 71, 74, 77.) Gordon alleges that he "is being treated differently than all that are similarly situated" where, for example, he "is the only <u>one</u> of 300 inmates locked in isolation[.]" (Doc. No. 71 at 2.) Under this "class-of-one" theory, Gordon must establish that he has been intentionally treated differently from individuals considered "similarly situated" and that there is no rational basis for that disparate treatment. *Nichols*, 2025 WL 3299727, at *11. "In determining whether individuals are 'similarly situated' in "class of one" claims, "a court should not demand exact correlation, but should instead seek relevant similarity." *Cocchini v. City of Franklin, Tenn.*, No. 3:23-cv-01185, 2025 WL 438105, at *14 (M.D. Tenn. Feb. 6, 2025).

Here, the Court finds that Gordon has failed his burden of showing that he was treated differently than similarly situated individuals. Gordon presents affidavits from other individuals who allege that they were sexually harassed by Aper, specifically, and that at least one was then "placed in the hole." (Doc. No. 74-1.) This means, by definition, that Gordon was not treated differently from the purportedly similarly situated individuals that he identified. Gordon has failed to meet his burden and is unlikely to succeed on the merits of this claim.

## 2.     Interference with Communications[5]

The preeminent and recurring issue in Gordon's filings is his argument that the WCSO Defendants, generally, and Defendants Youker and Lindquist specifically are continuously interfering with his "legal mail" by allegedly opening, reading, or "stealing" such correspondence. (Doc. Nos. 59, 68, 70, 71, 74, 79, 91, 92.) By allegedly interfering with his mail, Gordon contends that the defendants have violated his rights under the First, Fifth, Sixth, and Fourteenth Amendments. (Doc. No. 92.) The First Amendment clearly is implicated here. The Sixth Circuit has held that "'even minimal infringement upon First Amendment values constitutes irreparable injury sufficient to justify injunctive relief." *Am. Civil Liberties Union Fund of Mich. v. Livingston Cnty.*, 796 F.3d 636, 643 (6th Cir. 2015) (citing *Miller v. City of Cincinnati*, 622 F.3d 524, 540 (6th Cir. 2010)). The First Amendment also guarantees Gordon's right to access the courts. *Stanley v. Vining*, 602 F.3d 767, 770 (6th Cir. 2010) (stating that interference with one's legal mail can serve as the basis for "a cognizable substantive due process claim under the First Amendment").

Here, however, the Court finds it unnecessary to address Gordon's arguments piecemeal because they all suffer from similar fatal flaws. First, restrictions on his use of the mail and of other forms of communication are pursuant to a state court order, on motion from the local district attorney, to prevent Gordon from engaging in harassing conduct. (Doc. Nos. 49-5, 84-1.) This is not some arbitrary or capricious decision by Youker—the defendant is upholding a court order,

---

[5]     In at least one of his motions for injunctive relief, Gordon expressly alleges violations of his due process rights under the Fifth Amendment. (Doc. No. 70.) However, in elaborating, he appears to bring both a procedural due process claim and substantive due process claim under the Fourteenth Amendment. (*Id.*) Whatever Gordon's intention, the Court finds it unnecessary to consider the argument because the Fifth Amendment applies only to the Federal Government, which is not party to this suit. *Nichols v. Skrmetti*, Case No.: 3:25-cv-442, 2025 WL 3299727, at *2 n.7 (M.D. Tenn. Nov. 26, 2025). Similarly, aside from fleeting reference in the body of his motions for injunctive relief, it appears to the Court that Gordon abandoned any claim under the Fifth Amendment.

14

which is easily considered a penological interest. *See, e.g. Avery v. Turn Key Health Clinics, LLC,* Case No. 5:18-cv-05075, 2020 WL 714176, at *9 (W.D. Ark. Feb. 12, 2020) (dismissing plaintiff's First Amendment claim where jail officials suspended his communication privileges as ordered by a state court). Contrary to Gordon's assertion otherwise, orders of this nature are plainly constitutional. *See id.*

Additionally, Gordon contends that his "legal mail" is being interfered with. The filings on the record suggest otherwise. First, Gordon is clearly conflating—if not outright manipulating—regular mail to "legal mail." (Doc. No. 90.) For example, Gordon argues that, because his "sister, sister-in-law, ex-wife, niece & nephew, and grandparents are all lawyers[,]" then his correspondence with one or more of those individuals constitutes "privileged communication." (Doc. No. 92 at 3.) Aside from the fact that merely being an attorney does not confer on individuals the expectation of privileged communications, the state court apparently reviewed and rejected this argument. In its April 24, 2026 order altering Gordon's communication restrictions, the state court explicitly states that "Defendant's sister, Minon Frye, who is an attorney in Oklahoma, may be included on [Gordon's] "*non-legal*" mail list, but will not be included on the "Legal Mail" list that Gordon's criminal defense counsel was to submit to WCSO. (Doc. No. 84-1.)

Gordon also alleges that, due to the restrictions set forth by the state court, his legal mail, right to counsel, and right to access to the courts have all been interfered with or violated. (Doc. Nos. 71, 74, 77.) The record in this case alone demonstrates that to be false. Gordon continuously files pleadings, motions, notices, and responses to opposing counsel's filings in this case. Clearly his legal mail is being sent out of the jail, and he has had opportunity to substantively address the defendants' arguments. Moreover, Gordon has filed at least two other actions in this Court since beginning the instant action. Finally, Gordon, on at least two occasions since his pretrial detention,

attended hearings in his state court case(s) with two different criminal defense attorneys. (Doc. Nos. 49-5, 84-1.) For purposes of seeking injunctive relief, Gordon has failed to meet his burden of showing any likelihood of success on the merits of his miscellaneous constitutional claims pertaining to his mailing and other communication privileges.

The remainder of the Court's brief analysis addresses non-dispositive matters, previously disposed of in the instant action.

## B. Appointment of Counsel

In civil actions, unlike criminal proceedings, there is no constitutional right to counsel. *Lavado v. Keohane*, 992 F.2d 601, 605–06 (6th Cir. 1993) ("'Appointment of counsel in a civil case is not a constitutional right.'" (quoting *Wahl v. McIver*, 773 F.2d 1169, 1174 (11th Cir. 1985))); *Hollis v. Perry*, No. 3:17-cv-00626, 2018 WL 3572391, at *2 (M.D. Tenn. July 24, 2018) (citing *Willett v. Wells*, 469 F. Supp. 748, 751 (E.D. Tenn. 1977), for the proposition that "there is no constitutional right to an appointed counsel in a civil action"). District courts have discretion to appoint counsel for indigent civil litigants under 28 U.S.C. § 1915(e)(1), but there must be exceptional circumstances justifying such an appointment. *See Lavado*, 992 F.2d at 606 (quoting *Wahl*, 773 F.2d at 1174); *Childs v. Pellegrin*, 822 F.2d 1382, 1384 (6th Cir. 1987) (interpreting then § 1915(d)). To determine "whether exceptional circumstances exist, a district court considers the type of case, the ability of the pro se litigant to represent himself or herself, and the nature of the factual and legal issues involved." *Hollis*, 2018 WL 3572391, at *2.

Gordon has requested appointment of counsel multiple times and, for the reasons explained previously, the Court denies the instant motions for appointment of counsel. (Doc. Nos. 10, 25.)

16

### C.     Discovery

Gordon asks the Court to compel the WCSO Defendants to provide him with Defendant Aper's contact information. (Doc. No. 78.) The motion is denied for the same reasons set forth in the Court's April 29, 2026 Memorandum Order. (Doc. No. 64.)

### D.     Court's Caution to Gordon

Finally, the Court is obligated to caution Gordon about his repeated misrepresentations to the Court. Though Gordon proceeds *pro se*, he nevertheless is bound by the Federal Rules of Civil Procedure and this Court's Local Rules. Accordingly, Gordon is expected to proceed with candor and without casting wild accusations. As but one example, Gordon asserts that "[a]s it stands today[, he] can communicate with zero out of 7 billion people on earth without the defendants intru[ding] into confidential matters." (Doc. No. 74 at 18.) Hyperbole aside, Gordon mischaracterizes the state court order and the WCSO Defendants' obligation to obey that order in an effort to mislead the Court. Similarly, Gordon asserted that the state court made findings unsupported by the orders on record. Specifically, the state court in no way "overturned [its] own order as unconstitutional" after the April 17, 2026 hearing to which Gordon refers. (Doc. No. 92 at 3.) Instead, as shown by the record evidence, the state court actually further altered the initial order to prevent Gordon from utilizing any non-physical mail forms of communication. (Doc. No. 84-1.)

Gordon is cautioned that further misrepresentations and frivolous or repetitious "motions" may result in the Court limiting his ability to file in this matter or otherwise levy sanctions against him.

## III.     Recommendation

For the foregoing reasons, the Magistrate Judge **RECOMMENDS** that Plaintiff Robert Gordon's motions for injunctive relief (Doc. Nos. 59, 68, 70, 71, 74, 79) be **DENIED**.

17

Furthermore, Gordon's motions to appoint counsel (Doc. No. 76), for discovery (Doc. No. 78), and to consolidate cases (Doc. Nos. 80, 91, 95) are **DENIED**.

Any party has fourteen days after being served with this Report and Recommendation to file specific written objections. Failure to file specific objections within fourteen days of receipt of this Report and Recommendation can constitute a waiver of appeal of the matters decided. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004). A party who opposes any objections that are filed may file a response within fourteen days after being served with the objections. Fed. R. Civ. P. 72(b)(2).

Entered this 9th day of June, 2026.

_____
LUKE A. EVANS
United States Magistrate Judge