**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **ROBERT C. GORDON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No.  3:24:CV-1121** |
| **v.** | ) | **Judge Waverly D., Crenshaw, Jr.** |
| | ) | **Magistrate Judge Luke A. Evans** |
| **WILLIAMSON COUNTY SHERIFF'S** | ) | |
| **OFFICE, CHAD YOUKER, ASHLEY** | ) | |
| **LINDQUIST, f/n/u APER, CHRIS GRAY,** | ) | |
| **JEFF HUGHES,** | ) | |
| | ) | |
| **Defendants.** | ) | |

---

**MEMORANDUM OF LAW IN SUPPORT OF**
**WILLIAMSON COUNTY DEFENDANTS' MOTION FOR SANCTIONS**

---

Defendants Captain Chad Youker, Lieutenant Ashley Lindquist, Sergeant Chris Gray, and

Sheriff Jeff Hughes (collectively the "Williamson County Defendants" or "these Defendants") by

and through undersigned counsel, respectfully submit this Memorandum of Law in support of their

Motion for Sanctions against Plaintiff.[1]

**FACTS**

I. **Plaintiff's History in Williamson County Jail**

Robert "Cole" Gordon first entered the Williamson County Jail ("Jail") following his arrest

for domestic violence on November 30, 2022. (Affidavit of Captain Chad Youker ("Youker Aff."),

---

[1] This filing is substantially similar to a brief previously filed by separate counsel in a case involving the same Plaintiff and one of the same Defendants. See *Gordon v. Youker*, M.D. Tenn. Case No. 3:26-cv-00046, DE 37. Undersigned counsel has obtained that firm's permission to use and adapt its work to the extent the arguments in that prior filing apply in this case, and has ensured that the instant pleading meets all requirements of Fed. R. Civ. Pr. 11(b) in terms of its application to this case.  This filing also contains additional arguments that were not available to separate counsel in the other pending case, due to Plaintiff's continued sanctionable behavior that has occurred or has been discovered since that filing.

1

¶ 4.) He was booked and released on additional charges on December 6, 2022, February 8, 2023, February 23, 2023, and March 20, 2023. *Id*. He returned to the Jail from March 21, 2023 through April 11, 2023. *Id*. He was booked and released on May 31, 2023 and August 18, 2023. *Id*. Following a revocation of his bond, he was returned to the Jail on September 1, 2023 where he remains. *Id*.

At the time of his arrest, Erin Mishkin, a woman with whom Gordon had a prior relationship was identified as the victim of domestic violence and Gordon was not to communicate with her. (Youker Aff. ¶ 5, Ex. A.) [2] During Gordon's incarceration, Jail staff became aware that he had been communicating with the victim through phone calls, text messages, video chats, and written mail. (Youker Aff. ¶¶ 5-10, Ex. A-F.)

During a Williamson County Criminal Circuit Court hearing on August 20, 2025, the State asked the Court for an order prohibiting Gordon from contacting anyone outside the Jail except for the Public Defender's office either by phone, text, email or written mail. (Transcript of *State v. Gordon*, Williamson County Criminal Court Case B-CR230655, Aug. 20, 2025 Hearing ("8.20.2025 Transcript"), 6:21 -7:3, attached hereto as Exh. 1.) The State explained that the night before the hearing, the victim received a package at her house of adult women's diapers with a note that said, "The 20th will be a hoot." (8.20.2025 Transcript 7:17-11:9.) The victim testified that she understood the package and message to be a threat to her safety if she testified at the August 20 hearing. (8.20.2025 Transcript 233:1-235:4.) The victim explained that the diapers

---

[2] Gordon refers to the victim as his "wife." However, state court records show that the two were never married. Rather, Gordon forged the signatures of an officiant and witness on a marriage license in an effort to falsify the existence of a marriage. The "witness" whose name was forged by Gordon was Gordon's father, who had died years before the date on the marriage license. *Mishkin v. Gordon*, No. 23CV-52319, Williamson County Chancery Court, Memo and Order filed March 15, 2024, attached hereto as Exhibit 7. *See also*, Mishkin v. Gordon, Tennessee Court of Appeals No. M2024-00570-COA-R3-CV, Order dated 7/24/2024, dismissing appeal.

were a reference to something Gordon would say to her when he hit her, "put on your big girl panties." (8.20.2025 Transcript 234:8 -19.)  The State read text messages sent and received from Gordon through the Jail's messaging system arranging for someone outside the Jail to deliver the package to the victim.  (8.20.2025 Transcript 7:22 – 9:13.) The court found that Gordon was involved in sending the diapers and that he was using other people to harass the victim.  (Transcript of *State v. Gordon*, Williamson County Criminal Court, Apr. 17, 2026 Hearing ("4.17.2026 Transcript"), 64:12 – 65:22, attached hereto as Exh. 2.) The State further explained that Gordon used legal mail on prior occasions to contact the victim.  (8.20.2025 Transcript 10:2-12.)  He also mislabeled mail to his father and grandmother as "legal mail", writing "esquire" at the end of their names.  (8.20.2025 Transcript 10:11- 11:9.)  At the hearing, Youker described the methods Mr. Gordon used to contact the victim from the Jail, which included labelling mail "legal" and sending it to her and using other inmates to send mail to the victim.   (8.20.2025 Transcript 287:10- 294:3.)

Following the hearing, the Court entered an "Order for Jail to Restrict Defendant's Ability to Text/Email/Call/Video Call/Mail/Legal Mail" wherein the Court found that Gordon abused the Jail's communication system and ordered that the Sheriff's Office restrict his ability to communicate outside the Jail via text, email, phone call, video call, mail, or legal mail with certain exceptions.  *State v. Gordon*, Williamson County Criminal Court, Order 8.22.2025, attached hereto as Exh. 3.  The Order specified that Gordon was solely permitted to correspond with his criminal attorney, civil attorney, opposing counsel in civil cases in which he represents himself pro se, and County, State, and Federal Court Clerk's Offices. *Id.*

Gordon continued to misuse the communication systems in the Jail and the State filed a motion to enforce the Court's August 22, 2025 Order. The motion was heard on April 17, 2026. (4.17.2026 Transcript.) Youker was called to testify. The State presented video and documentary

3

evidence that Gordon mislabeled mail as "legal mail" and used the kiosk log in information of other inmates to send and receive messages with individuals who were not on the allowed contacts list in derogation of the Court's August 22, 2025 Order. (4.17.2026 Transcript.)

The Court found that Gordon used the kiosk log-in information of other inmates to circumvent the Court's prior order restricting his electronic communications and that his housing in general population with many other inmates made it difficult for the Jail to monitor and prevent such activity. (*State v. Gordon*, Williamson County Criminal Court, 4.23.2026 Order Regarding Defendant's Communications, attached hereto as Exh. 4.) The Court ordered that Gordon is prohibited from using any all forms of electronic communication pending further orders of the Court. *Id*. He is permitted to communicate with approved persons outside of the Jail by physical mail only. *Id*. Following the hearing, Gordon was moved to a smaller pod. Other inmates are housed in the pod, but there are fewer of them, so his kiosk and mail use can be more closely monitored. (Youker Aff. ¶ 11.)

On July 10, 2026, Gordon was convicted of ten counts of criminal contempt for willful violations of the Court's order. (Transcript of *State v. Gordon*, Williamson County Criminal Court, July 10, 2026 Hearing ("7.10.2026 Transcript"), attached hereto as Exh. 8.) The Court found that Plaintiff addressed five letters to his sister as "legal mail", made four phone calls and sent a text message from jail using the log in information of other inmates in direct violation of the April 23, 2026 order. *Id.* at 86:18-93:21.

Prior to the hearing, Gordon submitted a list of people with whom he sought to have legal correspondence. The State presented evidence regarding the identities of those individuals and the Court found that the list included a number of non-attorneys as well as addresses that did not match names. The Court noted that it has made great efforts to allow Gordon to communicate with his

4

attorneys but that Gordon "stuck his thumb in the eye of justice by attempting to circumvent" the Court's orders.  (7.10.2026 Transcript, 86:18 -88:15.)  The Court limited Gordon's legal mail to the two attorneys who represent him, court clerks, and opposing counsel in cases where he represents himself.  *Id.*  The Court stated, "Just the number of repeated, clear, obvious efforts of this defendant to completely ignore and directly contradict the orders of this Court is somewhat astonishing."  *Id.* at 93:13-16.

## II.    Plaintiff's Lawsuits.

Gordon has filed the following lawsuits in the Middle District Court in his name:

3:26-cv-00046 Gordon v. Youker (*Gordon v. Youker I*) (filed 01/14/2026)
3:26-cv-00620 Gordon v. Youker (*Gordon v. Youker II*) (filed 05/12/2026)
3:25-cv-00521 Gordon v. Horton (filed 05/07/2025, closed 01/02/2026) – dismissed as
        frivolous
3:26-cv-00718 Gordon v. Schwendimann et al (filed 05/29/2026)
3:24-cv-01121 Gordon v. Williamson County Sheriff's Office et al (filed 09/17/2024)
3:24-cv-01167 Gordon v. Leininger et al (filed 09/26/2024, closed 06/24/2025)
3:24-cv-01298 Gordon v. Mishkin (filed 10/29/2024, closed 11/04/2024) – dismissed for failure
        to state a claim
3:25-cv-00158 Gordon v. Smith, et al (filed 02/11/2025, closed 08/19/2025)
3:25-cv-00214 Gordon v. Turner et al (filed 02/25/25, closed 03/17/2026)[3]
3:26-cv-00619 Gordon v. The Board of Professional Responsibility et al (filed 05/12/2026)

Gordon has filed motions on his own behalf in the following lawsuits:

3:26-cv-00063 Garner v. Youker (filed 01/20/2026)
3:26-cv 00154 Riconoscuito v. Youker (filed 02/12/2026)
3:26-cv-00360 DeBerry v. Youker (filed 03/26/2026)
3:26-cv-00411 Woods v. Youker (filed 04/07/2026)

Additionally, there are around 50 cases filed by other inmates that were written in Gordon's handwriting and/or sent to the Court in envelopes with Gordon's name on them.[4] (Youker Aff. ¶ 24, Ex. O.) Of course, it is an inmate's right to sue and an inmate may assist others in filing

---

[3] The allegations in *Gordon v. Turner* are substantially the same as the allegations in the complaint filed in *Gordon v. Horton*.

[4] Because of Gordon's past abuses of the mail and legal mail systems in the Jail, a new protocol was implemented requiring inmates to put their name and ID number on the outside of envelopes used for legal mail.  (4.17.2026 Transcript, 12:2 – 13:22.)

5

lawsuits. However, limitations on an inmate's ability to file suit are appropriate where, as here, the inmate has repeatedly provided false information to the Court and filed lawsuits in the names of other inmates without their consent as detailed below.

## III. Plaintiff's Sanctionable Conduct

### a. Multiple Filings Containing False Allegations

Plaintiff has filed three lawsuits against some or all of these Defendants concerning various aspects of his confinement. In September 2024, he filed this lawsuit against several deputies and others containing various allegations of sexual abuse and retaliation, which these Defendants deny. *Gordon v. William County Sheriff's Office*, M.D. Tenn. No. 3:24-cv-01121 ("*Gordon v. WCSO*"). In January 2026, he filed a lawsuit against Youker related to access to Bibles in the Jail. *Gordon v. Youker*, M.D. Tenn. No. 3:26-cv-00046 ("*Gordon v. Youker I*"). In May 2026, he filed a lawsuit against Youker and other deputies alleging interference with his mail while incarcerated. *Gordon v. Youker*, M.D. Tenn. No. 2:26-cv-00620[5] ("*Gordon v. Youker II*").[6]

Plaintiff filed two affidavits, purportedly from two other inmates Marquavious Garner and Jeremiah Moore, alleging false claims of sexual abuse in the Jail. He filed the affidavits in this case on April 17, 2026 and May 7, 2026 (DE 60, 61, and 74-1), in *Gordon v. Youker I* on May 7, 2026 (M.D. No. 3:26-cv-00046, DE 20), and in *Garner v. Youker* (M.D. No. 3:26-cv-00063, DE 29-1) on May 5, 2026. The affidavit purportedly signed by Marquavious Garner states, "Deputy Aper forced and demanded that I masturbate for his sexual gratification against my will while

---

[5] This claim is at the Prison Litigation Reform Act (PLRA) screening stage.

[6] Plaintiff has two additional pending lawsuits that do not directly challenge the conditions of his confinement but arise from and/or reference similar underlying facts as the above lawsuits. On May 12, 2026, Plaintiff filed a lawsuit against the Board of Professional Responsibility regarding the allegations of interference with his mail in Williamson County Jail (M.D. Tenn. Case No. 3:26-cv-00619). On May 29, 2026, he filed a lawsuit against Williamson County Chancery Court Clerk Jakob Schwendimann and Youker alleging they denied him access to public records he requested in 2024 (M.D. Tenn. 3:26-cv-00718). Both are in the PLRA screening stage.

6

showering in the Williamson County Jail." The affidavit purportedly signed by Jeremiah Moore contains similar unfounded allegations along with other outlandish claims of fabricating evidence and retaliation by deputies. The affidavits were mailed from the Williamson County Jail in an envelope identifying Robert Gordon as the sender. (DE 60, 61, and 74-1.)

At the time that the affidavits were filed in this case, neither Garner nor Moore was housed in the Williamson County Jail. (Youker Aff. ¶ 13.) However, jail staff sought to investigate the claims of sexual abuse pursuant to the Prison Rape Elimination Act (PREA), 34 U.S.C. § 30302, *et seq*. On May 18, 2026, Lieutenant Seth Obermeyer traveled to the federal facilities where Garner and Moore were housed to interview them regarding the alleged sexual abuse incidents. (Youker Aff. ¶ 13.) When interviewed, Garner stated the events described in the affidavit never occurred and that he neither signed nor filed the affidavit. (Youker Aff. ¶ 13, Ex. H.) The same happened in Moore's interview. (Youker Aff. ¶ 13, Ex. I.) Moore stated that the alleged incidents never happened, he never filed a lawsuit, and that the signature on the affidavit was not his, noting that he does not write in cursive. (Youker Aff. ¶ 13, Ex. I.)[7]

On May 1, 2026, a former inmate, Raymond Freeman purportedly filed a complaint alleging that a WCSO officer sexually abused Freeman on September 1, 2025, and that he did not have access to a Bible starting on April 28, 2026. *Freeman v. Youker, et al*, M.D. Tenn. No. 3:26-cv-00582, DE 2. The Complaint was written in Gordon's handwriting and was mailed in an envelope identifying Gordon as the sender. *Id.* The Complaint alleges,

> On or about 9/1/25, [a deputy] touched my genitals in the shower area. He took his left hand and placed it on my penis while kissing my neck. He said it was a "body search and said I could not leave until I "finished." I proceeded to masturbate until I "finished." I was afraid I would be beaten or killed by police if I refused to comply

---

[7] Videos of the interviews of Garner and Moore will be physically filed with the Court, upon its permission.

> with direct orders. I tried to get a Bible or tablet for a Bible on 4/28/2026. Chad Youker has restricted access to tablets or Bibles and the coercion of atheist policy has placed a substantial burden on my sincerely held religious beliefs with the most restrictive means. I report [sic] the sexual assault to staff and was placed in solitary confinement by staff Ashley Lindquist and Chad Youker said it was not sexual assault because I had no cuts, bruises, or bleeding, just "emotional damage" and they would tell the DA to cut me a deal if I just let it go.

*Id.* Setting aside the absurdity of the allegations, Freeman was only ever housed in the Williamson County Jail from April 29, 2026 to May 1, 2026. (Youker Aff. ¶ 14)[8] Thus, he was not even housed in the Jail at the time of the alleged sexual abuse.

Freeman's Application to Proceed in District Court without Prepaying Fees or Costs was also completed in Robert Gordon's handwriting and mailed in an envelope identifying Gordon as the sender. *Freeman v. Youker, et al*, M.D. Tenn. No. 3:26-cv-00582, DE 2. In response to the request for Freeman's inmate trust account, Gordon wrote, "Jail admin will not provide account. I asked Chad Youker five times including 12/1/25, 1/3/26, 3/2/26, 4/29/26 and 4/30/26. He blocks all effort to comply with PLRA." *Id.* Freeman was not in the Jail on the first three dates and therefore could not possibly have asked for a trust account statement. As to the last two dates, Freeman did not submit any requests or grievances during his short time in the Jail. (Youker Aff. ¶ 14.) Gordon provided false information to the Court and the Court relied on that information in granting Freeman's IFP Application. *Freeman v. Youker, et al*, M.D. Tenn. No. 3:26-cv-00582, DE 5. Plaintiff is not permitted to request trust account information for other inmates. (Youker Aff. ¶ 23.) Claiming that the purported plaintiff requested and was denied a trust account statement allowed the case to move forward without any action on the part of the purported plaintiff.

---

[8] Freeman was in the booking area of the jail for about ten minutes on June 19, 2025 when he was booked in and out. He was not in any housing area or shower at that time. He was not in the Jail at all on the date of the alleged sexual abuse, September 1, 2025. (Youker Aff. ¶ 14.)

8

Plaintiff has made other false statements to the Court.[9] Two recent examples are illustrative. First, on June 9, 2026, Plaintiff filed a Notice of Assault in this case and *Gordon v. Youker I*, alleging Defendant pushed him "in the chest leaving red mark & bruise on April 29, 2026." (DE 100); (M.D. Tenn. No. 3:26-cv-00046, DE 31.) Video evidence of the incident, however, demonstrates that Youker did not shove Plaintiff. (Youker Aff. ¶ 16, Ex. J.) Rather, Plaintiff was being noncompliant, and Youker guided him back to his cell. (Youker Aff. ¶ 16, Ex. J.)  On the same day, Plaintiff filed a Notice of Christian Religious Services Cancelled in *Gordon v. Youker I,* alleging that Youker had cancelled all religious services. (M.D. No. 3:26-cv-00046, DE 32.) This allegation is false, as religious services are provided on a regular basis, as reflected in the schedule attached to this motion. (Youker Aff. ¶ 17, Ex. K.)

The Court recently cautioned Plaintiff against making misrepresentations and exaggerated claims: "Gordon is cautioned that further misrepresentations and frivolous or repetitious 'motions' may result in the Court limiting his ability to file in this matter or otherwise levy sanctions against him." (DE 102, Corrected Report and Recommendation Page ID# 1484.)

### b.  Multiple Identical Filings Across Unrelated Cases

Plaintiff's abuse of the judicial system is not limited only to filing false information.  He has also engaged in repetitive and abusive filings.  Plaintiff has submitted multiple identical filings across his pending cases and others, regardless of whether they relate to the particular case in which they are filed.

On April 30, 2026, Plaintiff filed an Emergency Motion for TRO *Gordon v. Youker I*, alleging sexual abuse by a WCSO deputy, interference with his legal mail, and unlawful placement in segregated housing. (M.D. No. 3:26-cv-00046, DE 14.) On May 4, 2026, Plaintiff filed the exact

---

[9] This Motion contains examples of falsities that are illustrative of a pattern but is by no means an exhaustive exploration of the misrepresentations made by Plaintiff.

9

same motion in the instant litigation. (DE 70.) Plaintiff requested the Court to prohibit jail staff from interfering with his mail and require them to place Plaintiff back in general population. *Id.* On May 1, 2026, Plaintiff again filed identical emergency motions for TRO in this case and *Gordon v. Youker I* with similar allegations of sexual abuse, mail interference, and unlawful housing restrictions. (DE 68); (M.D. Tenn. No. 3:26-cv-00046, DE 16.) Also on May 1, 2026, Plaintiff filed another Motion for TRO in *Gordon v. Youker I* and *Garner v. Youker*, again alleging sexual abuse, mail interference, and unlawful housing restrictions. (M.D. Tenn. No. 3:26-cv-00046, DE 15); (M.D. Tenn. No. 3:26-cv-00063, DE 25.) On May 7, 2026, he filed additional emergency motions, in this case and *Gordon v. Youker I*, alleging the same claims and requesting the same relief. (DE 74)[10]; (M.D. Tenn. No. 3:26-cv-00046, DE 20.) Recently, Plaintiff's filings have consisted largely of compilations of his previous filings.[11]

None of the above lawsuits concern legal mail interference or housing restrictions, but Plaintiff nevertheless filed identical motions in each case seeking relief based on those unrelated

---

[10] Pages 1 through 10 of this Emergency Motion for TRO are identical to a motion Plaintiff previously filed in Gordon v. Youker I. (M.D. Tenn. No. 3:26-cv-00046, DE 15.)

[11] In *Gordon v. Youker I*, Pages 4 and 5 of Plaintiff's First Emergency Motion (M.D. Tenn. No. 3:26-cv-00046, DE 7, First Emergency Motion Page ID# 55-56) are identical to pages 2 and 3 of Plaintiff's Motion for Ex Parte TRO. (M.D. Tenn. No. 3:26-cv-00046, DE 25, Motion for Ex Parte TRO Page ID# 369-370.) Pages 3 through 7 of the Amended Complaint (M.D. Tenn. No. 3:26-cv-00046, DE 6-1, Amended Complaint Page ID# 37-41) are identical to pages 4 through 8 of the Motion for Ex Parte TRO. (M.D. Tenn. No. 3:26-cv-00046, DE 25, Motion for Ex Parte TRO Page ID# 371-375.) Pages 7 through 14 of Plaintiff's First Emergency Motion (M.D. Tenn. No. 3:26-cv-00046, DE 7, First Emergency Motion Page ID# 58-65) are identical to pages 10 through 17 of Plaintiff's Motion for Ex Parte TRO. (M.D. Tenn. No. 3:26-cv-00046, DE 25, Motion for Ex Parte TRO Page ID# 377-384.) Pages 5 through 15 of Plaintiff's Second Emergency Motion (M.D. Tenn. No. 3:26-cv-00046, DE 13, Second Emergency Motion Page ID# 106-116) are identical to pages 18 through 28 of Plaintiff's Motion for Ex Parte TRO. (M.D. Tenn. No. 3:26-cv-00046, DE 25, Motion for Ex Parte TRO Page ID# 385-395.) Pages 4 through 15 of Plaintiff's First Emergency Motion (M.D. Tenn. No. 3:26-cv-00046, DE 7, First Emergency Motion Page ID# 55-66) are identical to pages 2 through 13 of Plaintiff's Memorandum. (M.D. Tenn. No. 3:26-cv-00046, DE 28, Memorandum Page ID# 439-450.)

allegations.[12] These filings demonstrate a pattern of using any available lawsuit, regardless of the parties involved or the claims at issue, as a vehicle to present his current grievances to the Court in derogation of the Court's rules and procedures, thereby wasting judicial resources.

### c. Multiple Reports of Lawsuits Filed on Inmates' Behalf Without Their Knowledge or Consent

In addition to the two false affidavits filed in Garner's and Moore's names without their knowledge, Plaintiff submitted six additional filings in Garner's case on his own behalf. *Garner v. Youker*, M.D. Tenn. No. 3:26-cv-00063, DE 24, 25, 26, 27, 28, and 29. These filings again address the alleged sexual abuse, mail interference, and unlawful housing restrictions. Plaintiff is not a party in *Garner v. Youker*, yet has repeatedly filed documents in that case seeking relief for his own benefit. The Court dismissed these filings and clarified that "he remains a non-party in this case and has no ability to file the referenced motions that seek substantive relief from the Court in this case." (M.D. No. 3:26-cv-00063, DE 34, Order Page ID# 465.)

There is evidence that additional lawsuits have been filed in inmates' names without their authorization. On April 20, 2026, a complaint purportedly filed by Manuel Villalta was submitted to the Court alleging that Defendant Youker imposed a "Bible ban" from January 18, 2025 to December 1, 2025, and a "minister ban" began on April 1, 2026. *Villalta v. Youker*, M.D. Tenn. No. 3:26-cv-00507, DE 1. Villalta was housed in the Jail from April 10, 2026 to April 13, 2026. (Youker Aff. ¶ 18.) Thus, he could not have signed this complaint on April 20, nor was he in the Jail during the alleged "Bible ban." Villalta's complaint was mailed in an envelope identifying Robert Gordon as the sender. *Villalta v. Youker*, M.D. Tenn. No. 3:26-cv-00507, DE 1, PageID # 12.

---

[12] The Court dismissed two of Plaintiff's TRO motions in *Gordon v. Youker I* (M.D. Tenn. No. 3:26-cv-00046, DE 15 and 16) because they seek relief based on claims not alleged in the Amended Complaint. (M.D. Tenn. No. 3:26-cv-00046, DE 18, Memorandum and Order Page ID# 236.)

On April 28, 2026, inmate Cody Wiggins filed a letter with the Court stating that he "DID NOT file the claim in M.D. Tenn. No. 3:26-cv-00457. In fact, the inmate identification number is incorrect and someone must have filed it on my behalf." *Wiggins v. Youker,* M.D. Tenn. No. 3:26-cv-00457, DE 6. The *Wiggins* complaint was written in Gordon's handwriting.[13]

On May 15, 2026, during mail pass, two inmates, Christopher LeClaire and Erik Lores-Acosta, received legal mail regarding complaints that had been filed in their names. (Youker Aff. ¶ 19, Ex. L.) Both inmates appeared confused and informed the deputy distributing the mail that they had not filed the claims. (Youker Aff. ¶ 19, Ex. L.) After reviewing the documents, LeClaire said, "That dude probably did it. Yeah, Cole. That's his name."[14] (Youker Aff. ¶ 19, Ex. L.) LeClaire and Lores-Acosta's complaint were mailed in an envelope identifying Robert Gordon as the sender. *LeClaire v. Youker*, M.D. Tenn. No. 3:26-cv-00527, DE 1, Page ID# 12; *Lores-Acosta*, M.D. Tenn. No. 3:26-cv-00508, DE 1 PageID# 12.

On June 2, 2026, James Dalton flagged down Deputy Finney to discuss legal mail he received. (Youker Aff. ¶ 20, Ex. M.) Specifically, Dalton directed the deputy to *Dalton v. Youker*, M.D. Tenn. No. 3:26-cv-00524, DE 9, fn. 2, PageID# 59, which states,

> Specifically, the Amended Complaint alleges that Youker screamed, "You want to file grievances and lawsuits about your f--king Bibles? Then I'm taking away all of your tablets. You forget you are in Williamson County where I make the goddamn law." (*Id.* at 8). Another jail official, Deputy Fairchild, allegedly said to Plaintiff at that time, "Keep filing your f--king grievances about your faggot-ass Bibles and I'll make sure you never see a goddamn Bible again. I'll lock all tablets so your faggot-ass can think about being butt f--ked in prison." (*Id.*) Fairchild is not named as a Defendant in this action.

---

[13] The Complaint was submitted in an envelope with the name of another inmate, Chris Bushaw. Having other inmates send legal mail on his behalf was a common practice for Plaintiff when he was housed in a large pod. *See Williamson County Criminal Court Transcripts,* 8.20.2025 and 4.17.2026.

[14] Cole is Robert Gordon's middle name.

Dalton stated, "I didn't write that." (Youker Aff. ¶ 20, Ex. M, video time stamp 2:35.) Dalton informed the deputy that the allegations in the document were not true and that he had signed the Complaint without reading what was in it. (Youker Aff. ¶ 20, Ex. M, video time stamp 5:44.) When discussing the allegations against Fairchild, Dalton stated, "That's f--king crazy." Deputy Finney responded, "That lady is a woman of God, she would not say that" and Dalton replied, "Right." (Youker Aff. ¶ 20, Ex. M, video time stamp 3:33-3:37.) Dalton identified "Cole Gordon" as the person who wrote the false statements. (Youker Aff. ¶ 20, Ex. M, video time stamp 5:23).[15] Based in part on this false assertion, Dalton's retaliation claim survived PLRA screening. *Dalton v. Youker*, M.D. Tenn. No. 3:26-cv-00524, DE 9, Memorandum Opinion and Order Page ID# 62.

The Court issued its Memorandum Order and Opinion on May 26, 2026. A summons to Youker was supposedly signed on May 27, 2026. *Dalton v.* Youker, M.D. Tenn. No. 3:26-cv-00524, DE 9 and 13. It is extremely unlikely that Dalton could have received a copy of the Court's May 26 Order through the mail by May 27. Also, on June 2, 2026, in the interaction with the deputy, Dalton expressed reservations about further pursuing the claim because of the falsehoods in the Complaint[16] which would not make sense if he had already completed and submitted the summons paperwork. The signature on the summons does not match the signature of James Dalton on the Complaint and the summons was mailed in an envelope identifying Robert Gordon as the sender. *Dalton v. Youker*, M.D. Tenn. No. 3:26-cv-00524, DE 1 & 13. On July 17, 2026, Dalton submitted a letter to the Court requesting that the case be dismissed, stating that he had been misled and that the complaint contained allegations that were false. M.D. Tenn. No. 3:26-cv-00524, DE

---

[15] Plaintiff repeated this false allegation in this lawsuit. (DE 98.)

[16] Referring to the false allegations, Dalton stated, "It's on the law library now. Right. So now it's like what the f--k. Even if I don't follow through, it's still there, that's horrible, that is f--king horrible." (Youker Aff. ¶ 20, Ex. M, time stamp 5:50 – 6:10.)

24. The letter states,

> I'm completely withdrawing from this lawsuit. I don't agree with it. From the start I was told a lie. The statements made I didn't hear them, and I didn't say they (Chad Youker or Fairchild) stated them…I didn't even write the complaint, or file the lawsuit. None of its my handwriting, and some papers were sent out without my knowledge, and Deputy Fairchild never said what was allegedly said [sic]

*Id.*

This conduct appears to be ongoing. On June 9, 2026, a summons was submitted in Inmate Dwayne Woods' case with no signature and in an envelope identifying Robert Gordon as the sender. *Woods v. Youker*, M.D. Tenn. No. 3:26-cv-00411, DE 8. Similarly, on the same day, a summons was submitted in Tony DeBerry's lawsuit purportedly with his signature and in an envelope identifying Robert Gordon as the sender. Again, DeBerry's signature on the summons does not match the signature on the Complaint. *DeBerry v. Youker*, M.D. Tenn. No. 3:26-cv-00360, DE 1 & 12. On June 12, 2026, a summons was submitted in Kevin Riconoscuito's lawsuit purportedly with his signature. However, the signature on the summons does not match the signature on the Complaint. *Riconoscuito v. Youker*, M.D. Tenn. No. 3:26-cv-00154, DE 1 & 16. Similarly, a summons was issued to Youker in *Holland v. Youker*, M.D. Tenn. No. 3:26-cv-00435 that is dated June 8, 2026. It is exceedingly unlikely that Holland was aware of the issuance of the summons because he was released from the Jail on June 2, 2026 before his complaint even passed the Court's PLRA screening. (Youker Aff. ¶ 22.) Further, the summons is not signed. It was written in Gordon's handwriting and mailed in an envelope identifying Robert Gordon as the sender. *Holland v. Youker*, M.D. Tenn. 3:26-cv-00435, DE 13.

On June 29, 2026, a complaint purportedly filed by Charles Crain was submitted to the Court alleging that Defendant Youker imposed a "Bible ban" on January 18, 2025. M.D. Tenn. No. 3:26-cv-00848, DE 1. The complaint was signed on June 17, 2026. *Id.* Crain entered the Jail on June 13, 2026 and was released on June 14, 2026. (Youker Aff. ¶ 25.) Crain's complaint was mailed

14

in an envelope identifying Robert Gordon as the sender. M.D. Tenn. No. 3:26-cv-00848, DE 1. On June 29, 2026, a substantially similar complaint was purportedly filed by Ricardo Abel-Nabor. M.D. Tenn. No. 3:26-cv-00880, DE 1. The complaint was signed on June 16, 2026. M.D. Tenn. No. 3:26-cv-00880, DE 1. Nabor entered the Jail on June 12, 2026 and was released on June 14, 2026. (Youker Aff. ¶ 26.) Nabor's complaint was mailed in an envelope identifying Robert Gordon as the sender. M.D. Tenn. No. 3:26-cv-00880, DE 1. On July 21, 2026, a substantially similar complaint purportedly filed by Gage Hevey. M.D. Tenn. No. 3:26-cv-01015, DE 1. The document does not include a signing date. *Id*. Hevey entered the Jail on the morning of June 23, 2026 and was released in the evening of June 23, 2026. (Youker Aff. ¶ 27.)[17]

### e. Multiple Lawsuits Bearing the Same Handwriting and Apparent Forged Signatures

Youker is aware of more than fifty pending lawsuits against him asserting similar claims of religious restrictions. While inmates are, of course, free to pursue the same or similar claims, the evidence suggests that Plaintiff is controlling these lawsuits and in some or all cases, without the consent or knowledge of the plaintiffs. Most complaints are drafted in Plaintiff's handwriting. Further, on April 23, 2026, Youker received a letter from Plaintiff stating that Plaintiff would "ensure all other pending lawsuits from inmates [would] terminate" if Youker met several demands, including changing Plaintiff's housing placement.[18] (Youker Aff. ¶ 21, Ex. N.)

After receiving several reports of filings submitted and signed without inmates' consent

---

[17] This is not an exhaustive list, but rather a few recent examples of inmate lawsuits alleging events that occurred when inmate was not housed at the Jail or containing signatures dated when the inmate was no longer incarcerated there.

[18] Gordon outlined several demands, including changing his housing placement, and wrote, "If you are agreeable please have the deputies return me to my general population cell by noon on Monday April 27, 2026. Upon returning to general population, I will write up the paperwork to dismiss all litigation. If I am not moved to general population by noon on 4/27/26 I will assume you do not agree and further litigation will ensue." (Youker Aff. ¶ 21, Ex. N.)

15

and identifying other irregularities, Defendants investigated further and discovered that many of the complaints bear signatures that do not match the signatures of the purported plaintiffs. A document showing comparisons of inmate signatures from jail intake documents to inmate signatures on complaints and IFP applications is provided herewith. (Youker Aff. ¶ 24, Exh. O.) The evidence indicates that Plaintiff engaged in a pattern of filing frivolous lawsuits in the names of other inmates without their participation, resulting in repeated unauthorized filings before the Court.

## IV. Plaintiff's Prior False Testimony and Frivolous Litigation

Plaintiff has a history of making false statements under oath. On June 19, 2020, the Davidson County Circuit Court heard a motion filed by Plaintiff's ex-wife seeking a modification of parenting time based on Plaintiff's conduct. In its order, the Court stated that:

> 1. Father is one of the worst witnesses which the Court has ever had the opportunity to hear.
> 2. Father was given at least three opportunities by the Court to tell the truth, and Father continued to perjure himself. Father was given multiple opportunities to tell the truth to the Court, and refused to do so. Father's testimony is of no use to the Court. The Court questions whether Father is actually able to tell the truth.

*Gordon v. Gordon*, No. 20D-162, Fourth Circuit Court for Davidson County, Tennessee, Order filed 7/9/2020, attached hereto as Exhibit 5.  The Court also found the testimony of Plaintiff's ex-girlfriend to be very compelling and credible. *Id.* In Plaintiff's ex-girlfriend's affidavit, she explained how Plaintiff would continuously lie to the Court and ask her to lie for him. *Gordon v. Gordon*, No. 20D-162, Fourth Circuit Court for Davidson County, Tennessee, Affidavit filed 5/22/2020, attached hereto as Exhibit  6.

In Williamson County Chancery Court, Erin Mishkin filed a motion seeking to establish that she and Plaintiff were never legally married.  The Court found that on September 17, 2021, Plaintiff and Mishkin went to the Williamson County Clerk's office ("Clerk's office") to obtain a

marriage license, where they were told a marriage ceremony was required within thirty days for the marriage to be valid. *Mishkin v. Gordon*, No. 23CV-52319, Williamson County Chancery Court, Memo and Order filed March 15, 2024, attached hereto as Exhibit 7. However, there was never a marriage ceremony. *Id.* During direct examination, Plaintiff originally claimed that the ceremony was performed at the Clerk's office when they received their marriage license. *Id.* Then, during cross examination, Plaintiff stated the parties had a marriage ceremony in their backyard. *Id.* Once the relationship started to get volatile and Plaintiff began threatening Mishkin, she went to the Clerk's office to see the marriage certificate. *Id.* On the certificate were signatures from an alleged minister, whose name she did not recognize, and Plaintiff's deceased father, who had been dead for three years prior to the date that he had allegedly signed as a witness. *Id.* The alleged minister testified that he never performed a marriage ceremony for Plaintiff and Mishkin, and the signature on the certificate did not belong to him. *Id.* "The Court [found] Mr. Gordon utterly not credible and [found] Mr. Gordon falsified this document and forged the signatures of [the alleged minister] and [Plaintiff's father]." *Id.*[19]

Prior to the present litigation, Plaintiff filed five lawsuits that were dismissed by the Court. Plaintiff sued his ex-wife and her attorney and in a separate action, sued his own attorneys who represented him in an action to terminate his parental rights claiming the defendants violated the Indian Child Welfare Act. *Gordon v. Leininger*, 2025 U.S. Dist. LEXIS 119512 (M.D. Tenn. June 24, 2025); *Gordon v. Smith*, 2025 U.S. Dist. LEXIS 160670 (M.D. Tenn. Aug. 19, 2025). He sued Erin Mishkin alleging various causes of action and the case was dismissed for failure to state a claim. *Gordon v. Mishkin*, 2024 U.S. Dist. LEXIS 253952 (M.D. Tenn. Nov. 4, 2024). He filed

---

[19] Gordon's appeal of the decision has since been dismissed. *Mishkin v. Gordon*, Tennessee Court of Appeals No. M2024-00570-COA-R3-CV, Order dated 7/24/2024.

defamation claims against Mishkin and her attorneys in two cases: the Court dismissed *Gordon v. Horton*, 2026 U.S. Dist. LEXIS 117 (M.D. Tenn. Jan. 2, 2026) as frivolous and later dismissed *Gordon v. Turner*, 2026 U.S. Dist. LEXIS 55156 (M.D. Tenn. March 17, 2026) for lack of jurisdiction.[20] Plaintiff's history before the courts demonstrates a persistent pattern of false statements, frivolous filings, and malicious litigation.

## ARGUMENT

**I.    The Court should exercise its inherent authority to impose sanctions and filing restrictions based on Plaintiff's history of abusive conduct.**

Courts have inherent authority to sanction a party when it litigates "in bad faith, vexatiously, wantonly, or for oppressive reasons." *United States ex rel. Tingley v. PNC Fin. Serv. Grp.*, 705 F. App'x 342, 344 (6th Cir. 2017).  A district court's use of its inherent authority to impose sanctions is reviewed for an abuse of discretion and its findings of fact, including findings of bad faith, are reviewed for clear error.  *Id.* "These powers are governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Lipin v. Wisehart*, No. 24-3365, 2024 LX 10118, at *5 (6th Cir. Nov. 26, 2024). A court may impose sanctions under its inherent authority, even if sanctions could be imposed under other rules or statutes. *Tingley*, 705 F. App'x at 344.  There must be more than just a lack of merit to warrant sanctions, like fraud on the court, improper use of the court, harassment, delay or disruption of litigation.  *Tingley*, 705 F. App'x at 354.  Sanctions may be imposed on pro se litigants.  *See Lipin*, 2024 LX 10118, at *5.

Courts must provide due process in determining both the requisite bad faith and the

---

[20] Plaintiff also filed state court actions against many of these same parties. *See, e.g.*, *Robert Cole Gordon v. Morgan Smith, et al*, Tenn. Ct. App. M2025-00537-COA-R3-CV, *Robert Cole Gordon v. Morgan Smith, et al.*, Tenn. Ct. App. M2024-01927-COA-R3-CV, *Robert Gordon v. Erin Mishkin*, Tenn. Ct. App. M2024-01647-COA-R3-CV.

appropriate sanction, but there is no requirement for a full evidentiary hearing before imposing sanctions. *Plastech Holding Corp. v. WM GreenTech Auto. Corp.*, 257 F. Supp. 3d 867, 872 (E.D. Mich. June 30, 2017). Due process requires notice and an opportunity to respond or to be heard. *Id.* (citing *Ray A. Scharer & Co. v. Plabell Rubber Prods.*, 858 F. 2d 317, 321 (6th Cir. 1988)). This Motion for Sanctions satisfies the fair notice requirement and Plaintiff will have the opportunity to file a response to this motion, which is all that due process requires. *Id.*

These Defendants respectfully request that the Court: (1) Dismiss with prejudice all of the pending cases filed in Robert Gordon's name; (2) Recommend that the dismissals be deemed strikes under the Prison Litigation Reform Act (PLRA); (3) Restrict Robert Gordon from filing any civil case or document including any person other than himself as a plaintiff; and (4) Restrict Robert Gordon from filing further pro se actions without a certification from the Court that the claims asserted are not frivolous and that the suit is not brought for an improper purpose.

**A. Dismissal with prejudice of all pending cases filed in Robert Gordon's name is an appropriate sanction.**

Dismissal is an appropriate sanction "when the plaintiff has abused the judicial process by seeking relief based on information that [he] knows is false." *Shelly v. Fischer*, Nos. 24-2203, 24-2204, 2025 LX 280119, at *5-6 (7th Cir. July 24, 2025) (dismissal was appropriate sanction where plaintiff filed forged documents); *Amadasu v. Gen. Revenue Corp.*, No. 1:04cv772, 2008 U.S. Dist. LEXIS 5260, at *14-15 (S.D. Ohio Jan. 24, 2008) (dismissal was appropriate sanction where the plaintiff demonstrated a propensity to forge or alter documents); *Petlechkov v. Fed. Express Corp.*, No. 25-5322, 2026 U.S. App. LEXIS 4313, at *7-8 (6th Cir. Feb, 11, 2026) (acknowledging dismissal of a claim as an appropriate sanction); *Shomer v. Rheinscheld*, No. 2:24-cv-01283, 2025 LX 483520, at *5-6 (S.D. Ohio Sept. 26, 2025) ("If a party has engaged in bad-faith conduct, appropriate sanctions may include the dismissal of the party's claims.")

Dismissal may be an appropriate sanction when a party has committed a fraud upon the court, even if the party has an otherwise meritorious case. *Shomer*, 2025 LX 483520, at \*5-6 (citing *Plastech Holding Corp. v. WM GreenTech Auto. Corp.*, 257 F. Supp. 3d 867, 872 (E.D. Mich. June 30, 2017)). In the Sixth Circuit, proof by a preponderance of the evidence is sufficient to show fraud upon the court for purposes of sanctions. *Id.*; *Williamson v. Recovery Ltd. P'ship*, 826 F.3d 297, 302 (6th Cir. 2016) (holding that test used to decide whether a judgment should be vacated for fraud on the court under Rule 60, which requires clear and convincing evidence, was not applicable because the case at bar involved a court's inherent power to sanction). "Courts have routinely held that a party commits a fraud on the court when it fabricates evidence and submits that evidence to the court to support the party's claims." *Plastech,* 257 F. Supp. 3d at 872 (collecting cases). Falsifying evidence is a fraud upon the court because it "undermines the most basic foundations of our judicial system." *Id.* (citing *Ramirez v. T&H Lemont, Inc.*, 845 F.3d 772, 782 (7th Cir. 2016)).

Here, Plaintiff has submitted false sworn statements to the Court. Plaintiff submitted affidavits containing false allegations of sexual abuse and the forged signatures of Garner and Moore to the Court in *Garner v. Youker*, M.D. Tenn. No. 3:26-cv-00063, DE 29-1, *Gordon v. Youker I*, and this case in an effort to bolster his own claims. Then he submitted a complaint on behalf of another inmate (*Freeman v. Youker,* M.D. Tenn. No. 3:26-cv-00582), wherein he wrote a detailed account of sexual abuse that could not possibly have occurred. Fabricating allegations of any kind is inexcusable. Making false allegations of sexual abuse is particularly egregious. It is unfair to the innocent deputies who are named in public records and accused of heinous conduct they did not commit and to actual victims of sexual abuse who may not be taken seriously because of people, like Plaintiff, who fabricate such serious allegations. Plaintiff's conduct warrants

20

sanctions, including dismissal of all cases in which he filed the false allegations, and additional sanctions as outlined below.

Additionally, Plaintiff made false allegations that Youker assaulted him in "Notices of Assault" filed in this case and *Gordon v. Youker I*. Video evidence shows such assault did not occur. (Youker Aff. ¶ 16, Ex. J.) Plaintiff filed a Notice of Christian Religious Services Cancelled with this Court falsely claiming that all Christian classes and services at the Jail have been cancelled. (Youker Aff. ¶ 17, Ex. K.) Plaintiff's actions amount to fraud upon the Court and undermine the integrity of the judicial process and therefore dismissal with prejudice of all pending cases in Robert Gordon's name is an appropriate sanction.

### B. These Defendants respectfully request that the Court recommend that the dismissals be treated as strikes under the PLRA.

Under the three strikes rule of the Prison Litigation Reform Act (PLRA), an inmate accrues a strike when a case is dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted. 28 U.S.C. § 1915(g); *Simons v. Washington*, 996 F.3d 350, 351 (6th Cir. 2021). After three strikes, the inmate is prohibited from filing lawsuits without paying the initial court fee for bringing them. *Id.* While a court that dismisses a prisoner's lawsuit may not bind a later court with a strike determination, a district court may nonetheless recommend that a future court treat the dismissed action as a strike. *Id.* Repeated filings containing false allegations of sexual and physical abuse support a finding that the action is malicious. Therefore, Defendants request that the Court find that Plaintiff's conduct renders this action malicious within the meaning of 28 U.S.C. § 1915(g) and recommend that any future court considering Plaintiff's in forma pauperis status treat this dismissal as a strike.[21]

---

[21] The dismissals of at least two other cases qualify as strikes against Plaintiff: dismissed *Gordon v. Horton*, 2026 U.S. Dist. LEXIS 117 (M.D. Tenn. Jan. 2, 2026), which was dismissed as frivolous

**C. Restricting Plaintiff from filing lawsuits or documents in anyone else's name is an appropriate sanction.**

In addition to dismissal, a court may issue an injunctive order to prevent prolific litigants from filing harassing and vexatious pleadings. *Petlechkov v. Fed. Express Corp.*, No. 25-5322, 2026 U.S. App. LEXIS 4313, at *7-8 (6th Cir. Feb, 11, 2026); *Lipin*, 2024 LX 10118, at *5. When warranted, a court may place limits on a reasonably defined category of litigation because of a recognized pattern of repetitive, frivolous, or vexatious cases within that category. *Petlechkov*, 2026 U.S. App. LEXIS 4313, at *7-8.

In *Bennett v. Mays*, No. 3:19-cv-00406, 2019 U.S. Dist. LEXIS 102588, at *22-23 (M.D. Tenn. June 18, 2019), Bennett, a pro se inmate plaintiff who had three strikes under the PLRA, began to add other inmates as co-plaintiffs to his lawsuits without their authorization. Some of the inmates he named filed unprompted notices or motions stating they had not agreed to be plaintiffs. Because only Bennett signed the complaint, the Court found him to be sole plaintiff and dismissed the cases. In response, Bennett listed a fellow inmate, Jones, as a co-plaintiff in two cases and included what purported to be Jones' signature on the complaints. The Court asked Jones whether he agreed to be a co-plaintiff and Jones responded that he did not. The Court dismissed the two cases. Bennett filed apparently manipulated affidavits and in forma pauperis applications intended to show that the other inmates were voluntary participants in the lawsuit, including affidavits with forged signatures. The Court had previously declined to impose a pre-filing sanction against Bennett because "the PLRA's screening requirements gave the Court all the tools necessary to address issues presented by this fairly predictable pattern." However, because Bennett began falsely including other inmates as plaintiffs, those tools no longer sufficed. The Court barred

---

and *Gordon v. Mishkin*, 2024 U.S. Dist. LEXIS 253952 (M.D. Tenn. Nov. 4, 2024) which was dismissed for failure to state a claim.

Bennett from filing any civil case including any person other than himself as a plaintiff.

Restricting Plaintiff from filing lawsuits or documents in anyone else's name is appropriate in this case. As explained above, Plaintiff has filed complaints and other documents in other inmates' names without their knowledge or consent. Plaintiff wrote and submitted affidavits containing false allegations of sexual abuse and the forged signatures of Garner and Moore to the Court. Garner and Moore denied that any abuse occurred and denied that they wrote or signed the affidavits. (Youker Aff. ¶ 13, Ex. H & I.) Several inmates' complaints were written in Gordon's handwriting and contain signatures that do not match those of the inmate plaintiffs. (Youker Aff. ¶ 24, Exh. O.) Inmates have stated that Plaintiff filed documents on their behalf without their knowledge using forged signatures. *Wiggins v. Youker,* M.D. Tenn. No. 3:26-cv-00457, DE 6l; (Youker Aff. ¶ 19, Ex. L.) Other times, as with inmate Dalton, the inmate signed the document without reading it, resulting in false claims being filed with the Court. (Youker Aff. ¶ 20, Ex. M.); (M.D. Tenn. No. 3:26-cv-00524, DE 24.) Due to his history of filing documents on behalf of other inmates without their knowledge or consent and for his own benefit rather than theirs, Plaintiff should be restricted from filing lawsuits or documents on behalf of other inmates.

Plaintiff may argue that he should be permitted to file on behalf of other inmates because they need assistance. While in some circumstances, inmates may receive assistance from another inmate to ensure meaningful access to the courts, that purpose is frustrated when the inmate is not reviewing and signing filings and may not even be aware that filings are being made on his behalf. *See Garrison v. Mich. Dep't of Corr.*, 333 Fed. Appx. 914, 918 (6th Cir. 2009) ("Court have acted to curtail the actions of unscrupulous jailhouse lawyers whose services do their fellow inmates more harm than good") (citing *Green v. Wyrick*, 428 F. Supp. 732, 736-40 (W.D. Mo. 1976) (enjoining an inmate from providing legal services to other inmates after finding "that he failed to

follow court rules and procedures, charged fees, used other inmates' lawsuits primarily as a vehicle to advance his own grievances, filed actions on behalf of people who had not consented to his involvement, and buried his clients' straightforward claims in pages of otherwise frivolous material.")) This is especially true here, where in addition to filing false claims in other inmates' names, Plaintiff attempted to use those other inmates' lawsuits as leverage to secure a housing assignment change for himself. (Youker Aff. ¶ 21, Ex. N.) Rather than harming other inmates, placing filing restrictions on Plaintiff would protect them from further exploitation.

### D. Prefiling restrictions are an appropriate sanction.

"A district court has the authority to issue an injunctive order to prevent prolific litigants from filing pleadings without first obtaining court approval to do so." *Marbly v. Wheatley*, 87 Fed. Appx. 535, 536 (6th Cir. 2004). Courts have imposed restrictions barring pro se litigants from filing pro se actions without a certification from the Court or an attorney that the claims are not frivolous and that the suit is not brought for an improper purpose. *Rolle v. Litkovitz*, No. 1:21-cv-552, 2021 U.S. Dist. LEXIS 173892, at *11-13 (S.D. Ohio Sep. 14, 2021) (collecting cases).

Among other things, Plaintiff submitted two affidavits falsely alleging sexual abuse on behalf of two inmates without their knowledge, filed lawsuits on behalf of two inmates concerning incidents that allegedly occurred while those inmates were not even housed at the Jail, initiated at least two lawsuits on behalf of inmates who were entirely unaware that litigation had been filed in their names, and submitted at least three summonses where evidence indicates the purported plaintiff was not aware and did not consent to the filing. Most, if not all, of these filings bear Plaintiff's handwriting and forged signatures. Moreover, Defendants have identified additional filings containing Plaintiff's handwriting and signatures inconsistent with those of the purported filers, indicating that those inmates are likely unaware that filings were submitted in their names.

Prefiling restrictions are appropriate here. Given Plaintiff's history of filing frivolous

24

litigation, making false statements under oath, and submitting forged signatures in this Court and courts throughout the state, these Defendants respectfully request that Plaintiff be prohibited from filing additional actions or documents without prior court approval.

These Defendants acknowledge that often an express warning is issued to a litigant prior to imposing filing restrictions, but such is not required and would not be appropriate in this case, given Plaintiff's egregious conduct. While a warning might serve to correct something like excessive filings by an unwitting pro se plaintiff, a plaintiff need not receive a specific warning to know that filing false information with the Court is unacceptable.

## **CONCLUSION**

For the forgoing reasons, these Defendants respectfully request that the Court use its inherent authority to impose the sanctions and filing restrictions identified above on Plaintiff.

*/s/ Emmerson Y. Marlatt*
Robert M. Burns, #15383
Emmerson Y. Marlatt, #42797
HOWELL & FISHER, PLLC
3310 West End Avenue, Suite 550
Nashville, TN 37203
rburns@howell-fisher.com
emarlatt@howell-fisher.com
(615) 244-3370
*Attorneys for Williamson Co. Defendants*

*Certificate of Service on Next Page.*

25

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document has been electronically filed and mailed via USPS Priority Mail on or about the 12th day of August 2026 to:

Robert C. Gordon
# 65920
Williamson County Sheriff's Office
408 Century Court
Franklin, TN 37064

**/s/ Emmerson Y. Marlatt**<br>Emmerson Y. Marlatt

26