BEFORE THE CIRCUIT COURT OF WILLIAMSON COUNTY
AT FRANKLIN, TENNESSEE

---------------------------------
STATE OF TENNESSEE                )
                                  )
                Plaintiff,        )
                                  )
V.                                )NO: M-CR-
                                  )
ROBERT COLE GORDON                )
                                  )
                Defendant.        )
                                  )
---------------------------------

TRANSCRIPT OF THE PROCEEDINGS:

MOTION TO ENFORCE COURT ORDER

BEFORE THE HONORABLE DAVID VEILE

April 17, 2026

(Volume I pages 1 - 85)
---------------------------------

A-P-P-E-A-R-A-N-C-E-S


For the Plaintiff:

**State of Tennessee**

General Jennifer Dungan
Assistant District Attorney
Franklin, Tennessee



For the Defendant:

**Robert Cole Gordon**

Geoffry Coston, Esquire
Attorney at Law
Franklin, Tennessee

Case 3:24-cv-01121   Document 111-2   Filed 08/12/26   Page 1 of 94 PageID #: 2476

I N D E X


CAPTAIN CHAD YOUKER

DIRECT EXAMINATION                         8
BY GENERAL DUNGAN

CROSS EXAMINATION                         54
BY MR. COSTON

REDIRECT EXAMINATION                      63
BY GENERAL DUNGAN

RECROSS EXAMINATION                       68
BY MR. COSTON

FURTHER RECROSS EXAMINATION               72
BY MR. COSTON

E X H I B I T S

Exhibit #1 - August 22, 2025 Order        17

Exhibit #2 - mail log report              23

Exhibit #3 - booking report Kenneth       25
             Zebley

Exhibit #4 - Personal information          29
             sheet Donald Baker

Exhibit #5 - unsent packet regarding       34
             Erin Mishkin

Exhibit #6 - text message  12-26-2025      42

Exhibit #7 - video of kiosk pod 644        39

Exhibit #8 - text message 1-15,2026        46

Exhibit #9 - text from jail                49

Exhibit #10 - Memorandum of Opinion        70
              Dated 8-19-25



THE COURT: All right, on Robert Cole Gordon, we have the State's Motion to Enforce Court Order that also contained a request to further limit Mr. Gordon's communication. Is that correct?

GENERAL DUNGAN: Yes, Your Honor. And also, after our motion, Your Honor, the State -- last time we had asked for, and we still need to set a DUI trial date and a two-week trial date where we can combine all the remaining cases, join them for one criminal trial.

THE COURT: All right, let's talk about the Motion first, then we'll come back to that. DUI trial date should be fine. The two-week trial date will be next year.

GENERAL DUNGAN: Yes, Your Honor.

THE COURT: All right, on your motion, General.

GENERAL DUNGAN: Yes, Your Honor.

Just briefly, Your Honor, the State has filed this Motion to Further Enforce the Court's Order. The Court, as the Court is well aware, ordered on August 20th of last year to jail to restrict the defendant's ability to communicate outside the jail. A number of things have happened that have made that order difficult, if not

Case 3:24-cv-01121    Document 111-2    Filed 08/12/26    Page 4 of 94 PageID #: 2479

impossible, for the jail to enforce.

And the State will present proof today that while this order does not specifically prohibit the Defendant from this contact or use of devices in certain ways, it was certainly the spirit of the order.  And the Defendant has been still abusing the legal mail system and making contact through other inmates, kiosk numbers, in ways that would affect the victim.

So the State is going to ask today for an Order from the Court restricting the Defendant himself from using these communication methods in any way except to communicate with his criminal defense attorney and his civil -- well, he doesn't at present have any civil attorneys.

It's the State's understanding that he has civil actions where he is suing the county, and in those actions he is pro se.  And we would ask the Court that he be allowed to make contact with those opposing counsel and the different clerk's offices because the Defendant has a constitutional right to make contact with his criminal defense attorney, but also to pursue cases involving conditions of confinement.

So the State's going to ask the Court

Case 3:24-cv-01121    Document 111-2    Filed 08/12/26    Page 5 of 94 PageID #: 2480

to restrict his ability to communicate outside the jail with any of the jail's systems with anything unrelated to his criminal defense attorney and the opposing counsel in the civil cases where he is suing, based on conditions of confinement, the Middle District Federal Court in Tennessee, the Tennessee Appellate and Supreme Court, and the Williamson County Circuit Court Clerk. And the jail, in consultation with the county attorney, has a solution for how the Court could order this in a way that would be enforceable by the jail. So we'll put on proof for all of that.

THE COURT: Mr. Coston.

MR. COSTON: Thank you, Your Honor. The relief that they're asking for is overly broad. And some of the communications that they're going to present today involve constitutionally protected activities. For example, limiting his ability to communicate only with opposing counsel when he has several civil cases going is violating his rights because he's got to be able to do other work to prosecute those cases.

Some of the messages that they're talking about that they're going to present to you today involve seeking out a forensic report for use

in one of his cases.  At the time, he was unrepresented because his last attorney got off and then you appointed me, but he was without an attorney there for a while.  And some of the emails they're going to show you is he's discussing with a friend on the outside, looking for another attorney and soliciting money from his friends and family to retain another attorney and asking them to contact other attorneys on his behalf and asking them to find evidence for not just this case but for his other civil cases.

And so I can see restraining him certainly from the victim in this case or sending any messages through anyone that will impact the victim.  But limiting him -- they want to limit him from everyone except five entities in this entire world, so they want to limit him from contacting 8.25 billion people in this world.  And it's just overbroad.  He should be enjoined from specific people, not everyone in the world except a few people.

THE COURT:  Thank you, Mr. Coston.

All right, Ms. Dungan, you're first witness.

GENERAL DUNGAN:  Yes, Your Honor, the

Case 3:24-cv-01121    Document 111-2    Filed 08/12/26    Page 7 of 94 PageID #: 2482

State would just call Captain Chad Youker.

COURT CLERK: Do you swear or affirm the testimony you give in this matter will be the truth, the whole truth, and nothing but the truth so help you God?

CAPTAIN YOUKER: I do.

**CAPTAIN CHAD YOUKER,**

having been first duly sworn was examined and testified as follows:

DIRECT EXAMINATION

BY GENERAL DUNGAN:

Q. Could you please state your name and spell it for the Court reporter?

A. Chad Youker, last name Y-O-U-K-E-R.

Q. And what's your current position?

A. The Captain of Operations over the Williamson County Sheriff's Office Detention Center.

Q. Okay. And is the detention center the jail?

A. It is, yes, ma'am.

Q. And do you know the Defendant? Do you know who the Defendant, Mr. Robert Cole Gordon, is?

Case 3:24-cv-01121    Document 111-2    Filed 08/12/26    Page 8 of 94 PageID #: 2483

A. I do.

Q. Do you see him here in the courtroom?

A. Yes, he's sitting here in front of me in an orange jumpsuit.

Q. And how do you know him?

A. He's one of our inmates at the jail.

Q. And has he been an inmate since 2023 in the jail?

A. Yes.

Q. All right. And where is he currently housed in the jail?

A. Currently he's housed in general population.

Q. And could you explain what general population looks like for the Court?

A. So general population is just a housing area that they have all the privileges. And they come out of their cell from about 8:30 in the morning, 9:00 o'clock in the morning, all the way to about 8:30 at night when they get locked down unless there's an emergency situation and they have to lock the facility down. In general population, they come out of their cells. They can

use the showers; there's phones on the walls; there's kiosks on the walls. They have tablets that are issued that are in the pods that the inmates can utilize. And from there they can text message. They can e-mail. They can video chat. They can make phone calls. They can do a plethora of different things. They get the access to order commissary -- on commissary there's food. There's games. There's stuff like that that they can purchase. So while they're out in general population, they can play cards or checkers or whatever else.

Q. So general population, it's going to have multiple cells with a common area?

A. Yes, ma'am.

Q. Okay. And about how many inmates are in a general population pod?

A. Depends on the area -- anywhere between 24 and 50.

Q. Okay. And you said -- what's a kiosk?

A. A kiosk is a wall-mounted computer that's in all the units that they can submit grievances and requests. That's where they order their commissary from. That's where they do the

video visits or can do the video visits and submit grievances, submit requests, stuff like that.

Q. Can they text and e-mail from those?

A. Text and e-mail, yes.

Q. Okay.

A. They can also do all that on the tablets as well because the tablets are just a mobile version of the kiosk.

Q. Okay. And how do they access those machines? Are they just open for anyone to use or is there a way that they gain access to them?

A. So they're open for everybody in there to use, but they each have an individual user name and password to log into it, into their account specifically.

Q. Okay. And under their account, is that where they can text or e-mail or video or --

A. It's inmate specific as far as all that is concerned, and you have to have funds on your tech account in order to be able to do the video chats and to do the text message and emails and stuff like that.

Q. Okay. And that's available on both the kiosk and the little handheld pod.

Case 3:24-cv-01121    Document 111-2    Filed 08/12/26    Page 11 of 94 PageID #: 2486

A. Correct.

Q. Okay. And then if an inmate in general population, how does this regular kind of snail mail work?

A. They order the items off the commissary that they need, the letters, the envelopes, pens, paper, all that stuff. Then they will, of course, write their letters, all that stuff, fill them out, send it out with a deputy, which will then put it in a box up in the front of the jail. The very next business day, our mail clerk will come in and grab it and go through it. They'll log it into the computer as far as where it's going, and then they will send it out the very next opportunity they can with the mail to go.

Q. Okay. So does the jail keep track of what each inmate sends out?

A. We do now, yes.

Q. Okay. And why do you keep track of what each inmate sends out?

A. We had to start doing that because of Robert Gordon.

Q. Okay. Why because of Robert Gordon.

A. Because Robert Gordon was put on a

Case 3:24-cv-01121    Document 111-2    Filed 08/12/26    Page 12 of 94 PageID #: 2487

restriction to where he wasn't supposed to be sending stuff out. And he started utilizing other inmates to send stuff out. So we started having to screen from his housing area. Every inmate's mail that was going out, we had to screen those envelopes to make sure that he wasn't sending them out to -- that they weren't sending stuff out in another name to a specific address.

Q. And was that his victim's address?

A. It was.

Q. Okay? And so that's the reason that the jail started logging every piece of mail that goes out?

A. Correct.

Q. So for every inmate now, you have a log of both their regular mail and legal mail?

A. Correct.

Q. Okay. How do you know it's from a specific inmate?

A. They are required to put their name and their number, their ID number, at the top left corner in the return address.

Q. Okay. And then if it's regular mail, do you search it, make copies of it?

A. We don't make copies of it, but we

Case 3:24-cv-01121    Document 111-2    Filed 08/12/26    Page 13 of 94 PageID #: 2488

can search it if we feel the need to. They're required to leave the regular mail unsealed until we get it. We will go through them periodically just to make sure. But if we have a reason to, we will focus on individuals' mail to make sure that it's not going to a specific, or from a specific person or about specific things.

Q. Okay. What about legal mail? Does it come to you already sealed or still open?

A. Already sealed.

Q. And do you open legal mail?

A. We do not.

Q. Okay. And has the Defendant been a problem with abusing the legal mail system in the past?

A. He has done it.

Q. And have you guys -- was that prior to this last order from August 20th, that he was abusing the legal mail system?

A. It was prior to, and it still currently happens.

Q. Okay. And if a defendant that, say, not this defendant, another inmate in his pod were to write legal mail on an envelope and put that inmate's name and number and seal it, would

Case 3:24-cv-01121    Document 111-2    Filed 08/12/26    Page 14 of 94 PageID #: 2489

you be able to open it to see if it was from Robert Gordon or from that inmate?

A. We would not.

Q. Okay. And so, currently, is the Defendant suing you?

A. He is.

Q. Okay. Is he suing the jail?

A. Yes.

Q. Is he suing the county attorney, Lisa Carson?

A. Yes.

Q. Okay. And the Sheriff's Department itself?

A. Yes.

Q. Okay. So is the jail trying diligently -- is the Sheriff's Department diligently trying to make sure he's able to send communications relating to those suits?

A. Absolutely.

Q. Okay.

A. I'm sorry, but I think in the order it said specifically, addresses that were provided by his attorney. We never got those addresses, but he's still sending stuff out to Court. So if we can verify that it's, in fact, going to a Court

address, we are going to send that out.  We're not going to hold that mail up.

Q.   Okay.  Let's talk about that.  I'm going to pass up to you the Order from --

GENERAL DUNGAN:  If you could pass it to him, or if we can mark it first as I'm going to introduce it as an exhibit, whatever the Court would like for procedurally.  I do have a courtesy copy for the Judge?

THE COURT:  I've got it.

GENERAL DUNGAN:  Okay.

THE COURT:  So you're asking for this to be the first exhibit?

GENERAL DUNGAN:  I will be, Your Honor.  If there's no objection, I'll do it now, but if not, I'll have him ID it.

THE COURT:  Let's have him look at it.

(Document provided to witness.)

BY GENERAL DUNGAN:

Q.   Do you know what you're looking at?

A.   Yes.

Q.   And what is it?

Case 3:24-cv-01121    Document 111-2    Filed 08/12/26    Page 16 of 94 PageID #: 2491

A. This is the order that was given to us in regard to Robert Gordon's mail suspension or his mail restrictions.

Q. And does this order require things of the jail and the Sheriff's Department? Is this Order to the Sheriff's Department, ordering the Sheriff's Department to do something or not do something?

A. Yes.

Q. Okay. And you've seen it before?

A. I have.

GENERAL DUNGAN: Okay. Your Honor, I would ask to introduce this as the first exhibit.

THE COURT: Any objection, Mr. Coston?

MR. COSTON: No, Your Honor.

THE COURT: Exhibit No. 1 will be the order entered August 22, 2025.

(Exhibit #1 - August 22, 2025, Order was marked and entered.)

BY GENERAL DUNGAN:

Q. And specifically, No. 1, does this order say the Williamson County Sheriff's

Case 3:24-cv-01121    Document 111-2    Filed 08/12/26    Page 17 of 94 PageID #: 2492

Department shall restrict or suspend the defendant's ability to communicate outside the Williamson County Jail via text, e-mail, phone call, video call, mail, or legal mail. Is that what number one says?

A. It does.

Q. Okay. And above that, this was the Court found that the Defendant abused the Williamson County Jail's communication system?

A. Correct.

Q. Okay. So, specifically, the Defendant was able to correspond on No. 2 with his criminal attorney, civil attorney, opposing counsel in civil cases, in which he represents himself, pro se, and basically any clerk's office. Is that right?

A. Yes.

Q. Okay. But, as you said, was his attorney at the time supposed to submit a list of names and contact information that was going to be the allowed contacts list to the jail?

A. Yes, he was.

Q. And that was never done?

A. It was -- I believe at first it was done when Mr. Burlison was -- but when the

18

attorneys changed, I don't recall getting a list from anybody else.

Q. Have you -- well, you only had, is the only name you were ever given the public defender that he was allowed to have?

A. Yes.

Q. The public defender never submitted a list of other attorneys he could contact?

A. No.

Q. Okay. But the jail has still been trying to make sure he's able to contact attorneys in civil suits?

A. Right.

Q. Or different clerk's offices?

A. Yes.

Q. And opposing counsel?

A. Yes. If we can verify that the address is going to the legitimate attorney or Court, we are passing it through just so that we don't get pinned up federally.

Q. Okay. So, as it stands, if the Defendant is in general population, can you keep the Defendant from using -- can you enforce this Order to keep him from making contact with all these people?

19

A.   No.

Q.   Why not?

A.   Because we can't -- there's too many inmates other than this individual, and it wouldn't be anything for him to try to pass mail using other inmates or utilizing other inmates' kiosk systems that he's not locked out of.

Q.   Okay.  And have you or anyone that you supervise been trying to investigate whether or not Robert Gordon has been abusing the mail system still?

A.   Yes.

Q.   Okay.  And have you all been able to identify any instances where the Defendant is passing notes to someone else to type out on the kiosk?

A.   Yes.

Q.   Okay.  Have you found instances where the Defendant is logging in or having someone else log him into a kiosk to use?

A.   Yes.

Q.   Okay.  Could you stop him from sending legal mail under someone else's name?

A.   No.

Q.   Because you can't open the legal

mail to see if it is his or not.

A. The only thing that we would be able to do is if anything came into question, we would take that legal mail back to the individual and have him open it up in front of us. And that's to time consuming and way too tedious for us to do with the manpower which we currently have.

Q. Okay. And so in general population, there's just too many ways for him to get around the current order without having a deputy just assigned to him all the time?

Okay. So let's talk a minute about the defendant's mail since this order went down. Has the Sheriff's Department been logging the defendant's mail since the order went down?

A. Yes.

GENERAL DUNGAN: Okay. If I might pass up -- I have a copy for the Court and I have a copy to mark as an exhibit. If I could have it marked --

THE COURT: Let's --

GENERAL DUNGAN: You want him to identify it first?

THE COURT: Yeah, let's have him identify it.

(Document provided to witness.)

BY GENERAL DUNGAN:

Q. Captain Youker, do you recognize what's been handed to you? Will you thumb through it and make sure you recognize all of it?

A. Yeah. Yes, ma'am.

Q. And what is this?

A. This is the mail log that we have on our jail management system that the mail clerk, when she gets the mail on a daily basis, she'll go in, log the inmate it is from, the address that's going to, the name of the person that's going to, so on and so forth, so that we have a running log of who's sending out mail and where it's going.

Q. And so is this jail log, this mail log, is it a log that's made in the regular course of business at the jail that the mail clerk makes as part of her job?

A. Yes.

Q. And is it something that that clerk is under a duty to do?

A. Yes.

Q. And are you the custodian of record for the records within the jail?

A. Yes.

22

Q. Okay. And is this the authentic record from the defendant's mail, from I guess August 20th of 2025 until April 13th of 2026?

A. Yes, ma'am.

GENERAL DUNGAN: Your Honor, I'd ask to introduce that as Exhibit No. 2 at this point.

THE COURT: Any objection?

MR. COSTON: No, Your Honor.

THE COURT: Exhibit No. 2 will be the mail log report.

(Exhibit #2 - mail log report was marked and entered.)

BY GENERAL DUNGAN:

Q. And if you could go to page 2, on October 7th, 2025, was there outgoing mail marked as legal mail that went to the law office in parentheses of Ken Pong?

A. Yes.

Q. Okay. And was that mail actually sent out?

A. To my knowledge, yes.

Q. Okay. If it's on this list, then it would have gone.

A. Yes.

Case 3:24-cv-01121   Document 111-2   Filed 08/12/26   Page 23 of 94 PageID #: 2498

Q. Okay. And this is October 7th, so this is a little over a month after the Order went down where the defendant's mail was to be restricted; is that right?

A. Correct.

GENERAL DUNGAN: Okay. And if I may now pass up for identification another record, and then I have a copy for the Judge as well.

THE COURT: Thank you, sir.

(Document provided to witness.)

BY GENERAL DUNGAN:

Q. Do you recognize what's been handed to you?

A. Yes. This is a jail booking report from our jail management system.

Q. And who is this booking report for?

A. Kenneth McCray Zebley.

Q. And is this a record kept in the normal course of business for the jail?

A. It is.

Q. And is this an authentic record of the jail?

A. It is.

GENERAL DUNGAN: And, Your

Case 3:24-cv-01121   Document 111-2   Filed 08/12/26   Page 24 of 94 PageID #: 2499

Honor, I'd ask to introduce this as Exhibit No. 3.

THE COURT:  Any objections?

MR. COSTON:  No, Your Honor.

(Exhibit #3 - booking report Kenneth Zebley was marked and entered.)

BY GENERAL DUNGAN:

Q.   And so on this booking sheet, what is Kenneth Zebley's home address?

A.   On the booking sheet, it is ███ ████████ Nashville, Tennessee.

Q.   Okay.  And what is the address that the mail the Defendant sent to the law office of Ken Pong on his mail log?

A.   It is ████████ , Nashville, Tennessee.

Q.   Okay.  And was Kenneth Zebley an inmate in the jail at some point during which the defendant's been here in the past three years?

A.   Yes.

Q.   Okay.  To your knowledge, were they ever housed together?

A.   Yes.

Q.   And was Kenneth Zebley another person that the Defendant was sending legal mail to

Case 3:24-cv-01121    Document 111-2    Filed 08/12/26    Page 25 of 94 PageID #: 2500

prior to the August 20th order as well?  Do you remember?

A.  I don't remember.

Q.  Okay.  And if we could go ahead and keep moving on.  If we could go to December 18th of 2025.

A.  Yes, ma'am.

Q.  And on December 18th, the Defendant sent legal mail to Jonathan Turner.

A.  Yes, ma'am.

Q.  Do you know who Jonathan Turner is?

A.  I do not.

Q.  You do not know?  Okay.  Do you know on January 6th of '26, the Defendant sent legal mail to Helen Rogers.  Do you know who she is -- it's on the same page, just a little bit down.

A.  What was the date again?  I'm sorry.

Q.  Helen Rogers -- if you don't know who Helen Rogers is, that's okay.

A.  Yeah, I don't know off the top of my head at the moment.

Q.  Okay?  What about the 1-6-26, the one that says just law office but doesn't have a person?  Do you see that one?

Case 3:24-cv-01121    Document 111-2    Filed 08/12/26    Page 26 of 94 PageID #: 2501

A. Yes, ma'am.

Q. And it says ████████ Enola, Oklahoma, 74036.

A. Yes, ma'am.

Q. Do you know who that is?

A. I don't know who that is. I know the address. He sends it to that address all the time, but I don't know exactly who that is.

Q. Okay. And if you go to the next page on January 13th, 2026, it's legal mail. It says Law Office of Minion Frye?

A. Yes.

Q. That is also in Oklahoma.

A. Yes.

Q. Do you know who that is?

A. I have been told that is his sister.

Q. Okay. And then if we can go further down the page to January 23rd of 2026, do you see that one that says Mike Ross?

A. Yes.

GENERAL DUNGAN: Okay. If I can pass up another document. I have one for the Judge, too.

(Document provided to witness.)

27

BY GENERAL DUNGAN:

Q. Do you recognize what's been handed to you?

A. Yes.

Q. What is it?

A. This is a personal information sheet, again, from our JMS system.

Q. Who is it for?

A. This is for David Eugene Baker II.

Q. Okay. And is this a document created by the jail?

A. Yes.

Q. Kept in the normal course of business?

A. Yes.

Q. And is this an authentic record of the jail?

A. Yes.

Q. Okay.

GENERAL DUNGAN: Your Honor, I'd ask to introduce this as Exhibit 4.

THE COURT: Any objection, Mr. Coston?

MR. COSTON: No, Your Honor.

28

Case 3:24-cv-01121    Document 111-2    Filed 08/12/26    Page 28 of 94 PageID #: 2503

(Exhibit #4 - Personal information sheet Donald Baker was marked and entered.)

BY GENERAL DUNGAN:

Q. And so on January 23rd, the Defendant sent someone under the name Mike Ross mail to ███████████████, Franklin, Tennessee, 37067. Is that correct?

A. That is correct.

Q. And what is David Baker's address on the personal information sheet?

A. It is ████████████████ Franklin, Tennessee, 37067.

Q. And is David Baker a former inmate of the jail?

A. He is.

Q. And was he housed at some point, to your knowledge, with the Defendant?

A. I can't specifically say, but I would assume so, yes.

Q. Okay. And the next three outgoing legal mail on this sheet, are they all to different places in Oklahoma?

A. Yes, ma'am, they are.

Q. Okay. And to your knowledge, does the Defendant have any attorneys in Oklahoma?

Case 3:24-cv-01121    Document 111-2    Filed 08/12/26    Page 29 of 94 PageID #: 2504

A.    Not to my knowledge, no, ma'am.

Q.    Okay.  If we can go to the next page, to February 2nd, 2026, outgoing legal mail to the TBI headquarters.  Do you see that?

A.    Sorry, what was that date again, ma'am?

Q.    February 2nd.

A.    Yes.

Q.    Okay.  And is the Defendant represented in any way, do you know, by the TBI?

A.    No, ma'am.

Q.    Okay.  And is there also, on February 5th, another outgoing to the Tennessee Bureau of Investigation marked legal mail?

A.    Yes, ma'am.

Q.    Okay.  And then, on February 6th, is there an outgoing not marked legal to Andy Cordan?

A.    Yes.

Q.    And was that allowed out?

A.    Yes.

Q.    And why would that be allowed out?

A.    We don't want to restrict their access to the media either.

Q.    Okay.  Okay.  And so, is there mail

Case 3:24-cv-01121    Document 111-2    Filed 08/12/26    Page 30 of 94 PageID #: 2505

that the jail has stopped that you found to be not legal mail and you were able to stop before it went out?

A.   Yes.

GENERAL DUNGAN:  Okay.  If I might, at this point, pass up a copy for the Judge.

THE COURT:  Thank you.

(Document provided to witness.)

BY GENERAL DUNGAN:

Q.   Do you recognize -- if you can thumb through it, and then do you recognize what's been handed to you?

A.   Yes, ma'am.

Q.   And what is it?

A.   This is the, something that Robert Gordon tried to mail out.  The first thing is an envelope that has, for the law offices of Aliyah Brown, at ████████████████ in Dickson, Tennessee, 37055.

Q.   Okay.  And is it marked legal mail in the bottom left-hand corner?

A.   Yes, ma'am, it is.

Q.   And did anyone investigate to see if Aliyah Brown is an attorney?

31

A. Yes, my lieutenant did.

Q. And was Aliyah Brown found to be an attorney?

A. No, ma'am.

Q. Okay. And if you can go to the first page of the package, who is this? Is there a letter in it?

A. There is.

Q. And who's it written to?

A. I don't know specifically. It just says, Dear TBI Agent.

Q. Okay. And is this letter an attempt to report fraud?

A. It is.

Q. Okay. And is this letter an attempt to report fraud of Erin Mishkin, the victim in this case?

A. Yes, ma'am, it is.

Q. Okay. If you go to the second page, the second paragraph, does the Defendant state:

Please find enclosed a forensic report that I would assume would be enough probable cause to investigate Erin Mishkin's fraud. My lawyers and

32

private investigators are more than willing to assist the TBI in prosecuting this fraud.

A. Yes, ma'am.

Q. Okay. So this letter is the Defendant attempting to, again, report Ms. Mishkin?

A. Correct.

Q. Thank you. And then the next page, is it titled Forensic Document Investigations, Questioned Handwriting Case?

A. Yes.

Q. Robert Cole Gordon?

A. Yes.

Q. And does this packet have several -- it contains the report with several documents attached?

A. Correct.

Q. Okay. And then, if you go further in, at the very back, is Ms. Mishkin's tax filing attached as well? A tax filing with her name and Social Security number? At the very back of the documents.

A. Yes, ma'am.

Q. And all of this was contained in a package marked legal mail that the Defendant tried

Case 3:24-cv-01121    Document 111-2    Filed 08/12/26    Page 33 of 94 PageID #: 2508

to send outside the jail to a non-lawyer?

A. Correct.

GENERAL DUNGAN: Your Honor, if we didn't, could I have that admitted as Exhibit 5?

THE COURT: It is not. Any objection?

MR. COSTON: No, Your Honor.

THE COURT: Exhibit 5.

(Exhibit #5 - unsent packet regarding Erin Mishkin was marked and entered.)

BY GENERAL DUNGAN:

Q. And has other pieces of mail been stopped as well that the Defendant tries to send out to non-law offices that you're able to identify?

A. Yes, ma'am.

Q. But are you only able to do that when you have enough staff to inspect everything that he sends out?

A. Staff and time.

Q. Okay. And beyond the legal mail, let's talk about the kiosks. Have you been able to

Case 3:24-cv-01121    Document 111-2    Filed 08/12/26    Page 34 of 94 PageID #: 2509

identify instances where the Defendant is using other inmates' kiosk numbers to make contact outside the jail?

A. Yes.

GENERAL DUNGAN: If I might pass this up.

(Document provided to witness.)

BY GENERAL DUNGAN:

Q. Do you recognize what's been handed to you?

A. Yes. So this is a text message. This is what it would look like in printout from the kiosk if an inmate sends a message or receives a message via the kiosk.

Q. And what inmate account sent this message?

A. Michael Van Dobbs.

Q. Okay. And when was it sent?

A. 12-26-25 at 3:25 p.m.

Q. And is this a record the jail keeps?

A. It is.

Q. And is it an authentic record of the jail?

A. It is.

Case 3:24-cv-01121    Document 111-2    Filed 08/12/26    Page 35 of 94 PageID #: 2510

Q.   Okay.

GENERAL DUNGAN:  If I could introduce this as Exhibit 6, and I can display it on the screen if that's easier, I have these loaded.

THE COURT:  Any objection, Mr. Coston?

MR. COSTON:  Not to display.

GENERAL DUNGAN:  May I enter it as an exhibit?

MR. COSTON:  I guess my objection isn't it being an exhibit.  I just don't see the relevance of something from Michael Dobbs.  Your Honor, I will be able to make it relevant.

THE COURT:  I'll take the objection under advisement and we'll see where we go.  It can be marked for identification purposes.

GENERAL DUNGAN:  Thank you, Your Honor.

(Exhibit No. 6 marked for identification.)

BY GENERAL DUNGAN:

Q.   If we can look at, can you read it?

Case 3:24-cv-01121   Document 111-2   Filed 08/12/26   Page 36 of 94 PageID #: 2511

So, when was -- oops, this is not the right one.

A. Yeah, it's a different one.

Q. This is the one. Okay. That's the one that you just saw, right?

A. Yes.

Q. Okay. And when was this sent, what day and time?

A. It was sent, just want to make sure, 12-26-25 at 3:25 p.m.

Q. And it was sent from Michael Van Dobbs' account?

A. Correct.

Q. And did anyone investigate to see if this was actually Michael Van Dobbs who sent this text?

A. Yes.

Q. And was it Michael Van Dobbs who sent this text?

A. No.

Q. Who was it?

A. It was Robert Gordon.

Q. How can that be determined?

A. We have cameras in the jail that point at the kiosks, and it records everything they do. So, it showed Mr. Dobbs logging into the

kiosk, stepping away.  Mr. Gordon stepping up to the kiosk, utilizing said kiosk, and then walking away.

Q.   Okay.  And so, on this text message, it says kiosk, and then it says 644 right.  Does that indicate what particular kiosk this was sent from?

A.   Correct.

Q.   Okay.  And if I can, can I display for identification purposes?  Do you recognize what's on the screen here?

A.   I do.

Q.   What is it?

A.   This is the housing pod 644.

Q.   Okay.  And does -- is this video taken from overhead?

A.   It is.

Q.   And is this video always being taken at the jail?

A.   It is.

Q.   And can you access it at any point in time?

A.   I can.

Q.   And is it kept -- the video kept by the jail in the regular course of business?

Case 3:24-cv-01121    Document 111-2    Filed 08/12/26    Page 38 of 94 PageID #: 2513

A. It is.

Q. Okay. And is this authentic? Have you reviewed this video?

A. I have.

Q. And is this authentic video from the jail?

A. It is.

Q. Okay.

GENERAL DUNGAN: And at this point, Your Honor, I'd like to introduce this video as the next numbered exhibit.

THE COURT: Any objection?

MR. COSTON: No, Your Honor.

THE COURT: Okay. What number are we on now? No. 7.

(Exhibit #7 - video of kiosk pod 644 - was marked and entered.)

BY GENERAL DUNGAN:

Q. If you can look at this video, in the right-hand side of the still screen; do you see anything on the wall? What are those on the wall?

A. The kiosks --

Q. Okay.

A. -- are those computer screen looking things right there.

Q. Are there two of them?

A. There are.

Q. So if we're looking for the one that the text said is 644 right, would it be the one that nobody's at or the one that someone's at?

A. The one that's -- so the way that we have that set up is if you were looking at the kiosks --

Q. Yes.

A. -- left, right. So that would be the right-hand side one.

Q. Okay. And do you recognize the person standing at the kiosk?

A. Yes. That is Michael Van Dobbs.

Q. Okay. And what day and time was this video taken?

A. It's stamped 12-26-25 at 15:18.

Q. And do you still have that text in front of you?

A. I do.

Q. And was the text sent at 3:25 p.m.?

A. It was.

Q. And so would that be 15:25 p.m.?

Case 3:24-cv-01121    Document 111-2    Filed 08/12/26    Page 40 of 94 PageID #: 2515

A.    It would be.

Q.    Okay?  And so if we can advance – so we don't have to watch it – we'll advance to about 3:20.  Now, who's at the kiosk at this point?

A.    Still Mr. Van Dobbs.

Q.    Okay.  We can advance another minute.  Do you recognize who's at the kiosk now?

A.    Still Mr. Van Dobbs.

Q.    And do you see anyone sitting at the table behind Mr. Van Dobbs?

A.    Mr. Robert Cole Gordon.

Q.    Okay.  And if we can advance another minute, and we're now going to be at 5:22.  Oh, sorry.  3:22.  So I guess let's go back to 21.  Okay.  And we'll just play it from here.  Who is Mr. Van Dobbs talking to?

A.    Mr. Robert Cole Gordon.

Q.    Okay.  And who's using the kiosk now?

A.    Now it's Mr. Robert Cole Gordon.

Q.    Okay.  And so this text message we're talking about was sent at 3:25 p.m.  So we'll advance now to 3:25 p.m.  Who's using the kiosk now?

A.    Robert Cole Gordon.

Case 3:24-cv-01121   Document 111-2   Filed 08/12/26   Page 41 of 94 PageID #: 2516

Q. So I guess we'll let it play for all of three minutes -- for this minute. Okay. We can pause it there. So, Captain Youker, did anyone else get near the kiosk during the time period that the text message was sent besides Mr. Gordon?

A. No, ma'am.

Q. And so was Mr. Gordon at the kiosk that that text message was sent from when it was sent?

A. Yes, ma'am.

Q. Okay?

GENERAL DUNGAN: Now, Your Honor, I'd like to introduce that text into evidence.

THE COURT: Any further objection?

MR. COSTON: No objection.

THE COURT: Okay. So, Exhibit 6 will be received as evidence, no longer for identification.

(Exhibit #6 - text message 12-26-2025 was marked and entered.)

BY GENERAL DUNGAN:

Q. And does this text give a phone number and say, Merry Christmas, still no

Case 3:24-cv-01121    Document 111-2    Filed 08/12/26    Page 42 of 94 PageID #: 2517

communication, please let me know if you received the forensic report. I currently have no lawyer after the new year. Please call Lonnie Hoover and Jessica Bourne and see if they will take my case. The forensic report exonerates me. Tell everyone I said hello and give my mama a hug from me. Love you. Is that what it says?

A. It does say that, yes, ma'am.

Q. Thank you. Okay.

GENERAL DUNGAN: So, if I can pass up another document with one for the Judge. Both the text and video have been admitted, correct? May I admit the video if it's not been admitted?

THE COURT: It was admitted. It was admitted as No. 7.

GENERAL DUNGAN: Okay. Thank you.

BY GENERAL DUNGAN:

Q. Do you recognize what's been handed to you?

A. Yes.

Q. And what is it?

A. It's another jail message log.

Q. Okay. And is this from the

43

Williamson County Jail?

A. It is.

Q. Is it from January 15th of 2026?

A. It is.

Q. And is this an accurate and authentic record of the jail?

A. It is.

GENERAL DUNGAN: Your Honor, I guess if we can mark this as Exhibit 8 for identification and display it for the purposes of proving that it came from the Defendant and then introducing it.

THE COURT: We can mark it as Exhibit 8 for identification.

(Exhibit No. 8 marked for identification.)

GENERAL DUNGAN: May I publish?

THE COURT: You may.

GENERAL DUNGAN: Thank you.

BY GENERAL DUNGAN:

Q. And Captain Youker, this message was sent on January 15th at 10:11 a.m.?

A. Correct.

Q. Okay. And whose account did this message come from?

A. Michael Van Dobbs.

Q. And what kiosk did this come from?

A. 644 Middle.

Q. Okay. And now let's go to the -- we're going to show you another image. And do you recognize the image that you see up on the screen? And what is it?

A. 644, Housing Unit 644.

Q. Okay. And is this video from the jail?

A. Yes.

Q. And is this something you keep in the regular course of business?

A. Yes.

Q. Okay. And have you reviewed this video?

A. Yes.

Q. And is this an accurate video from that date?

A. It is.

GENERAL DUNGAN: Okay. I'd ask to introduce this now, Your Honor, as Exhibit 8 or Exhibit 9.

THE COURT: Any objection?

MR. COSTON: No, Your Honor, and

45

she doesn't need to play the video clearly. We'll stipulate that this was sent by Mr. Gordon.

GENERAL DUNGAN: Okay. If then, Your Honor, can we go back to the text message from January 15th? And this message, may we introduce this message if the Defense is stipulating this came from the Defendant?

THE COURT: Yes. It's a statement by a party opponent.

MR. COSTON: And clearly the 12-26 message.

GENERAL DUNGAN: And so I guess that would be Exhibit 8.

(Exhibit #8 - text message January 15, 2026 was marked and entered.)

BY GENERAL DUNGAN:

Q. Does this message say:

Mike, thanks for responding. You need to call the clerk's office with your case number to change address. If, have you received any mail from me? I tried to get a copy of

the forensic report, but not sure you got it.

Does that say the, is that what the first and second line say in there?

A.  Yes.

Q.  Okay.  If we can scoot down the fourth line, it says:

I need your help in the worst way currently.  If you have a copy of the report, I need you to call my people and tell them you've seen it. I'm innocent, et cetera.  They need to know.  Then I need you to file a report with either Metro PD, Maury County, for me to report the fraud, maybe even the FBI, TBI, Franklin PD will not assist.

Is that what it says?

A.  Yes.

Q.  Okay.  If I might pass up another set.

THE COURT:  Well, I guess they've admitted that the Defendant has been sending messages through other people.  What I want to focus on is how are they harassed or otherwise affected

Case 3:24-cv-01121    Document 111-2    Filed 08/12/26    Page 47 of 94 PageID #: 2522

the victim or another person?  Just the fact that he's done it, we can talk about that.  But I'm more focused on how has he been harassing?  Has he -- specifically, has he been contacting the victim?

MR. COSTON:  We're going to admit to all of these.  You don't have to keep bringing up dates.  We're going to admit to all of these text messages.

GENERAL DUNGAN:  If I can do this next one, the Defense is saying that, Your Honor, if I might admit this next text as Exhibit 9, if the Defense is not objecting, we'll go through it, and then I'll be able to argue some more about it.

THE COURT:  You may.

GENERAL DUNGAN:  This is No.  7.  There you go.  Okay.  And do you recognize the --

THE COURT:  Has it been marked yet?

GENERAL DUNGAN:  Can we mark --

THE COURT:  Yeah, let's mark

this one as No. 9.

COURT CLERK:  Your Honor, I'm sure the last video should be Exhibit 9.

THE COURT:  Well, I don't think they put the video in because they stipulated to putting it in.

THE WITNESS:  Thank you, sir.

(Exhibit #9 - text from jail was marked and entered.)

BY GENERAL DUNGAN:

Q.   Do you recognize what's been handed to you?

A.   I'm sorry, ma'am?

Q.   Do you recognize this Exhibit 9?

A.   Yes.

Q.   Is this a text from the jail?

A.   It is.

Q.   Okay.  And was this from your investigation sent by the Defendant?

A.   It was.

Q.   Okay.  And in this text, if we can go down -- let me see -- to the line that begins, I'm innocent, and go across it after the phone number.  It says:

Make sure all these people know

Case 3:24-cv-01121   Document 111-2   Filed 08/12/26   Page 49 of 94 PageID #: 2524

I'm innocent. Has framed by Erin. The report is proof. Ask for help to reach media and raise money to hire lawyers.

And then down to the bottom, the line that begins with then add:

Then add in, I'm being framed, and people really will want to help an innocent person. This is key. Lastly, Erin's a fraud. She's forged court records to get a teaching job. She's a drunk with criminal records. She defrauded a church and tried to frame me but got caught.

Is that what the text says?

A.   It is.

Q.   And that's being sent to this ■ number?

A.   Correct.

Q.   And do you still have Exhibit 4?

A.   I do.

Q.   And this is David Baker's personal information?

A.   It is.

Q.   And what's David Baker's phone number end in?

Case 3:24-cv-01121   Document 111-2   Filed 08/12/26   Page 50 of 94 PageID #: 2525

A. ███.

Q. Is his phone number the same phone number that the defendant's texting in this message?

A. It is.

Q. Okay. And so back to Exhibit 2, the mail log, the Defendant sent David -- David Baker a legal report, right?

A. Correct.

Q. A legal letter on January 23rd; is that right? Under the name Mike Ross to the ███ ███████████ Franklin, Tennessee.

A. Correct.

Q. Okay. And then the next day, he's texting the Defendant on this text telling him to use the report to reach out to the media to say Erin framed him, that she's a drunk ass, forged court records, criminal records, defrauded a church, tried to frame me and caught; right?

A. That is correct.

Q. Okay. And are these the only times that we've just gone through -- are these the only times that the jail has found the Defendant to be abusing the mail system?

A. No, ma'am.

Q. And could there be far more that the jail has been unable to stop?

MR. COSTON: I object, that calls for speculation.

THE COURT: I'll sustain the objection.

BY GENERAL DUNGAN:

Q. If we can, can we talk about what the jail needs to enforce the order as it currently stands to keep the Defendant from abusing the jail system to harass his victim?

A. Having Mr. Gordon placed in an area within the jail that is not, does not house so many individuals that we cannot keep track of all the mail incoming, outgoing messages and stuff like that.

Q. Okay. So, if an Order was to house him separately in a smaller pod with a limited number of inmates with careful monitoring of the kiosk and mail usage of the Defendant and the same inmates within the pod be something that the jail needs to enforce the previous order?

A. I think so.

Q. Okay. Would the jail still then be able to allow him to attend religious services once

a week with proper monitoring?

A. Yes.

Q. Okay. And continue the limitations in the limited manner the Court intended from its original order?

A. Yes, ma'am.

Q. And if the Court were to change its original order to these further restrictions, do you believe the jail would be able to enforce it?

A. Yes.

Q. Okay. Beyond these issues with Mr. Gordon, has the jail had other issues with Mr. Gordon's behavior?

A. Yeah.

Q. Including what?

A. So, he just did a time -- he just did time in lockdown for stealing and smuggling items out of the classroom.

Q. Okay.

A. When we sent him to a religious service.

Q. And during the time the Defendant was even in administrative segregation, was he still finding, was he still abusing the jail kiosk system?

Case 3:24-cv-01121   Document 111-2   Filed 08/12/26   Page 53 of 94 PageID #: 2528

A.  He was.

GENERAL DUNGAN:  Okay.  Thank you.

THE COURT:  Thank you, Ms. Dungan.  Mr. Coston?

CROSS EXAMINATION

BY MR. COSTON:

Q.  So, each of these e-mails would violate the current Court Order, wouldn't they?

A.  They would, yes, sir.

Q.  Okay.  Could you point to me in any of these e-mails -- we'll start with the first one. Just stop me and tell me where the harassment is in this.  Merry Christmas, is that harassing?

A.  No.

Q.  Still no communication please let me know if you received the forensic report.  I currently have no lawyer.  I won't read the whole thing.  Is there any harassment at all in this first one?

A.  No, sir.

Q.  How about the second one?

Mike, thanks for responding.

Call the clerk's office with your case number.

The second one sounds like a bunch of

Case 3:24-cv-01121   Document 111-2   Filed 08/12/26   Page 54 of 94 PageID #: 2529

stuff about a case where he's litigating himself and he's seeking assistance of other people on the outside to pursue his case. Isn't that what that sounds like to you?

A. Sure. Yes, sir.

Q. Okay. And the third one is the one that I guess is a little more marginal. I'm supposing that the harassment is down here where it says that:

> Erin's a fraud and she forged court records to get a teaching job and she's a drunk.

Is that what you're contending is harassment here? Or is there anything else in this e-mail?

A. I would say that him wanting them to go to the media and announce all the stuff which he put in there and to Reddit and Facebook and all that stuff.

Q. Well, that's up above, that's not talking about -- he's not saying to go to the media with Erin being a drunk and a fraud and all that? He saying he wants them to go to the media with the stuff above -- the stuff that says go to the media with us, isn't it? So he's not saying go to the

55

media with Erin being a drunk and a fraud. And Erin's the victim in this case, isn't it, or the alleged victim.

A. Sure.

Q. So the idea is for me as a lawyer, I want to prove she's a drunk and a fraud. Is that right? That's kind of his constitutional right for me to try to prove that. And so what he's trying to do is engage other people in helping me to prove that she's a drunk and a fraud.

A. Okay.

Q. Isn't that right?

A. I'm not him, so I don't know what his intent is in this.

Q. Okay. But this isn't harassment, is it? None of these are harassment? And on the first one, you testified that the second two were to this former inmate. Do you know who the first e-mail is to -- or text message, I suppose. The one that ends in 3668?

A. I don't -- I don't know who that -- I don't know whose phone number that is now.

Q. Well, let's say hello and give Mama a hug for me. Love you. Kind of sounds like a family member does --

A. Sure.

Q. So the idea is you want to enjoin him from talking to his family members as well and telling family members I love you, Merry Christmas, that kind of thing. Is that part of the injunction that you're trying to enforce?

A. It's not that we want, but he's had that privilege in the past and he has abused having said privileges.

Q. Okay. And telling his sister that he loves her and give Mama a hug, that's abusing his privilege.

A. Not referring to this one, sir.

Q. Okay. But you're presenting these three emails as prime examples of the kind of thing -- and I agree I think it does fall within the Court's current order.

A. And I think that's why -- I think that that's why that they were they were presented was because it's showing that he's violating -- -

Q. To show that he's violating the Court order.

A. Correct.

Q. But I'm sure we can agree that telling your sister I love you give Mama a hug;

Case 3:24-cv-01121   Document 111-2   Filed 08/12/26   Page 57 of 94 PageID #: 2532

that's not harassing anybody, is it, even though it falls within the Court order.

A. I guess it depends on if your family wants to hear from you.

Q. Okay. What's the property that you state that he took out during the time out in the church service?

A. He took a Bible that he knew he was not supposed to take.

Q. He took a Bible though.

A. Yes.

Q. And what about this Bible is that he's not supposed to take it?

A. It doesn't matter what the item is inside a secure facility like a jail. They're not allowed to just do as they please. So they know they're not supposed to move things back and forth to the hallways. They know they're not supposed to take things to and or from church. They have Bibles issued to them inside their cells. So if he needed something, he needed to ask for it. He did not need to take it from the classroom in which he was attending church service.

Q. Okay, so you're -- you're -- you're -- was he punished for this?

Case 3:24-cv-01121   Document 111-2   Filed 08/12/26   Page 58 of 94 PageID #: 2533

A. He was.

Q. So he was punished for taking a Bible to his cell?

A. Correct.

Q. Okay. And he also issued a FOIA request, didn't he?

A. Yes.

Q. Was he punished for that as well?

A. No.

Q. He wasn't punished for the FOIA request?

A. He issued a FOIA request to us and got punished?

Q. Yes, that's what I'm asking?

A. Not to my knowledge.

Q. Okay. Part of his case against you is for sexual abuse of him in prison, isn't it, in the jail; isn't that right?

A. Yes.

Q. And the officer admitted to acting inappropriately and he was terminated, wasn't he?

A. He was not terminated. He actually resigned for a whole different reason months later. He was disciplined accordingly, but it had nothing to do with termination.

Case 3:24-cv-01121   Document 111-2   Filed 08/12/26   Page 59 of 94 PageID #: 2534

Q. He was he was disciplined for making sexually inappropriate remarks to the Defendant, wasn't he?

A. Correct.

Q. And that was part of one of the lawsuits.

A. He admitted -- he came to -- the deputy came to us and admitted that he did it before we even got a complaint from Mr. Gordon.

Q. And that's part of one of the Federal cases he has against you, isn't it?

A. Correct.

Q. I mean, not against you personally --

A. Right.

Q. -- but against the jail. Did you destroy a bunch of mail, incoming mail, that came to him from the victim, Erin Mishkin?

A. We've never destroyed any of his mail.

Q. You've never destroyed any of his mail?

A. Not to my knowledge. To my knowledge everything that he we've -- that he didn't get should have gone to his property.

60

Case 3:24-cv-01121    Document 111-2    Filed 08/12/26    Page 60 of 94 PageID #: 2535

Q. Okay. Did he receive some incoming mail from the victim in this case?

A. I don't -- I don't touch every piece of mail that comes in that facility, so I'm not going to sit here and say yes or no.

Q. But do you know of any mail to him from Erin Mishkin?

A. I don't recall off the top of my head, no.

Q. Okay, so you're saying it's possible that he received it, you just don't remember.

A. Sure.

Q. He's -- he has some mail going -- I mean, some messaging going to Oklahoma.

A. Uh-huh.

Q. Do you know what that's about?

A. I don't know what it's about.

Q. Are you aware that he has a suit going against the Choctaw Nation in Federal Court in Oklahoma?

A. I don't.

Q. You're not aware of that?

A. No.

Q. Do you know who all of his

61

attorneys are?

A. No.

Q. This Aliyah Brown, do you know whether Aliyah Brown, you talked about some mail from Aliyah Brown or to Aliyah Brown?

A. To my knowledge, there's no record of her being an attorney in this.

Q. Do you know that she's a private investigator?

A. No, I don't think private investigators fall under those --

Q. Well, it says right on the thing? It doesn't allege that she's an attorney. It says legal mail private --

A. Yes, it says legal mail, exactly.

Q. But it says right under it under the address private investigator.

A. Okay.

Q. Okay. Did you check whether she's a private investigator?

A. No.

Q. Even though it says private investigator right there?

A. No.

Q. Would that qualify as legal mail

under the current Court Order, something with a private investigator regarding a case?

A. If it was approved by the Courts and provided to us by the attorney.

Q. Well, what if he's representing himself in a case?

A. I don't know.

Q. Okay. What you're proposing is to put him in a smaller pod? How many people would be in that pod?

A. Two or three.

Q. And what would the conditions of that be? Would he be in lockdown 23 hours a day?

A. Nope. He would be out, same day room activities as every other unit.

Q. Every other unit, but just with only two or three people in that pod.

A. Correct.

MR. COSTON: Okay. Thank you.

THE COURT: Thank you, Mr. Coston. Redirect?

GENERAL DUNGAN: Yes.


REDIRECT EXAMINATION

BY GENERAL DUNGAN:

Case 3:24-cv-01121    Document 111-2    Filed 08/12/26    Page 63 of 94 PageID #: 2538

Q. Did you testify back in August about the defendant's conduct within the jail?

A. Yes.

Q. Do you recall testifying about text messages the Defendant sent back in August with the victim's home address and talking about vodka and diapers?

A. Yes.

Q. And do you recall being at that hearing?

A. Yes.

Q. And hearing that the victim received prior to the hearing a package of diapers with a note that said the 20th will be a hoot?

A. Yes.

Q. And is that some of the harassing behavior that this victim has had?

MR. COSTON: I object to this line of questioning, Your Honor, there's nothing to connect Mr. Gordon to those diapers or that note.

GENERAL DUNGAN: Your Honor, the Court already found --

THE COURT: I've already found in that prior hearing that there was.

That is the reason that we have the restricted communication because he was using other people to harass Ms. Mishkin.

And that's what I want to hear today is while I understand he has effectively violated the Court order and communicated with persons that he was not permitted to, which I'll deal with; but my question is has anything like what occurred in August where he has basically gotten people to do his harassing bidding, has any of that -- are there any allegations of that today?

BY GENERAL DUNGAN:

Q. Captain Youker, is the jail currently investigating the Defendant for mail that the victim has received since this Order went into place trying to figure out how the Defendant would be getting it out?

A. Yes.

Q. Okay. And has the Defendant received mail that's allegedly -- well, let's look at this paperwork. If we can go to the October

Case 3:24-cv-01121    Document 111-2    Filed 08/12/26    Page 65 of 94 PageID #: 2540

7th, there was legal mail that went out to Kenneth Zebley, we know. It says Law Office Ken Pong, and it went to Kenneth Zebley, right?

A. Correct.

Q. And after that date, the Defendant about a week later got legal mail incoming from the victim's address, ████████████████████████. Is that correct?

A. Correct.

Q. Okay. And then still about a week after that, got more legal mail on 10-29 from ██ ████████████.

A. Correct.

Q. Is that correct?

A. Yes, ma'am.

Q. And did that spark -- and around that same time, did the victim also get letters with, like, blank envelopes that Ashley Lindquist began to investigate to see if we could show that they were coming from the Defendant?

A. Yes.

Q. And were those envelopes the same envelopes that the jail hands out in commissary?

A. Yes.

Q. And the same stamps?

Case 3:24-cv-01121   Document 111-2   Filed 08/12/26   Page 66 of 94 PageID #: 2541

A.    Yes.

Q.    Okay.  And if the Defendant were sending those out, could that be done -- how he's housed right now in general population, without the jail being able to stop it?

A.    Absolutely.

Q.    Okay.  And the only way to know for sure would that be if the jail was opening everyone's legal mail --

A.    Correct.

Q.    Within the pod?

A.    Yes, ma'am.

Q.    And are you currently asking to enjoin him from doing anything, or just to change the Order in a way -- the Order the Court already has down in a way the jail can enforce?

A.    Yeah, I think that's our problem, really, is the Order says one thing, but unless the attorney gives us what we need, we can't enforce the order and not violate his rights.  So we're kind of shooting from the hip on our end, trying to make sure that we're getting stuff out that needs to go out and trying to stop the stuff that we hope doesn't truly need to go out.  And having the Order updated to give us specific addresses and names and

Case 3:24-cv-01121    Document 111-2    Filed 08/12/26    Page 67 of 94 PageID #: 2542

locations that we can actually approve his mail to go to would make it black and white, no questions asked.

GENERAL DUNGAN:  Okay.  That's all, thank you.

THE COURT:  Any re-cross?

RECROSS EXAMINATION

BY MR. COSTON:

Q.  Is this a copy of a memorandum, an order from the Federal Court of the Middle District of Tennessee to which you're a party?

A.  I couldn't tell you.

GENERAL DUNGAN:  Can I see it?

MR. COSTON:  Of course.

THE WITNESS:  Yes, sir.

BY MR. COSTON:

Q.  And in there the Court finds that you've retaliated against the Defendant, doesn't it?

GENERAL DUNGAN:  Your Honor, may I see it before he answers.

MR. COSTON:  She would like to see it first.

THE COURT:  Yes.  And ladies and

Case 3:24-cv-01121    Document 111-2    Filed 08/12/26    Page 68 of 94 PageID #: 2543

gentlemen, while they're talking, if you have turned in a plea, Judge Woodruff is available to take pleas in Courtroom D.

Your Honor, the State just objects to the Defense I guess building this question in a way that seems that this is an Order of the Federal Court. It's not an order that says that anything happened. It's just an order that says the case is allowed to continue. One party was dismissed and the parties are allowed to continue in the suit. There's no findings in the Order.

MR. COSTON: Well, I'll stop asking him questions. I'll bet the Court can read a Court's opinion and make whatever you do.

THE COURT: I'll take a look at it.

MR. COSTON: I'd like to enter it into evidence.

THE COURT: I'll allow it to be, I mean, it certainly could.

Case 3:24-cv-01121   Document 111-2   Filed 08/12/26   Page 69 of 94 PageID #: 2544

MR. COSTON: But I won't ask any more questions. You can read a Court Order as well as anybody else can, I'm sure.

THE COURT: So this will be the next exhibit. This is a Memorandum of Opinion filed August the 19th of last year.

(Exhibit #10 - Memorandum of Opinion dated 8-19-25 was marked and entered.)

THE COURT: Any additional questions?

BY MR. COSTON:

Q. Do you know that Mr. Gordon's sister is an attorney?

A. Yes.

Q. The one he was communicating with in that message.

A. Yes.

MR. COSTON: Thank you. That's all.

THE COURT: Ms. Dungan, any additional questions.

GENERAL DUNGAN: No, Your Honor.

Case 3:24-cv-01121    Document 111-2    Filed 08/12/26    Page 70 of 94 PageID #: 2545

THE COURT: I do have a question. Generally, it's up to the sheriff to run the jail in terms of classification and where they house inmates. If you're saying that the jail is having difficulty monitoring Mr. Gordon unless he's transferred, why should the Court involve itself? Shouldn't the sheriff's department be the one to determine who's housed where? Because I don't want to get in a position where I have pre-trial detainees coming in filing motions to be moved in the jail because that's not the Court's responsibility.

THE WITNESS: Sure. But I think also we want to make sure that it's not looking like a case of retaliatory -- or retaliation against us or trying to put him in a smaller housing unit based off of his current situation with the lawsuits against us.

THE COURT: Okay. Does either side have a follow-up question?

GENERAL DUNGAN: No, Your Honor.

But the State has just a brief close, no further witnesses.

MR. COSTON: Let me just see if I've got this right.

FURTHER RECROSS EXAMINATION

BY MR. COSTON:

Q. You're asking the Judge to order that your retaliation is legal so it doesn't look like you're retaliating?

A. No, sir. We're asking the Judge to make a decision based off the evidence that's presented of whether or not what we want to do is okay.

MR. COSTON: Thank you.

THE COURT: Any other questions?

GENERAL DUNGAN: Oh, no, Your Honor.

THE COURT: All right. You can step down. Sir, thank you.

THE WITNESS: No, thank you.

(Witness excused.)

GENERAL DUNGAN: But, Your Honor, I do have, if the Court will allow, the Exhibit No. 7 on a flash drive. It is the one video we did introduce, and I attached -- even though it was

72

authenticated -- the Certificate of Authenticity?

THE COURT: That would be fine.

MR. COSTON: There's no objection. We don't even contest that it was him sending it out.

THE COURT: All right. Brief, very brief closing.

GENERAL DUNGAN: Just briefly, Your Honor, what the State's asking for today, the Court understands the history of this case. All these facts came in the last time when the Court made this Order. But the Defendant, over the course of now four years, has been harassing this victim, and everything that the jail has done, that this Court has done, has been unable to stop him. And the State is just asking the Court to amend the Order in a way that allows the jail, one, to enforce it, and, two, to amend the order to reflect that it's a requirement of the Defendant as well. As the Order reads now, it's a requirement of the jail to prevent it, but it doesn't specifically require the Defendant not to do it.

So the State would like the order to reflect that the Defendant may not do it, and the State will be absolutely clear in telling the Court

Case 3:24-cv-01121    Document 111-2    Filed 08/12/26    Page 73 of 94 PageID #: 2548

that if the Defendant continues this behavior once that -- if the Court will grant us this order, that we will bring petitions for contempt.

MR. COSTON: I think the State has made a pretty good case today that your first Order goes a little too far when it's enjoining him from engaging in legally protected activities. The Order needs to be modified and narrowed, if anything. He shouldn't be enjoined from talking to his sister, or his mother, or attorneys who he may wish to engage in a case, even if they're not a current attorney. How can he ever find another attorney for those cases he represents himself pro se, and if he's not allowed to talk to attorneys who don't currently represent him? Those are constitutionally protected rights; the right to an attorney. And the Order goes too far. He should be allowed to talk to attorneys who he may engage in the case. He should be able to talk to other legal personnel, like a private investigator who he's involved in a case, and anyone who's connected with a case. So your Order should be narrowed. He should be able to talk to family members, attorneys, and other legal professionals.

And there's absolutely -- what they've

Case 3:24-cv-01121    Document 111-2    Filed 08/12/26    Page 74 of 94 PageID #: 2549

demonstrated, the best five emails they found to indicate that he's harassing the victim show no harassment.  The only potential harassment is in that one e-mail where he says that she's a drunk and everything, but that's our case.  When we have our mega trial, I'm going to try to prove in this courtroom that she is a drunk and a fraud, and I hope you don't do anything to me over that.  But that's his constitutional right, is to try to prove that she's a drunk and a fraud.

And so I'd ask that you narrow your original Order, and don't put him in isolation. He's been in jail and limited access for three years.  I think that will constitute cruel and unusual punishment.  And it's not necessitated by the facts here today.

GENERAL DUNGAN:  Your Honor, I'm sorry, just briefly.  The Defendant does have a constitutional right to pursue the criminal case in cases related to his conditions of release, and the State believes that he -- the county attorney's office has provided a list of attorneys that are currently engaged in representing different people in lawsuits against him with the conditions of confinement that the State would be happy to

Case 3:24-cv-01121    Document 111-2    Filed 08/12/26    Page 75 of 94 PageID #: 2550

provide.  The State would also like to point out that the defendant's not here as just a regular inmate within the jail who the State and the jail is seeking to further restrict his rights.  The defendant's here based on his own behavior within the jail over the past three years of continuing to harass this victim.  He is currently charged with offenses that he committed within the jail further harassing the victim from constantly contacting her, having other inmates contact her, issuing subpoenas for her information, he's charged with a false report from within the jail from him reporting her for a crime that didn't happen.

MR. COSTON:  That's not in evidence.

GENERAL DUNGAN:  It's a charge, Your Honor, false report, that he's currently charged with, with an offense date that happened after the -- after he was incarcerated.  Your Honor, this is a pattern of behavior, and the Court has heard this evidence before that gets us here, which is why the Court made the Order in August of last year.

And so the State is asking the Court to further amend it to make it specific to the Defendant and allow the jail to enforce it.  And

also the jail does have a problem with having to hold the defendant's legal mail that's not legal mail that they suspect -- the ones that they can show are not legal mail. If we could set trial dates and then set review dates where the jail could bring in the legal mail that they don't believe is and let the Defense attorney look at it and see what it is so we know we're not violating any of his rights. Thank you.

THE COURT: All right. Here's what we're going to do. The concerns that I had at the last hearing that Mr. Gordon was using other people to harass the victim in this, that does not appear to be what has occurred. What appears, what's clear and admitted is that Mr. Gordon was under Court Order. The Court ordered the sheriff's department not to allow him to, but clearly he knew he was not supposed to be contacting anyone other than the individuals listed in the Order, but I'm going to fix that.

Mr. Gordon may not use text, e-mail, or video calls, period. He may communicate the way that we all used to communicate, which is by mail, in writing. But he may not, either using his account or anyone else's account, he has admittedly

Case 3:24-cv-01121    Document 111-2    Filed 08/12/26    Page 77 of 94 PageID #: 2552

violated, he's admittedly utilized other inmates' access numbers, and we saw it on the video, for him to send messages. And so for that, he has waived his ability to communicate the way that we have grown accustomed to in this decade. But he may still communicate by mail. Counsel for Mr. Gordon shall provide a list to the jail of recipients for legal mail to which Mr. Gordon may send legal mail. I will ask Mr. Coston to verify that they are indeed legal mail recipients, not necessarily by going through the mail, but he needs to provide a list of the recipients that may need to receive mail. It could be an attorney he's trying to hire. It could be an investigator. I'm not going to limit his ability to communicate regarding his cases. But if he's going to say something is legal mail, then we're going to need some mechanism to verify that.

GENERAL DUNGAN: Is the Court going to allow him to correspond with his sister, who as far as the State understands is not representing him?

THE COURT: Yes, I'll allow him to communicate with his sister.

GENERAL DUNGAN: Okay.

THE COURT: Again, it's a balancing

Case 3:24-cv-01121    Document 111-2    Filed 08/12/26    Page 78 of 94 PageID #: 2553

test.  But if there's an allegation that sister harassed Ms. Mishkin at his direction, we'll be in a different situation.

GENERAL DUNGAN:  The problem is we don't know who is helping him --

THE COURT:  I understand.

GENERAL DUNGAN:  -- continue the harassment.

THE COURT:  But I think that's a reasonable answer to an impossible situation. I can't infringe on his First Amendment rights.  I'm not going to keep him from talking to the media. If he wants to talk to the media, he can talk to the media if they want to talk to him.  I don't find the allegations about Ms. Mishkin to be harassment when they're made to a third party and not to her.  I'm not going to insert myself into the operations of sheriff's department and order that he be housed in any particular area.  That is not by the purview of this Court, that is in the judgment of the Sheriff.  But I will extend the prior order, which as drafted, is directed to the sheriff's department.  I will include that these prohibitions specifically apply to Mr. Gordon as well as the sheriff's department.

79

GENERAL DUNGAN: Thank, Your Honor. So for the Court, for the State's understanding, he will be allowed to communicate with anyone on the allowed contact list, any clerk's office, and the media?

THE COURT: By mail.

GENERAL DUNGAN: By mail.

MR. COSTON: And family members.

THE COURT: And family members.

GENERAL DUNGAN: All family members, Your Honor? The Defendant has harassed in the past, certainly using someone from the area he is from sent that information. If it's a family member, it's not legal mail, so I'm assuming that there'll be copies of it.

GENERAL DUNGAN: Right now, he's enjoying from sending anything but legal mail from the previous Order of the Court. The Court was only allowing him to send legal mail in the previous Order. He was only allowed to communicate with anyone on the list, period, with no communication with anyone off the list except for legal mail.

THE COURT: Since I've taken away his text and e-mail, I'll allow him to send written

Case 3:24-cv-01121    Document 111-2    Filed 08/12/26    Page 80 of 94 PageID #: 2555

mail to family.

GENERAL DUNGAN:  To which family, Your Honor?  He has been sending written mail to other inmates that has been --

THE COURT:  I understand.  As I directed, Mr. Coston will have a list of people that should be approved.  If you object to that list, if there's someone on that list, then you can bring it to my attention.

MR. COSTON:  Or if a family member is harassing Ms. Mishkin, I would assume that family member will come off the list.

GENERAL DUNGAN:  The State's not concerned about them reaching directly out.  The State's concerned that the defendant's going to mail them packets that they're going to then mail on either back to the jail pretending to be Ms. Mishkin or back to Ms. Mishkin, which is what the State suspects he's doing right now.

THE COURT:  We can't prevent it.  I mean there's no way to prevent all of it that has any respect for the Constitution and his ability to handle these cases.  If that happens, I mean, if there's evidence that happens, then I shut it down. But I can't preemptively -- I am not going to

Case 3:24-cv-01121    Document 111-2    Filed 08/12/26    Page 81 of 94 PageID #: 2556

preemptively do that because it may happen. Just with the understanding, if it does happen, he will regret it significantly.

GENERAL DUNGAN: Thank you.

THE COURT: Thank you.

MS. THOMPSON: Your Honor, I apologize, Lee Ann Thompson the County Attorney

THE COURT: Yes.

MS. THOMPSON: Can I ask a clarifying question --

THE COURT: You sure can -- so that the jail knows how to function. Would it be possible for the list to have basically two columns, like a legal mail column and then a non-legal mail column, so that we know how to treat each category of mail? I would have done that anyway.

MS. THOMPSON: Fantastic.

THE COURT: That would be fine. Ms. Dungan, can you draft the order, please?

GENERAL DUNGAN: Yes, Your Honor.

THE COURT: Thank you. All right. I've been asked for a short recess. I'm happy to do so. I will be back here at 2:50.

MR. COSTON: One other clarifying

question, Your Honor. Apparently his sister is involved in a case with him in Davidson County, so can she go on the legal mail list? Here's the problem. There's a clear history of manipulation in pushing the boundaries. And with this individual, as evidenced today by the fact that he admittedly violated the Court's Order by using someone else's ability to communicate. So he is pushing the line, so no. I'm done with it. That's it.

MR. COSTON: But, Your Honor, what I would comment, though, is your Order does seem to be working because there's no evidence that he's harassing Ms. Mishkin.

THE COURT: If my order was working, we wouldn't be here because he wouldn't have intentionally tried to manipulate the system and use other people's logins. So I need to take a recess before I say anything else.

MR. COSTON: Thank you, Your Honor.

THE COURT: We'll be in recess.


(WHEREUPON THESE PROCEEDINGS WERE ADJOURNED.)

Case 3:24-cv-01121    Document 111-2    Filed 08/12/26    Page 83 of 94 PageID #: 2558



REPORTER'S CERTIFICATE

STATE OF TENNESSEE     )

COUNTY OF WILLIAMSON   )

I, Cathy F. Maupin, licensed court reporter in and for the State of Tennessee DO HEREBY CERTIFY that the foregoing proceedings were reported by me taken in the time and place set forth in the caption thereof; that the proceedings were electronically taken, and the foregoing proceedings constitute a true and accurate transcript of said proceedings to the best of my ability.

I FURTHER CERTIFY that I am not related to any of the parties named herein, nor their counsel, and have no interest, financial or otherwise, in the outcome of events of this action.

I FURTHER CERTIFY that I am duly licensed by the Tennessee Board of Court Reporting as a Licensed Court Reporter as evidenced by the LCR number and expiration date following my name below.

IN WITNESS WHEREOF, I have hereunto affixed my hand this __14_ day of _June, 2026_.

_____
*Cathy F. Maupin, LIC #813*

*Expiration Date 06/30/2026*

# #

**#10** [2] - 2:24, 70:10
**#813** [1] - 85:22

# '

**'26** [1] - 26:14

# 0

**06/30/2026** [1] - 85:23

# 1

**1** [5] - 1:13, 2:14, 17:18, 17:21, 17:24
**1-15,2026** [1] - 2:22
**1-6-26** [1] - 26:23
**10-29** [1] - 66:11
**10:11** [1] - 44:22
**12-26** [1] - 46:13
**12-26-2025** [2] - 2:20, 42:21
**12-26-25** [3] - 35:19, 37:9, 40:19
**13th** [2] - 23:3, 27:10
**15** [1] - 46:17
**15:18** [1] - 40:19
**15:25** [1] - 40:25
**15th** [3] - 44:3, 44:22, 46:6
**17** [2] - 1:12, 2:14
**18th** [2] - 26:5, 26:8
**19th** [1] - 70:7

# 2

**2** [7] - 2:15, 18:12, 23:6, 23:10, 23:12, 23:15, 51:6
**2023** [1] - 9:10
**2025** [6] - 2:14, 17:19, 17:21, 23:3, 23:16, 26:6
**2026** [7] - 1:12, 23:3, 27:10, 27:19, 30:3, 44:3, 46:17
**2026_** [1] - 85:18
**2088** [2] - 50:16, 51:1
**20th** [5] - 4:22, 14:18, 23:3, 26:1, 64:14
**21** [1] - 41:14
**2154** [1] - 31:19
**22** [3] - 2:14, 17:19, 17:21
**23** [2] - 2:15, 63:13
**23rd** [3] - 27:19, 29:4, 51:10
**24** [1] - 10:19

**25** [1] - 2:16
**29** [1] - 2:17
**2:50** [1] - 82:24
**2nd** [2] - 30:3, 30:7

# 3

**3** [3] - 2:16, 25:2, 25:5
**34** [1] - 2:19
**3668** [1] - 56:20
**37055** [1] - 31:20
**37067** [2] - 29:7, 29:12
**39** [1] - 2:21
**3:20** [1] - 41:4
**3:22** [1] - 41:14
**3:25** [5] - 35:19, 37:9, 40:23, 41:22, 41:23

# 4

**4** [4] - 2:17, 28:21, 29:1, 50:19
**42** [1] - 2:20
**43** [1] - 27:2
**46** [1] - 2:22
**48** [1] - 31:19
**49** [1] - 2:23

# 5

**5** [4] - 2:19, 34:5, 34:9, 34:11
**50** [1] - 10:19
**54** [1] - 2:5
**5:22** [1] - 41:13
**5th** [1] - 30:13

# 6

**6** [5] - 2:20, 36:3, 36:23, 42:17, 42:21
**6090** [1] - 29:6
**619** [2] - 25:10, 25:15
**63** [1] - 2:7
**644** [8] - 2:21, 38:5, 38:14, 39:18, 40:6, 45:3, 45:8
**68** [1] - 2:8
**690** [2] - 29:11, 51:11
**6th** [2] - 26:14, 30:16

# 7

**7** [6] - 2:21, 39:16, 39:18, 43:17, 48:19, 72:23
**70** [1] - 2:24
**72** [1] - 2:10
**74036** [1] - 27:3
**7th** [3] - 23:16, 24:1,

66:1

# 8

**8** [8] - 2:3, 2:22, 44:9, 44:15, 44:16, 45:23, 46:15, 46:17
**8-19-25** [2] - 2:25, 70:10
**8.25** [1] - 7:18
**805** [2] - 66:7, 66:11
**85** [1] - 1:13
**8:30** [2] - 9:20, 9:22

# 9

**9** [7] - 2:23, 45:23, 48:14, 49:1, 49:3, 49:8, 49:14
**9:00** [1] - 9:21

# A

**a.m** [1] - 44:22
**ability** [9] - 4:23, 6:1, 6:18, 18:2, 78:4, 78:15, 81:22, 83:8, 85:10
**able** [19] - 6:21, 11:21, 15:1, 15:17, 18:12, 19:11, 20:13, 21:3, 31:2, 34:17, 34:20, 34:25, 36:15, 48:16, 52:25, 53:9, 67:5, 74:19, 74:23
**Absolutely** [2] - 15:19, 67:6
**absolutely** [2] - 73:25, 74:25
**abuse** [1] - 59:17
**abused** [2] - 18:8, 57:8
**abusing** [8] - 5:7, 14:14, 14:19, 20:10, 51:24, 52:10, 53:24, 57:11
**access** [7] - 10:7, 11:10, 11:12, 30:24, 38:21, 75:13, 78:2
**accordingly** [1] - 59:24
**account** [8] - 11:16, 11:17, 11:21, 35:15, 37:11, 44:24, 77:25
**accurate** [3] - 44:5, 45:18, 85:9
**accustomed** [1] - 78:5
**acting** [1] - 59:20
**action** [1] - 85:12
**actions** [2] - 5:17,

5:18
**activities** [3] - 6:18, 63:15, 74:7
**add** [2] - 50:5, 50:6
**additional** [2] - 70:12, 70:24
**address** [15] - 13:8, 13:9, 13:22, 16:1, 19:18, 22:11, 25:9, 25:12, 27:7, 29:9, 46:24, 62:17, 64:6, 66:7
**addresses** [3] - 15:22, 15:23, 67:25
**ADJOURNED** [1] - 83:23
**administrative** [1] - 53:23
**admit** [4] - 43:14, 48:8, 48:10, 48:13
**admitted** [10] - 34:4, 43:13, 43:15, 43:16, 43:17, 47:22, 59:20, 60:7, 60:8, 77:15
**admittedly** [3] - 77:25, 78:1, 83:7
**advance** [5] - 41:2, 41:3, 41:6, 41:12, 41:23
**advisement** [1] - 36:18
**affect** [1] - 5:9
**affected** [1] - 47:25
**affirm** [1] - 8:2
**affixed** [1] - 85:18
**Agent** [1] - 32:11
**agree** [2] - 57:16, 57:24
**ahead** [1] - 26:4
**Aliyah** [7] - 31:18, 31:25, 32:2, 62:3, 62:4, 62:5
**allegation** [1] - 79:1
**allegations** [2] - 65:14, 79:15
**allege** [1] - 62:13
**alleged** [1] - 56:3
**allegedly** [1] - 65:24
**allow** [8] - 52:25, 69:24, 72:23, 76:25, 77:17, 78:20, 78:22, 80:25
**allowed** [13] - 5:19, 18:21, 19:5, 30:20, 30:22, 58:16, 69:11, 69:13, 74:14, 74:18, 80:3, 80:4, 80:20
**allowing** [1] - 80:19
**allows** [1] - 73:17
**amend** [3] - 73:16,

73:18, 76:24
**Amendment** [1] - 79:11
**Andy** [1] - 30:17
**Ann** [1] - 82:7
**announce** [1] - 55:17
**answer** [1] - 79:10
**answers** [1] - 68:22
**anyway** [1] - 82:17
**apologize** [1] - 82:7
**appear** [1] - 77:13
**APPEARANCES** [1] - 1:14
**Appellate** [1] - 6:7
**apply** [1] - 79:24
**appointed** [1] - 7:3
**approve** [1] - 68:1
**approved** [2] - 63:3, 81:7
**april** [1] - 1:12
**April** [1] - 23:3
**area** [7] - 9:19, 10:14, 10:18, 13:4, 52:12, 79:19, 80:12
**argue** [1] - 48:16
**Ashley** [1] - 66:18
**ass** [1] - 51:17
**assigned** [1] - 21:11
**assist** [2] - 33:2, 47:16
**assistance** [1] - 55:2
**Assistant** [1] - 1:18
**assume** [3] - 29:19, 32:23, 81:11
**assuming** [1] - 80:14
**AT** [1] - 1:1
**attached** [3] - 33:16, 33:20, 72:25
**attempt** [2] - 32:13, 32:16
**attempting** [1] - 33:6
**attend** [1] - 52:25
**attending** [1] - 58:23
**attention** [1] - 81:9
**attorney** [26] - 5:14, 5:23, 6:3, 6:9, 7:2, 7:4, 7:6, 7:8, 15:9, 15:23, 18:13, 18:19, 19:18, 31:25, 32:3, 62:7, 62:13, 63:4, 67:19, 70:16, 74:12, 74:13, 74:17, 77:7, 78:13
**Attorney** [3] - 1:18, 1:23, 82:7
**attorney's** [1] - 75:21
**attorneys** [12] - 5:15, 7:9, 19:1, 19:8, 19:11, 29:25, 62:1, 74:10, 74:14, 74:18, 74:24, 75:22

August [12] - 2:14, 4:22, 14:18, 17:19, 17:21, 23:3, 26:1, 64:1, 64:5, 65:11, 70:7, 76:21
authentic [7] - 23:1, 24:22, 28:16, 35:23, 39:2, 39:5, 44:6
authenticated [1] - 73:1
Authenticity [1] - 73:1
available [2] - 11:24, 69:3
Avenue [2] - 25:11, 25:15
aware [3] - 4:22, 61:19, 61:23

## B

Baker [5] - 2:18, 28:9, 29:1, 29:13, 51:8
Baker's [3] - 29:9, 50:21, 50:24
balancing [1] - 78:25
based [4] - 6:5, 71:20, 72:12, 76:5
basis [1] - 22:10
BEFORE [2] - 1:1, 1:11
began [1] - 66:19
begins [2] - 49:22, 50:5
behalf [1] - 7:9
behavior [5] - 53:13, 64:17, 74:1, 76:5, 76:19
behind [1] - 41:10
believes [1] - 75:21
below [1] - 85:16
best [2] - 75:1, 85:9
bet [1] - 69:17
between [1] - 10:19
beyond [1] - 34:24
Beyond [1] - 53:11
Bible [4] - 58:8, 58:10, 58:12, 59:3
Bibles [1] - 58:20
bidding [1] - 65:13
billion [1] - 7:18
bit [1] - 26:16
black [1] - 68:2
blank [1] - 66:18
Board [1] - 85:14
booking [6] - 2:16, 24:15, 24:17, 25:5, 25:8, 25:10
bottom [2] - 31:22, 50:4
Boulevard [1] - 66:7

boundaries [1] - 83:5
Bourne [1] - 43:4
Box [1] - 27:2
box [1] - 12:10
brief [2] - 72:1, 73:7
Brief [1] - 73:6
briefly [3] - 4:19, 73:8, 75:18
bring [3] - 74:3, 77:6, 81:9
bringing [1] - 48:9
broad [1] - 6:15
Brown [7] - 31:19, 31:25, 32:2, 62:3, 62:4, 62:5
building [1] - 69:6
bunch [2] - 54:25, 60:17
Bureau [1] - 30:14
Burlison [1] - 18:25
business [6] - 12:11, 22:17, 24:20, 28:14, 38:25, 45:13
BY [32] - 2:4, 2:6, 2:7, 2:9, 2:10, 8:12, 16:22, 17:23, 22:2, 23:14, 24:12, 25:7, 28:1, 29:3, 31:10, 34:14, 35:8, 36:24, 39:20, 42:23, 43:19, 44:20, 46:19, 49:10, 52:7, 54:6, 63:25, 65:16, 68:9, 68:17, 70:14, 72:7

## C

cameras [1] - 37:23
cannot [1] - 52:14
Captain [6] - 8:1, 8:17, 22:3, 42:3, 44:21, 65:17
CAPTAIN [3] - 2:3, 8:6, 8:8
caption [1] - 85:8
cards [1] - 10:11
careful [1] - 52:19
Carson [1] - 15:10
case [24] - 7:10, 7:13, 32:17, 43:4, 46:23, 54:23, 55:1, 55:3, 56:2, 59:16, 61:2, 63:2, 63:6, 69:11, 71:18, 73:10, 74:5, 74:11, 74:19, 74:21, 74:22, 75:5, 75:19, 83:2
Case [1] - 33:10
cases [13] - 4:9, 5:23, 6:4, 6:20, 6:22, 7:1,

7:11, 18:14, 60:11, 74:13, 75:20, 78:16, 81:23
category [1] - 82:16
Cathy [2] - 85:6, 85:22
caught [2] - 50:13, 51:19
cell [2] - 9:20, 59:3
cells [3] - 9:25, 10:14, 58:20
Center [1] - 8:19
center [1] - 8:20
certain [1] - 5:5
certainly [4] - 5:5, 7:13, 69:25, 80:12
Certificate [1] - 73:1
CERTIFICATE [1] - 85:1
CERTIFY [3] - 85:7, 85:11, 85:14
cetera [1] - 47:12
CHAD [2] - 2:3, 8:8
Chad [2] - 8:1, 8:15
change [3] - 46:23, 53:7, 67:14
changed [1] - 19:1
charge [1] - 76:15
charged [3] - 76:7, 76:11, 76:16
chat [1] - 10:5
chats [1] - 11:22
check [1] - 62:19
checkers [1] - 10:11
Choctaw [1] - 61:20
Christmas [3] - 42:25, 54:13, 57:4
church [5] - 50:12, 51:19, 58:7, 58:19, 58:23
Circuit [1] - 6:8
CIRCUIT [1] - 1:1
civil [9] - 5:14, 5:15, 5:17, 6:4, 6:20, 7:11, 18:13, 18:14, 19:12
clarifying [2] - 82:9, 82:25
classification [1] - 71:4
classroom [2] - 53:18, 58:22
clear [3] - 73:25, 77:15, 83:4
clearly [3] - 46:2, 46:12, 77:17
clerk [4] - 12:12, 22:9, 22:17, 22:20
Clerk [1] - 6:8
CLERK [2] - 8:2, 49:2
clerk's [6] - 5:20, 18:15, 19:14, 46:22,

54:23, 80:4
close [1] - 72:1
closing [1] - 73:7
COLE [1] - 1:6
Cole [8] - 1:22, 4:1, 8:24, 33:12, 41:11, 41:17, 41:20, 41:25
column [2] - 82:14, 82:15
columns [1] - 82:14
combine [1] - 4:9
coming [2] - 66:20, 71:13
comment [1] - 83:12
commissary [5] - 10:8, 10:25, 12:6, 66:23
committed [1] - 76:8
common [1] - 10:14
communicate [14] - 4:23, 5:13, 6:1, 6:19, 18:2, 77:22, 77:23, 78:4, 78:6, 78:15, 78:23, 80:3, 80:20, 83:8
communicated [1] - 65:8
communicating [1] - 70:18
communication [7] - 4:4, 5:12, 18:9, 43:1, 54:15, 65:2, 80:22
communications [2] - 6:16, 15:18
complaint [1] - 60:9
computer [3] - 10:22, 12:13, 40:1
concerned [3] - 11:20, 81:14, 81:15
concerns [1] - 77:11
conditions [5] - 5:24, 6:5, 63:12, 75:20, 75:24
conduct [1] - 64:2
confinement [3] - 5:24, 6:5, 75:25
connect [1] - 64:20
connected [1] - 74:21
constantly [1] - 76:9
constitute [2] - 75:14, 85:9
Constitution [1] - 81:22
constitutional [4] - 5:21, 56:7, 75:9, 75:19
constitutionally [2] - 6:17, 74:16
consultation [1] - 6:9
consuming [1] - 21:6

contact [12] - 5:4, 5:8, 5:19, 5:22, 7:8, 18:20, 19:8, 19:11, 19:24, 35:2, 76:10, 80:4
contacting [4] - 7:17, 48:5, 76:9, 77:18
contacts [1] - 18:21
contained [2] - 4:3, 33:24
contains [1] - 33:15
contempt [1] - 74:3
contending [1] - 55:13
contest [1] - 73:4
continue [4] - 53:3, 69:12, 69:13, 79:7
continues [1] - 74:1
continuing [1] - 76:6
copies [3] - 13:24, 13:25, 80:15
copy [8] - 16:10, 21:18, 21:19, 24:8, 31:6, 46:25, 47:9, 68:10
Cordan [1] - 30:18
corner [2] - 13:22, 31:22
correct [11] - 4:4, 29:7, 29:8, 43:13, 51:13, 51:20, 60:12, 63:18, 66:8, 66:14, 67:10
Correct [19] - 12:1, 13:14, 13:17, 18:10, 24:5, 33:7, 33:17, 34:2, 37:12, 38:8, 44:23, 50:18, 51:9, 57:23, 59:4, 60:4, 66:4, 66:9, 66:13
correspond [2] - 18:12, 78:20
Coston [9] - 1:23, 6:13, 7:22, 17:16, 36:7, 54:4, 63:20, 78:9, 81:6
coston [1] - 28:23
COSTON [40] - 2:6, 2:9, 2:10, 6:14, 17:17, 23:9, 25:4, 28:24, 34:8, 36:8, 36:11, 39:14, 42:16, 45:25, 46:12, 48:7, 52:3, 54:6, 63:19, 64:18, 68:9, 68:15, 68:17, 68:23, 69:16, 69:22, 70:1, 70:14, 70:21, 72:3, 72:7, 72:15, 73:3, 74:4, 76:14, 80:8, 81:10, 82:25, 83:11, 83:20

2

counsel [6] - 5:20, 6:4, 6:19, 18:13, 19:16, 85:12
Counsel [1] - 78:6
COUNTY [1] - 1:1
county [5] - 5:17, 6:9, 15:9, 75:21, 85:4
County [9] - 6:8, 8:18, 17:25, 18:3, 18:9, 44:1, 47:14, 82:7, 83:2
course [8] - 12:8, 22:16, 24:20, 28:13, 38:25, 45:13, 68:15, 73:12
court [4] - 50:9, 51:18, 55:11, 85:6
Court [53] - 4:2, 4:21, 5:11, 5:19, 5:25, 6:6, 6:7, 6:8, 6:10, 8:14, 9:17, 15:24, 15:25, 16:8, 18:8, 19:19, 21:19, 53:4, 53:7, 54:8, 57:22, 58:2, 61:20, 63:1, 64:23, 65:7, 67:15, 68:11, 68:18, 69:8, 69:18, 70:2, 71:8, 72:23, 73:9, 73:11, 73:14, 73:16, 73:25, 74:2, 76:19, 76:21, 76:23, 77:16, 78:19, 79:20, 80:2, 80:18, 85:14, 85:15
COURT [74] - 1:1, 1:10, 4:1, 4:11, 4:16, 6:13, 7:22, 8:2, 16:11, 16:13, 16:19, 17:15, 17:18, 21:21, 21:24, 23:8, 23:10, 24:10, 25:3, 28:22, 31:8, 34:6, 34:9, 36:6, 36:17, 39:13, 39:15, 42:15, 42:17, 43:16, 44:14, 44:18, 45:24, 46:10, 47:21, 48:18, 48:22, 48:25, 49:2, 49:4, 52:5, 54:3, 63:20, 64:24, 68:6, 68:25, 69:20, 69:24, 70:5, 70:12, 70:23, 71:1, 71:23, 72:16, 72:18, 73:2, 73:6, 77:10, 78:22, 78:25, 79:6, 79:9, 80:6, 80:9, 80:24, 81:5, 81:20, 82:5, 82:8, 82:11, 82:19, 82:22, 83:15, 83:21
Court's [5] - 4:21,

57:17, 69:18, 71:15, 83:7
courtesy [1] - 16:10
courtroom [2] - 9:3, 75:7
Courtroom [1] - 69:4
Courts [1] - 63:3
CR [1] - 1:5
created [1] - 28:11
crime [1] - 76:13
criminal [8] - 4:10, 5:13, 5:22, 6:3, 18:13, 50:11, 51:18, 75:19
cross [1] - 68:6
CROSS [2] - 2:5, 54:5
cruel [1] - 75:14
current [7] - 8:16, 21:10, 54:8, 57:17, 63:1, 71:21, 74:12
custodian [1] - 22:23

**D**

daily [1] - 22:10
Date [1] - 85:23
date [10] - 4:8, 4:13, 4:14, 26:17, 30:5, 45:19, 66:5, 76:17, 85:15
dated [1] - 70:10
Dated [1] - 2:25
dates [3] - 48:9, 77:5
David [7] - 28:9, 29:9, 29:13, 50:21, 50:24, 51:7
DAVID [1] - 1:11
Davidson [1] - 83:2
deal [1] - 65:9
Dear [1] - 32:11
decade [1] - 78:5
December [2] - 26:5, 26:8
decision [1] - 72:12
defendant [2] - 14:22, 14:23
Defendant [56] - 1:7, 1:21, 5:4, 5:6, 5:11, 5:21, 8:23, 8:24, 14:13, 15:5, 18:8, 18:12, 19:22, 19:23, 20:14, 20:19, 25:13, 25:25, 26:8, 26:14, 29:5, 29:17, 29:25, 30:9, 32:20, 33:6, 33:25, 34:16, 35:1, 44:12, 46:9, 47:22, 49:19, 51:7, 51:15, 51:23, 52:10, 52:20, 53:22, 60:3, 64:5,

65:18, 65:20, 65:23, 66:5, 66:20, 67:2, 68:19, 73:12, 73:19, 73:22, 73:24, 74:1, 75:18, 76:25, 80:11
defendant's [13] - 4:23, 18:2, 21:13, 21:15, 23:2, 24:3, 25:19, 51:3, 64:2, 76:2, 76:5, 77:2, 81:15
defender [2] - 19:5, 19:7
Defense [5] - 46:8, 48:12, 48:14, 69:6, 77:7
defense [3] - 5:14, 5:22, 6:3
defrauded [2] - 50:12, 51:18
demonstrated [1] - 75:1
Department [7] - 15:12, 15:16, 17:5, 17:6, 17:7, 18:1, 21:14
department [5] - 71:9, 77:17, 79:18, 79:23, 79:25
deputy [3] - 12:9, 21:11, 60:8
destroy [1] - 60:17
destroyed [2] - 60:19, 60:21
detainees [1] - 71:13
Detention [1] - 8:18
detention [1] - 8:20
determine [1] - 71:10
determined [1] - 37:22
devices [1] - 5:5
diapers [3] - 64:7, 64:13, 64:21
Dickson [1] - 31:19
different [8] - 5:20, 10:7, 19:14, 29:21, 37:2, 59:23, 75:23, 79:3
difficult [1] - 4:25
difficulty [1] - 71:6
diligently [2] - 15:16, 15:17
DIRECT [2] - 2:4, 8:11
directed [2] - 79:22, 81:6
direction [1] - 79:2
directly [1] - 81:14
disciplined [2] - 59:24, 60:1
discussing [1] - 7:5
dismissed [1] - 69:12

display [4] - 36:4, 36:8, 38:9, 44:10
District [3] - 1:18, 6:6, 68:11
DO [1] - 85:6
Dobbs [11] - 35:17, 36:14, 37:14, 37:17, 37:25, 40:16, 41:5, 41:8, 41:10, 41:16, 45:1
Dobbs' [1] - 37:11
Document [7] - 16:21, 22:1, 24:11, 27:25, 31:9, 33:9, 35:7
document [3] - 27:23, 28:10, 43:11
documents [2] - 33:16, 33:22
Donald [2] - 2:18, 29:1
done [9] - 14:16, 18:23, 18:25, 48:2, 67:3, 73:14, 73:15, 82:16, 83:9
down [14] - 9:23, 9:24, 21:13, 21:15, 24:3, 26:16, 27:19, 47:6, 49:22, 50:4, 55:8, 67:16, 72:19, 81:24
draft [1] - 82:20
drafted [1] - 79:22
Drive [1] - 29:11
drive [1] - 72:24
drunk [10] - 50:11, 51:17, 55:12, 55:22, 56:1, 56:6, 56:10, 75:4, 75:7, 75:10
DUI [2] - 4:8, 4:13
duly [2] - 8:9, 85:14
Dungan [5] - 1:18, 7:23, 54:4, 70:23, 82:20
DUNGAN [83] - 2:4, 2:7, 4:5, 4:15, 4:18, 7:25, 8:12, 16:5, 16:12, 16:15, 16:22, 17:12, 17:23, 21:17, 21:22, 22:2, 23:5, 23:14, 24:6, 24:12, 24:25, 25:7, 27:22, 28:1, 28:20, 29:3, 31:5, 31:10, 34:3, 34:14, 35:5, 35:8, 36:2, 36:9, 36:21, 36:24, 39:9, 39:20, 42:12, 42:23, 43:10, 43:18, 43:19, 44:8, 44:17, 44:19, 44:20, 45:21, 46:4, 46:14, 46:19, 48:11, 48:19, 48:24, 49:10, 52:7,

54:2, 63:22, 63:25, 64:22, 65:16, 68:4, 68:14, 68:21, 70:25, 71:25, 72:17, 72:22, 73:8, 75:17, 76:15, 78:19, 78:24, 79:4, 79:7, 80:1, 80:7, 80:10, 80:16, 81:2, 81:13, 82:4, 82:21
during [4] - 25:18, 42:4, 53:22, 58:6
duty [1] - 22:21

**E**

e-mail [10] - 10:5, 11:3, 11:5, 11:18, 18:3, 55:15, 56:19, 75:4, 77:21, 80:25
e-mails [2] - 54:7, 54:11
easier [1] - 36:5
effectively [1] - 65:7
either [5] - 30:24, 47:14, 71:23, 77:24, 81:17
electronically [1] - 85:8
emails [4] - 7:4, 11:22, 57:15, 75:1
emergency [1] - 9:23
enclosed [1] - 32:22
end [2] - 50:25, 67:21
ends [1] - 56:20
enforce [10] - 5:1, 19:23, 52:9, 52:22, 53:9, 57:6, 67:16, 67:19, 73:17, 76:25
Enforce [2] - 4:2, 4:20
ENFORCE [1] - 1:10
enforceable [1] - 6:11
engage [3] - 56:9, 74:11, 74:18
engaged [1] - 75:23
engaging [1] - 74:7
enjoin [2] - 57:2, 67:14
enjoined [2] - 7:19, 74:9
enjoining [1] - 74:6
enjoying [1] - 80:17
Enola [1] - 27:2
enter [2] - 36:9, 69:22
entered [11] - 17:19, 17:21, 23:12, 25:5, 29:1, 34:12, 39:18, 42:21, 46:17, 49:8, 70:11
entire [1] - 7:16
entities [1] - 7:16

3

envelope [2] - 14:24, 31:18
envelopes [5] - 12:7, 13:6, 66:18, 66:22, 66:23
Erin [10] - 2:19, 32:16, 32:25, 34:11, 50:1, 51:17, 55:22, 56:1, 60:18, 61:7
Erin's [3] - 50:9, 55:10, 56:2
Esquire [1] - 1:23
et [1] - 47:12
Eugene [1] - 28:9
events [1] - 85:12
evidence [9] - 7:10, 42:14, 42:18, 69:23, 72:12, 76:14, 76:20, 81:24, 83:13
evidenced [2] - 83:6, 85:15
exactly [2] - 27:8, 62:15
EXAMINATION [10] - 2:4, 2:5, 2:7, 2:8, 2:10, 8:11, 54:5, 63:24, 68:8, 72:6
examined [1] - 8:9
example [1] - 6:18
examples [1] - 57:15
except [4] - 5:13, 7:16, 7:20, 80:22
excused [1] - 72:21
exhibit [8] - 16:8, 16:14, 17:14, 21:20, 36:10, 36:12, 39:12, 70:6
Exhibit [42] - 2:14, 2:15, 2:16, 2:17, 2:19, 2:20, 2:21, 2:22, 2:23, 2:24, 17:18, 17:21, 23:6, 23:10, 23:12, 25:2, 25:5, 28:21, 29:1, 34:5, 34:9, 34:11, 36:3, 36:23, 39:18, 42:17, 42:21, 44:9, 44:15, 44:16, 45:23, 46:15, 46:17, 48:14, 49:3, 49:8, 49:14, 50:19, 51:6, 70:10, 72:23
exonerates [1] - 43:5
expiration [1] - 85:15
Expiration [1] - 85:23
explain [1] - 9:16
extend [1] - 79:21

**F**

Facebook [1] - 55:18
facility [3] - 9:24, 58:15, 61:4
fact [3] - 15:25, 48:2, 83:6
facts [2] - 73:11, 75:16
fall [2] - 57:16, 62:11
falls [1] - 58:2
false [2] - 76:12, 76:16
family [14] - 7:7, 56:25, 57:3, 57:4, 58:4, 74:23, 80:8, 80:9, 80:10, 80:13, 81:1, 81:2, 81:10, 81:11
fantastic [1] - 82:18
far [6] - 11:19, 12:13, 52:1, 74:6, 74:17, 78:20
FBI [1] - 47:16
February [4] - 30:3, 30:7, 30:13, 30:16
Federal [5] - 6:6, 60:11, 61:20, 68:11, 69:8
federally [1] - 19:20
few [1] - 7:20
figure [1] - 65:20
file [1] - 47:13
filed [2] - 4:20, 70:7
filing [3] - 33:19, 33:20, 71:13
fill [1] - 12:9
financial [1] - 85:12
findings [1] - 69:14
fine [3] - 4:13, 73:2, 82:19
First [1] - 79:11
first [17] - 4:12, 7:23, 8:9, 16:7, 16:14, 17:14, 18:24, 21:23, 31:17, 32:6, 47:4, 54:11, 54:19, 56:17, 56:18, 68:24, 74:5
five [2] - 7:16, 75:1
fix [1] - 77:20
flash [1] - 72:24
focus [2] - 14:5, 47:24
focused [1] - 48:3
FOIA [3] - 59:5, 59:10, 59:12
follow [1] - 71:24
follow-up [1] - 71:24
following [1] - 85:15
follows [1] - 8:9
food [1] - 10:8
foregoing [2] - 85:7, 85:8

forensic [6] - 6:25, 32:22, 43:2, 43:5, 47:1, 54:16
Forensic [1] - 33:9
forged [3] - 50:9, 51:17, 55:10
former [2] - 29:13, 56:18
forth [3] - 22:13, 58:17, 85:8
Founders [2] - 66:7, 66:12
four [1] - 73:13
fourth [1] - 47:7
frame [2] - 50:12, 51:19
framed [3] - 50:1, 50:6, 51:17
FRANKLIN [1] - 1:1
Franklin [6] - 1:19, 1:24, 29:6, 29:12, 47:16, 51:12
fraud [13] - 32:13, 32:16, 32:25, 33:3, 47:15, 50:9, 55:10, 55:22, 56:1, 56:6, 56:10, 75:7, 75:10
friend [1] - 7:6
friends [1] - 7:7
front [4] - 9:4, 12:10, 21:5, 40:21
Frye [1] - 27:11
function [1] - 82:12
funds [1] - 11:20
FURTHER [4] - 2:10, 72:6, 85:11, 85:14

**G**

gain [1] - 11:12
games [1] - 10:9
General [2] - 1:18, 4:17
general [11] - 9:14, 9:16, 9:18, 9:24, 10:10, 10:13, 10:17, 12:3, 19:22, 21:8, 67:4
GENERAL [83] - 2:4, 2:7, 4:5, 4:15, 4:18, 7:25, 8:12, 16:5, 16:12, 16:15, 16:22, 17:12, 17:23, 21:17, 21:22, 22:2, 23:5, 23:14, 24:6, 24:12, 24:25, 25:7, 27:22, 28:1, 28:20, 29:3, 31:5, 31:10, 34:3, 34:14, 35:5, 35:8, 36:2, 36:9, 36:21,

36:24, 39:9, 39:20, 42:12, 42:23, 43:10, 43:18, 43:19, 44:8, 44:17, 44:19, 44:20, 45:21, 46:4, 46:14, 46:19, 48:11, 48:19, 48:24, 49:10, 52:7, 54:2, 63:22, 63:25, 64:22, 65:16, 68:4, 68:14, 68:21, 70:25, 71:25, 72:17, 72:22, 73:8, 75:17, 76:15, 78:19, 78:24, 79:4, 79:7, 80:1, 80:7, 80:10, 80:16, 81:2, 81:13, 82:4, 82:21
Generally [1] - 71:2
gentlemen [1] - 69:1
Geoffry [1] - 1:23
given [2] - 17:1, 19:4
God [1] - 8:5
GORDON [1] - 1:6
Gordon [30] - 1:22, 4:2, 8:24, 12:22, 12:24, 12:25, 15:2, 20:10, 31:17, 33:12, 37:21, 38:1, 41:11, 41:17, 41:20, 41:25, 42:5, 42:7, 46:3, 52:12, 53:12, 60:9, 64:20, 71:7, 77:12, 77:15, 77:21, 78:6, 78:8, 79:24
Gordon's [4] - 4:4, 17:2, 53:13, 70:15
grab [1] - 12:12
grant [1] - 74:2
grievances [2] - 10:24, 11:2
grown [1] - 78:5
guess [10] - 23:2, 36:11, 41:14, 42:1, 44:9, 46:14, 47:21, 55:7, 58:3, 69:6
guys [1] - 14:17

**H**

hallways [1] - 58:18
hand [4] - 31:22, 39:22, 40:13, 85:18
handed [7] - 22:4, 24:13, 28:2, 31:13, 35:9, 43:20, 49:11
handheld [1] - 11:25
handle [1] - 81:23
hands [1] - 66:23
Handwriting [1] - 33:10
happy [2] - 75:25,

82:23
harass [4] - 52:11, 65:3, 76:7, 77:13
harassed [3] - 47:25, 79:2, 80:11
harassing [10] - 48:4, 54:13, 58:1, 64:16, 65:13, 73:13, 75:2, 76:9, 81:11, 83:14
harassment [10] - 54:12, 54:18, 55:8, 55:14, 56:15, 56:16, 75:3, 79:8, 79:16
head [2] - 26:22, 61:9
headquarters [1] - 30:4
hear [2] - 58:4, 65:5
heard [1] - 76:19
hearing [5] - 64:10, 64:12, 64:13, 64:25, 77:12
Helen [3] - 26:15, 26:19, 26:20
hello [2] - 43:6, 56:23
help [4] - 8:5, 47:8, 50:2, 50:7
helping [2] - 56:9, 79:5
HEREBY [1] - 85:7
herein [1] - 85:11
hereunto [1] - 85:17
Highway [1] - 31:19
himself [5] - 5:12, 18:14, 55:1, 63:6, 74:13
hip [1] - 67:21
hire [2] - 50:3, 78:13
history [2] - 73:10, 83:4
hold [2] - 16:2, 77:2
home [2] - 25:9, 64:6
Honor [49] - 4:5, 4:6, 4:15, 4:18, 4:19, 6:14, 7:25, 16:16, 17:13, 17:17, 23:5, 23:9, 25:1, 25:4, 28:20, 28:24, 34:3, 34:8, 36:15, 36:22, 39:10, 39:14, 42:13, 44:8, 45:22, 45:25, 46:5, 48:13, 49:2, 64:19, 64:22, 68:21, 69:5, 70:25, 71:25, 72:17, 72:22, 73:9, 75:17, 76:16, 76:18, 80:1, 80:11, 81:3, 82:6, 82:21, 83:1, 83:11, 83:20
HONORABLE [1] - 1:11

4

Case 3:24-cv-01121     Document 111-2     Filed 08/12/26     Page 89 of 94 PageID #: 2564

hoot [1] - 64:14
Hoover [1] - 43:3
hope [2] - 67:23, 75:8
hours [1] - 63:13
house [3] - 52:13, 52:17, 71:4
housed [7] - 9:13, 9:14, 25:22, 29:16, 67:4, 71:10, 79:19
housing [4] - 9:19, 13:4, 38:14, 71:20
Housing [1] - 45:8
hug [4] - 43:6, 56:24, 57:11, 57:25

**I**

ID [2] - 13:21, 16:17
idea [2] - 56:5, 57:2
identification [8] - 24:7, 36:20, 36:23, 38:10, 42:19, 44:10, 44:15, 44:16
identify [5] - 20:14, 21:23, 21:25, 34:18, 35:1
II [1] - 28:9
image [2] - 45:5, 45:6
impact [1] - 7:14
impossible [2] - 5:1, 79:10
IN [1] - 85:17
inappropriate [1] - 60:2
inappropriately [1] - 59:21
incarcerated [1] - 76:18
include [1] - 79:23
Including [1] - 53:15
incoming [4] - 52:15, 60:17, 61:1, 66:6
indeed [1] - 78:10
indicate [2] - 38:6, 75:2
individual [4] - 11:14, 20:4, 21:4, 83:6
individuals [2] - 52:14, 77:19
individuals' [1] - 14:5
information [8] - 2:17, 18:20, 28:6, 29:1, 29:10, 50:22, 76:11, 80:13
infringe [1] - 79:11
injunction [1] - 57:5
inmate [16] - 9:9, 11:19, 12:2, 12:17, 12:20, 13:15, 13:19, 14:23, 15:2, 22:11,

25:18, 29:13, 35:13, 35:15, 56:18, 76:3
inmate's [2] - 13:4, 14:25
inmates [12] - 5:8, 9:7, 10:4, 10:16, 13:3, 20:4, 20:6, 52:19, 52:21, 71:5, 76:10, 81:4
inmates' [3] - 20:6, 35:2, 78:1
innocent [4] - 47:12, 49:23, 50:1, 50:8
insert [1] - 79:17
inside [2] - 58:15, 58:20
inspect [1] - 34:21
instances [3] - 20:14, 20:18, 35:1
intended [1] - 53:4
intent [1] - 56:14
intentionally [1] - 83:17
interest [1] - 85:12
introduce [11] - 16:7, 17:13, 23:6, 25:1, 28:21, 36:3, 39:11, 42:13, 45:22, 46:7, 72:25
introducing [1] - 44:12
investigate [5] - 20:9, 31:24, 32:24, 37:13, 66:19
investigating [1] - 65:18
investigation [1] - 49:19
Investigation [1] - 30:14
Investigations [1] - 33:9
investigator [7] - 62:9, 62:17, 62:20, 62:23, 63:2, 74:20, 78:14
investigators [2] - 33:1, 62:11
involve [3] - 6:17, 6:25, 71:8
involved [2] - 74:21, 83:2
involving [1] - 5:23
isolation [1] - 75:12
issued [4] - 10:3, 58:20, 59:5, 59:12
issues [2] - 53:11, 53:12
issuing [1] - 76:10
item [1] - 58:14
items [2] - 12:5, 53:18

itself [2] - 15:13, 71:8

**J**

jail [82] - 2:23, 4:22, 4:24, 5:1, 6:2, 6:9, 6:11, 8:21, 9:8, 9:10, 9:13, 12:11, 12:16, 13:12, 15:7, 15:15, 17:5, 18:21, 19:10, 22:9, 22:15, 22:17, 22:24, 24:15, 24:16, 24:20, 24:23, 25:18, 28:11, 28:17, 29:14, 31:1, 34:1, 35:3, 35:20, 35:24, 37:23, 38:19, 38:25, 39:6, 43:24, 44:6, 45:10, 49:8, 49:16, 51:23, 52:2, 52:9, 52:10, 52:13, 52:21, 52:24, 53:9, 53:12, 53:24, 58:15, 59:18, 60:16, 64:2, 65:17, 66:23, 67:5, 67:8, 67:16, 71:3, 71:6, 71:14, 73:14, 73:17, 73:20, 75:13, 76:3, 76:6, 76:8, 76:12, 76:25, 77:1, 77:5, 78:7, 81:17, 82:12
Jail [2] - 18:3, 44:1
jail's [1] - 6:2
Jail's [1] - 18:9
January [9] - 26:14, 27:10, 27:19, 29:4, 44:3, 44:22, 46:6, 46:17, 51:10
Jennifer [1] - 1:18
Jessica [1] - 43:4
JMS [1] - 28:7
job [3] - 22:18, 50:10, 55:11
join [1] - 4:9
Jonathan [2] - 26:9, 26:11
Judge [8] - 16:10, 24:9, 27:24, 31:7, 43:12, 69:2, 72:8, 72:11
judgment [1] - 79:21
jumpsuit [1] - 9:5
June [1] - 85:18

**K**

keep [10] - 12:16, 12:19, 19:22, 19:24, 26:5, 45:12, 48:9, 52:10, 52:14, 79:12

keeps [1] - 35:21
Ken [3] - 23:18, 25:14, 66:2
Kenneth [8] - 2:16, 24:18, 25:5, 25:9, 25:17, 25:24, 66:1, 66:3
kept [3] - 24:19, 38:24
Kept [1] - 28:13
key [1] - 50:8
kind [5] - 12:3, 56:7, 57:5, 57:15, 67:21
Kind [1] - 56:24
kiosk [28] - 2:21, 5:8, 10:21, 10:22, 11:9, 11:25, 20:7, 20:16, 20:20, 35:2, 35:13, 35:14, 38:1, 38:2, 38:5, 38:6, 39:18, 40:15, 41:4, 41:7, 41:18, 41:23, 42:4, 42:7, 45:2, 52:20, 53:24
kiosks [5] - 10:2, 34:25, 37:24, 39:24, 40:10
knowledge [9] - 23:22, 25:21, 29:17, 29:24, 30:1, 59:15, 60:23, 60:24, 62:6
knows [1] - 82:12

**L**

ladies [1] - 68:25
last [10] - 4:7, 4:22, 7:2, 8:15, 14:18, 49:3, 70:7, 73:11, 76:21, 77:12
Lastly [1] - 50:8
Law [3] - 1:23, 27:11, 66:2
law [5] - 23:17, 25:13, 26:24, 31:18, 34:17
lawsuits [3] - 60:6, 71:22, 75:24
lawyer [4] - 34:1, 43:2, 54:17, 56:5
lawyers [2] - 32:25, 50:3
LCR [1] - 85:15
leave [1] - 14:2
Lee [1] - 82:7
left [3] - 13:21, 31:22, 40:12
left-hand [1] - 31:22
legal [51] - 5:7, 13:16, 14:8, 14:11, 14:14, 14:19, 14:24, 18:4, 20:23, 20:25, 21:4,

23:17, 25:25, 26:9, 26:15, 27:10, 29:21, 30:3, 30:14, 30:17, 31:2, 31:21, 33:25, 34:24, 51:8, 51:10, 62:14, 62:15, 62:25, 66:1, 66:6, 66:11, 67:9, 72:9, 74:20, 74:24, 77:2, 77:4, 77:6, 78:8, 78:10, 78:16, 80:14, 80:17, 80:19, 80:23, 82:14, 82:15, 83:3
legally [1] - 74:7
legitimate [1] - 19:18
letter [5] - 32:7, 32:12, 32:15, 33:5, 51:10
letters [3] - 12:6, 12:8, 66:17
LIC [1] - 85:22
licensed [2] - 85:6, 85:14
Licensed [1] - 85:15
lieutenant [1] - 32:1
limit [4] - 4:4, 7:15, 7:17, 78:15
limitations [1] - 53:3
limited [3] - 52:18, 53:4, 75:13
limiting [2] - 6:18, 7:15
Lindquist [1] - 66:18
line [6] - 47:4, 47:7, 49:22, 50:5, 64:19, 83:9
Lisa [1] - 15:10
list [17] - 18:19, 18:21, 19:1, 19:8, 23:23, 75:22, 78:7, 78:12, 80:4, 80:21, 80:22, 81:6, 81:8, 81:12, 82:13, 83:3
listed [1] - 77:19
litigating [1] - 55:1
loaded [1] - 36:5
locations [1] - 68:1
lock [1] - 9:24
lockdown [2] - 53:17, 63:13
locked [2] - 9:22, 20:7
log [16] - 2:15, 11:15, 12:13, 13:16, 20:20, 22:8, 22:11, 22:13, 22:15, 22:16, 23:11, 23:12, 25:14, 43:24, 51:7
logging [4] - 13:12, 20:19, 21:14, 37:25
logins [1] - 83:18
Lonnie [1] - 43:3

look [8] - 16:19, 35:12, 36:25, 39:21, 65:24, 69:20, 72:9, 77:7
looking [6] - 7:6, 16:23, 40:2, 40:5, 40:9, 71:18
looks [1] - 9:17
Love [2] - 43:6, 56:24
love [2] - 57:4, 57:25
loves [1] - 57:11

## M

M-CR [1] - 1:5
ma'am [28] - 8:22, 10:15, 22:6, 23:4, 26:7, 26:10, 27:1, 27:4, 29:23, 30:1, 30:6, 30:11, 30:15, 31:14, 31:23, 32:4, 32:18, 33:4, 33:23, 34:19, 42:6, 42:10, 43:8, 49:13, 51:25, 53:6, 66:15, 67:12
machines [1] - 11:11
mail [119] - 2:15, 5:7, 10:5, 11:3, 11:5, 11:18, 12:4, 12:11, 12:15, 13:4, 13:12, 13:16, 13:24, 14:2, 14:5, 14:8, 14:11, 14:14, 14:19, 14:24, 16:2, 17:2, 17:3, 18:3, 18:4, 20:5, 20:10, 20:23, 21:1, 21:4, 21:13, 21:15, 22:8, 22:9, 22:10, 22:14, 22:15, 22:17, 23:2, 23:11, 23:12, 23:16, 23:17, 23:20, 24:3, 25:13, 25:14, 25:25, 26:9, 26:15, 27:10, 29:6, 29:21, 30:3, 30:14, 30:25, 31:2, 31:17, 31:21, 33:25, 34:15, 34:24, 46:25, 51:7, 51:24, 52:15, 52:20, 55:15, 56:19, 60:17, 60:20, 60:22, 61:2, 61:4, 61:6, 61:14, 62:4, 62:14, 62:15, 62:25, 65:18, 65:24, 66:1, 66:6, 66:11, 67:9, 68:1, 75:4, 77:2, 77:3, 77:4, 77:6, 77:21, 77:23, 78:6, 78:8, 78:10, 78:11, 78:13, 78:17, 80:6, 80:7, 80:14, 80:17,

80:19, 80:23, 80:25, 81:1, 81:3, 81:16, 82:14, 82:15, 82:16, 83:3
mails [2] - 54:7, 54:11
mama [1] - 43:6
Mama [3] - 56:23, 57:11, 57:25
management [2] - 22:9, 24:16
manipulate [1] - 83:17
manipulation [1] - 83:4
manner [1] - 53:4
manpower [1] - 21:7
marginal [1] - 55:7
mark [6] - 16:6, 21:19, 44:9, 44:14, 48:24, 48:25
marked [20] - 17:21, 21:20, 23:12, 23:16, 25:5, 29:1, 30:14, 30:17, 31:21, 33:25, 34:11, 36:19, 36:23, 39:18, 42:21, 44:16, 46:17, 48:22, 49:8, 70:10
matter [2] - 8:3, 58:14
Maupin [2] - 85:6, 85:22
Maury [1] - 47:14
McCray [1] - 24:18
mean [5] - 60:13, 61:15, 69:25, 81:21, 81:23
mechanism [1] - 78:17
media [12] - 30:24, 50:3, 51:16, 55:17, 55:21, 55:23, 55:24, 56:1, 79:12, 79:13, 79:14, 80:5
mega [1] - 75:6
member [4] - 56:25, 80:14, 81:10, 81:12
members [6] - 57:3, 57:4, 74:23, 80:8, 80:9, 80:10
memorandum [1] - 68:10
Memorandum [3] - 2:24, 70:6, 70:10
Merry [3] - 42:25, 54:13, 57:4
message [25] - 2:20, 2:22, 10:5, 11:22, 35:11, 35:13, 35:14, 35:16, 38:5, 41:21, 42:5, 42:8, 42:21, 43:24, 44:21, 44:25,

46:6, 46:7, 46:13, 46:17, 46:20, 51:4, 56:19, 70:19
messages [7] - 6:23, 7:14, 47:23, 48:10, 52:15, 64:5, 78:3
messaging [1] - 61:15
methods [1] - 5:12
Metro [1] - 47:14
Michael [7] - 35:17, 36:14, 37:10, 37:14, 37:17, 40:16, 45:1
Middle [3] - 6:6, 45:3, 68:11
might [5] - 21:18, 31:6, 35:5, 47:19, 48:13
Mike [5] - 27:20, 29:5, 46:21, 51:11, 54:22
Minion [1] - 27:11
minute [4] - 21:12, 41:7, 41:13, 42:2
minutes [1] - 42:2
Mishkin [13] - 2:19, 32:16, 33:6, 34:11, 60:18, 61:7, 65:4, 79:2, 79:15, 81:11, 81:18, 83:14
Mishkin's [2] - 32:25, 33:19
mobile [1] - 11:9
modified [1] - 74:8
moment [1] - 26:22
money [2] - 7:7, 50:3
monitoring [3] - 52:19, 53:1, 71:6
month [1] - 24:2
months [1] - 59:23
morning [2] - 9:21
mother [1] - 74:10
motion [2] - 4:6, 4:16
MOTION [1] - 1:10
Motion [3] - 4:2, 4:12, 4:20
motions [1] - 71:13
mounted [1] - 10:22
move [1] - 58:17
moved [1] - 71:14
moving [1] - 26:5
MR [40] - 2:6, 2:9, 2:10, 6:14, 17:17, 23:9, 25:4, 28:24, 34:8, 36:8, 36:11, 39:14, 42:16, 45:25, 46:12, 48:7, 52:3, 54:6, 63:19, 64:18, 68:9, 68:15, 68:17, 68:23, 69:16, 69:22, 70:1, 70:14, 70:21, 72:3, 72:7, 72:15,

73:3, 74:4, 76:14, 80:8, 81:10, 82:25, 83:11, 83:20
MS [3] - 82:6, 82:9, 82:18
multiple [1] - 10:14

## N

name [13] - 8:13, 8:15, 11:15, 13:8, 13:20, 14:25, 19:4, 20:23, 22:12, 29:5, 33:20, 51:11, 85:15
named [1] - 85:11
names [2] - 18:20, 67:25
narrow [1] - 75:11
narrowed [2] - 74:8, 74:22
Nashville [2] - 25:11, 25:15
Nation [1] - 61:20
Neal [2] - 25:11, 25:15
near [1] - 42:4
necessarily [1] - 78:10
necessitated [1] - 75:15
need [15] - 4:7, 12:6, 14:1, 46:1, 46:22, 47:8, 47:10, 47:12, 47:13, 58:22, 67:19, 67:24, 78:12, 78:17, 83:18
needed [2] - 58:21
needs [5] - 52:9, 52:22, 67:22, 74:8, 78:11
never [5] - 15:23, 18:23, 19:7, 60:19, 60:21
new [1] - 43:3
next [12] - 4:14, 12:11, 12:15, 27:9, 29:20, 30:2, 33:8, 39:11, 48:12, 48:14, 51:14, 70:6
night [1] - 9:22
NO [1] - 1:5
nobody's [1] - 40:7
non [3] - 34:1, 34:17, 82:15
non-law [1] - 34:17
non-lawyer [1] - 34:1
non-legal [1] - 82:15
None [1] - 56:16
normal [2] - 24:20, 28:13
North [1] - 31:19
note [2] - 64:14, 64:21

notes [1] - 20:15
nothing [3] - 8:4, 59:24, 64:20
number [18] - 4:24, 13:21, 14:25, 18:5, 33:21, 39:15, 42:25, 46:23, 49:24, 50:17, 50:25, 51:2, 51:3, 52:19, 54:24, 56:22, 85:15
numbered [1] - 39:12
numbers [3] - 5:8, 35:2, 78:2

## O

o'clock [1] - 9:21
object [3] - 52:3, 64:18, 81:7
objecting [1] - 48:15
objection [14] - 16:16, 17:15, 23:8, 28:22, 34:7, 36:6, 36:12, 36:18, 39:13, 42:15, 42:16, 45:24, 52:6, 73:3
objections [1] - 25:3
objects [1] - 69:6
occurred [2] - 65:11, 77:14
October [3] - 23:16, 24:1, 65:25
OF [5] - 1:1, 1:3, 1:9, 85:3, 85:4
offense [1] - 76:17
offenses [1] - 76:8
Office [3] - 8:18, 27:11, 66:2
office [8] - 18:15, 23:17, 25:13, 26:24, 46:22, 54:23, 75:22, 80:4
officer [1] - 59:20
offices [4] - 5:21, 19:14, 31:18, 34:17
Oklahoma [6] - 27:3, 27:13, 29:22, 29:25, 61:15, 61:21
once [2] - 52:25, 74:1
one [37] - 4:10, 7:1, 9:7, 18:5, 26:24, 26:25, 27:20, 27:23, 37:1, 37:2, 37:3, 37:4, 40:5, 40:7, 40:8, 40:13, 43:11, 48:12, 49:1, 54:11, 54:19, 54:21, 54:25, 55:6, 56:17, 56:20, 57:13, 60:5, 60:10, 67:18, 70:18, 71:10,

6

72:24, 73:17, 75:4
**One** [2] - 69:12, 82:25
**ones** [1] - 77:3
**oops** [1] - 37:1
**open** [7] - 11:11, 11:13, 14:9, 14:11, 15:1, 20:25, 21:5
**opening** [1] - 67:8
**Operations** [1] - 8:17
**operations** [1] - 79:18
**opinion** [1] - 69:18
**Opinion** [3] - 2:24, 70:7, 70:10
**opponent** [1] - 46:11
**opportunity** [1] - 12:15
**opposing** [5] - 5:20, 6:4, 6:19, 18:13, 19:16
**orange** [1] - 9:5
**order** [38] - 4:25, 5:3, 5:6, 6:10, 10:7, 10:24, 11:21, 12:5, 14:18, 15:21, 17:1, 17:4, 17:19, 17:25, 21:10, 21:13, 21:15, 26:1, 52:9, 52:22, 53:5, 53:8, 57:17, 57:22, 58:2, 65:7, 67:20, 68:11, 69:9, 69:10, 72:8, 73:18, 73:23, 74:2, 79:18, 79:22, 82:20, 83:15
**Order** [35] - 2:14, 4:3, 4:21, 5:11, 16:4, 17:6, 17:21, 19:24, 24:2, 52:17, 54:8, 63:1, 65:19, 67:15, 67:18, 67:24, 69:8, 69:15, 70:3, 73:12, 73:16, 73:19, 74:5, 74:8, 74:17, 74:22, 75:12, 76:21, 77:16, 77:19, 80:18, 80:20, 83:7, 83:12
**ORDER** [1] - 1:10
**ordered** [2] - 4:22, 77:16
**ordering** [1] - 17:6
**original** [3] - 53:5, 53:8, 75:12
**otherwise** [2] - 47:25, 85:12
**outcome** [1] - 85:12
**outgoing** [6] - 23:16, 29:20, 30:3, 30:13, 30:17, 52:15
**outside** [7] - 4:24, 6:1, 7:6, 18:2, 34:1, 35:3, 55:3

**overbroad** [1] - 7:19
**overhead** [1] - 38:16
**overly** [1] - 6:15
**own** [1] - 76:5

## P

**p.m** [6] - 35:19, 37:9, 40:23, 40:25, 41:22, 41:23
**package** [3] - 32:6, 33:25, 64:13
**packet** [3] - 2:19, 33:14, 34:11
**packets** [1] - 81:16
**page** [8] - 23:15, 26:16, 27:10, 27:19, 30:3, 32:6, 32:20, 33:8
**pages** [1] - 1:13
**paper** [1] - 12:7
**paperwork** [1] - 65:25
**paragraph** [1] - 32:20
**parentheses** [1] - 23:18
**Part** [1] - 59:16
**part** [4] - 22:18, 57:5, 60:5, 60:10
**particular** [2] - 38:6, 79:19
**parties** [2] - 69:13, 85:11
**party** [4] - 46:11, 68:12, 69:12, 79:16
**pass** [10] - 16:4, 16:6, 20:5, 21:18, 24:7, 27:23, 31:6, 35:5, 43:11, 47:19
**passing** [2] - 19:19, 20:15
**password** [1] - 11:15
**past** [5] - 14:15, 25:19, 57:8, 76:6, 80:12
**pattern** [1] - 76:19
**pause** [1] - 42:3
**PD** [2] - 47:14, 47:16
**Pebble** [3] - 29:6, 29:11, 51:12
**pens** [1] - 12:7
**people** [17] - 7:18, 7:20, 7:21, 19:25, 47:11, 47:24, 49:25, 50:7, 55:2, 56:9, 63:9, 63:17, 65:3, 65:12, 75:23, 77:12, 81:6
**people's** [1] - 83:18
**period** [3] - 42:4, 77:22, 80:21
**periodically** [1] - 14:3

**permitted** [1] - 65:9
**person** [7] - 14:7, 22:12, 25:25, 26:25, 40:15, 48:1, 50:8
**personal** [3] - 28:6, 29:10, 50:21
**Personal** [2] - 2:17, 29:1
**personally** [1] - 60:14
**personnel** [1] - 74:20
**persons** [1] - 65:8
**petitions** [1] - 74:3
**phone** [8] - 10:6, 18:3, 42:24, 49:23, 50:24, 51:2, 56:22
**phones** [1] - 10:1
**piece** [2] - 13:12, 61:4
**pieces** [1] - 34:15
**pinned** [1] - 19:20
**place** [2] - 65:20, 85:7
**placed** [1] - 52:12
**places** [1] - 29:22
**Plaintiff** [2] - 1:4, 1:16
**play** [4] - 10:11, 41:15, 42:1, 46:1
**plea** [1] - 69:2
**pleas** [1] - 69:3
**plethora** [1] - 10:6
**PO** [1] - 27:2
**pod** [12] - 2:21, 10:17, 11:25, 14:23, 38:14, 39:18, 52:18, 52:21, 63:9, 63:10, 63:17, 67:11
**pods** [1] - 10:3
**point** [10] - 23:7, 25:18, 29:16, 31:6, 37:24, 38:21, 39:10, 41:4, 54:10, 76:1
**Point** [2] - 66:7, 66:12
**Pong** [3] - 23:18, 25:14, 66:2
**population** [11] - 9:15, 9:17, 9:18, 9:25, 10:11, 10:13, 10:17, 12:3, 19:22, 21:9, 67:4
**position** [2] - 8:16, 71:12
**possible** [2] - 61:11, 82:13
**potential** [1] - 75:3
**pre** [1] - 71:12
**pre-trial** [1] - 71:12
**preemptively** [2] - 81:25, 82:1
**present** [4] - 5:2, 5:15, 6:17, 6:24
**presented** [2] - 57:19, 72:13

**presenting** [1] - 57:14
**pretending** [1] - 81:17
**pretty** [1] - 74:5
**prevent** [3] - 73:21, 81:20, 81:21
**previous** [3] - 52:22, 80:18, 80:20
**prime** [1] - 57:15
**printout** [1] - 35:12
**prison** [1] - 59:17
**private** [9] - 33:1, 62:8, 62:10, 62:14, 62:17, 62:20, 62:22, 63:2, 74:20
**privilege** [2] - 57:8, 57:12
**privileges** [2] - 9:19, 57:9
**pro** [3] - 5:18, 18:14, 74:13
**probable** [1] - 32:24
**problem** [5] - 14:14, 67:17, 77:1, 79:4, 83:4
**procedurally** [1] - 16:9
**proceedings** [4] - 85:7, 85:8, 85:9, 85:9
**PROCEEDINGS** [2] - 1:9, 83:23
**professionals** [1] - 74:24
**prohibit** [1] - 5:4
**prohibitions** [1] - 79:24
**proof** [3] - 5:2, 6:12, 50:2
**proper** [1] - 53:1
**property** [2] - 58:5, 60:25
**proposing** [1] - 63:8
**prosecute** [1] - 6:22
**prosecuting** [1] - 33:3
**protected** [3] - 6:17, 74:7, 74:16
**prove** [5] - 56:6, 56:8, 56:9, 75:6, 75:9
**provide** [3] - 76:1, 78:7, 78:11
**provided** [9] - 15:22, 16:21, 22:1, 24:11, 27:25, 31:9, 35:7, 63:4, 75:22
**proving** [1] - 44:11
**public** [2] - 19:4, 19:7
**publish** [1] - 44:17
**punished** [5] - 58:25, 59:2, 59:8, 59:10, 59:13
**punishment** [1] -

75:15
**purchase** [1] - 10:10
**purposes** [3] - 36:20, 38:10, 44:11
**pursue** [3] - 5:23, 55:3, 75:19
**purview** [1] - 79:20
**pushing** [2] - 83:5, 83:9
**put** [10] - 6:12, 12:10, 12:25, 13:20, 14:24, 49:5, 55:18, 63:9, 71:20, 75:12
**putting** [1] - 49:6

## Q

**qualify** [1] - 62:25
**Questioned** [1] - 33:10
**questioning** [1] - 64:19
**questions** [6] - 68:2, 69:17, 70:2, 70:13, 70:24, 72:16

## R

**raise** [1] - 50:3
**re** [1] - 68:6
**re-cross** [1] - 68:6
**reach** [2] - 50:2, 51:16
**reaching** [1] - 81:14
**read** [4] - 36:25, 54:17, 69:18, 70:2
**reads** [1] - 73:20
**really** [2] - 50:7, 67:18
**reason** [4] - 13:11, 14:4, 59:23, 65:1
**reasonable** [1] - 79:10
**receive** [2] - 61:1, 78:12
**received** [8] - 42:18, 43:1, 46:24, 54:16, 61:11, 64:13, 65:19, 65:24
**receives** [1] - 35:13
**recess** [3] - 82:23, 83:19, 83:21
**recipients** [3] - 78:7, 78:10, 78:12
**recognize** [15] - 22:3, 22:5, 24:13, 28:2, 31:11, 31:12, 35:9, 38:10, 40:14, 41:7, 43:20, 45:6, 48:21, 49:11, 49:14
**record** [10] - 22:23, 23:2, 24:8, 24:19, 24:22, 28:16, 35:20,

7

35:23, 44:6, 62:6
**records** [7] - 22:24, 37:24, 50:10, 50:11, 51:18, 55:11
**RECROSS** [4] - 2:8, 2:10, 68:8, 72:6
**Reddit** [1] - 55:18
**redirect** [1] - 63:21
**REDIRECT** [2] - 2:7, 63:24
**referring** [1] - 57:13
**reflect** [2] - 73:18, 73:24
**regard** [1] - 17:2
**regarding** [4] - 2:19, 34:11, 63:2, 78:15
**regret** [1] - 82:3
**regular** [8] - 12:3, 13:16, 13:23, 14:2, 22:16, 38:25, 45:13, 76:2
**related** [2] - 75:20, 85:11
**relating** [1] - 15:18
**release** [1] - 75:20
**relevance** [1] - 36:13
**relevant** [1] - 36:16
**relief** [1] - 6:15
**religious** [2] - 52:25, 53:20
**remaining** [1] - 4:9
**remarks** [1] - 60:2
**remember** [3] - 26:2, 26:3, 61:12
**report** [25] - 2:15, 2:16, 6:25, 23:11, 23:12, 24:15, 24:17, 25:5, 32:13, 32:16, 32:23, 33:6, 33:15, 43:2, 43:5, 47:1, 47:10, 47:13, 47:15, 50:2, 51:8, 51:16, 54:16, 76:12, 76:16
**reported** [1] - 85:7
**reporter** [2] - 8:14, 85:6
**Reporter** [1] - 85:15
**REPORTER'S** [1] - 85:1
**reporting** [1] - 76:13
**Reporting** [1] - 85:14
**represent** [1] - 74:15
**represented** [1] - 30:10
**representing** [3] - 63:5, 75:23, 78:21
**represents** [2] - 18:14, 74:13
**request** [4] - 4:3, 59:6, 59:11, 59:12

**requests** [2] - 10:24, 11:2
**require** [2] - 17:4, 73:21
**required** [2] - 13:20, 14:2
**requirement** [2] - 73:19, 73:20
**resigned** [1] - 59:23
**respect** [1] - 81:22
**responding** [2] - 46:21, 54:22
**responsibility** [1] - 71:15
**restraining** [1] - 7:12
**restrict** [5] - 4:23, 6:1, 18:1, 30:23, 76:4
**restricted** [2] - 24:4, 65:2
**restricting** [1] - 5:11
**restriction** [1] - 13:1
**restrictions** [2] - 17:3, 53:8
**retain** [1] - 7:8
**retaliated** [1] - 68:19
**retaliating** [1] - 72:10
**retaliation** [2] - 71:19, 72:9
**retaliatory** [1] - 71:18
**return** [1] - 13:22
**review** [1] - 77:5
**reviewed** [2] - 39:3, 45:15
**right-hand** [2] - 39:22, 40:13
**rights** [6] - 6:20, 67:20, 74:16, 76:4, 77:9, 79:11
**ROBERT** [1] - 1:6
**Robert** [16] - 1:22, 4:1, 8:24, 12:22, 12:23, 12:25, 15:1, 17:2, 20:10, 31:16, 33:12, 37:21, 41:11, 41:17, 41:20, 41:25
**Rogers** [3] - 26:15, 26:19, 26:20
**room** [1] - 63:15
**Ross** [3] - 27:20, 29:5, 51:11
**run** [1] - 71:3
**running** [1] - 22:13

**S**

**saw** [2] - 37:4, 78:2
**scoot** [1] - 47:6
**screen** [7] - 13:4, 13:5, 36:4, 38:11, 39:22, 40:1, 45:6

**se** [3] - 5:18, 18:15, 74:14
**seal** [1] - 14:25
**sealed** [2] - 14:9, 14:10
**search** [2] - 13:24, 14:1
**second** [6] - 32:19, 32:20, 47:4, 54:21, 54:25, 56:17
**secure** [1] - 58:15
**Security** [1] - 33:21
**see** [22] - 7:12, 9:2, 15:1, 21:1, 26:25, 27:20, 30:4, 31:24, 36:13, 36:19, 37:13, 39:22, 41:9, 43:4, 45:6, 49:22, 66:19, 68:14, 68:22, 68:24, 72:3, 77:8
**seeking** [3] - 6:25, 55:2, 76:4
**seem** [1] - 83:12
**segregation** [1] - 53:23
**send** [11] - 12:9, 12:14, 13:3, 15:17, 16:1, 34:1, 34:16, 78:3, 78:8, 80:19, 80:25
**sending** [13] - 7:13, 13:2, 13:6, 13:7, 15:24, 20:23, 22:14, 25:25, 47:23, 67:3, 73:4, 80:17, 81:3
**sends** [5] - 12:17, 12:20, 27:7, 34:22, 35:13
**sent** [26] - 23:21, 25:13, 26:9, 26:14, 29:5, 35:15, 35:18, 37:6, 37:8, 37:10, 37:14, 37:18, 38:7, 40:23, 41:22, 42:5, 42:8, 42:9, 44:22, 46:3, 49:19, 50:16, 51:7, 53:20, 64:5, 80:13
**separately** [1] - 52:18
**service** [3] - 53:21, 58:7, 58:23
**services** [1] - 52:25
**set** [6] - 4:8, 40:9, 47:20, 77:4, 77:5, 85:7
**several** [3] - 6:20, 33:15
**sexual** [1] - 59:17
**sexually** [1] - 60:2
**shall** [2] - 18:1, 78:7

**sheet** [7] - 2:18, 25:8, 25:10, 28:7, 29:1, 29:10, 29:21
**Sheriff** [1] - 79:21
**sheriff** [1] - 71:3
**Sheriff's** [8] - 8:18, 15:12, 15:16, 17:5, 17:6, 17:7, 17:25, 21:14
**sheriff's** [5] - 71:9, 77:16, 79:18, 79:23, 79:25
**shooting** [1] - 67:21
**short** [1] - 82:23
**show** [6] - 7:5, 45:5, 57:21, 66:19, 75:2, 77:4
**showed** [1] - 37:25
**showers** [1] - 10:1
**showing** [1] - 57:20
**shut** [1] - 81:24
**side** [3] - 39:22, 40:13, 71:24
**significantly** [1] - 82:3
**sister** [9] - 27:17, 57:10, 57:25, 70:16, 74:10, 78:20, 78:23, 79:1, 83:1
**sit** [1] - 61:5
**sitting** [2] - 9:4, 41:9
**situation** [4] - 9:23, 71:21, 79:3, 79:10
**smaller** [3] - 52:18, 63:9, 71:20
**smuggling** [1] - 53:17
**snail** [1] - 12:4
**Social** [1] - 33:21
**soliciting** [1] - 7:7
**solution** [1] - 6:10
**someone** [7] - 20:15, 20:19, 20:23, 29:5, 80:12, 81:8, 83:8
**Sorry** [1] - 30:5
**sorry** [5] - 15:21, 26:18, 41:14, 49:13, 75:18
**sounds** [3] - 54:25, 55:4, 56:24
**spark** [1] - 66:16
**specific** [9] - 7:19, 11:19, 13:8, 13:19, 14:6, 14:7, 67:25, 76:24
**specifically** [10] - 5:3, 11:16, 15:22, 17:24, 18:11, 29:18, 32:10, 48:5, 73:21, 79:24
**speculation** [1] - 52:4
**spell** [1] - 8:14
**spirit** [1] - 5:6

**Springs** [3] - 29:6, 29:11, 51:12
**staff** [1] - 34:21
**Staff** [1] - 34:23
**stamped** [1] - 40:19
**stamps** [1] - 66:25
**standing** [1] - 40:15
**stands** [2] - 19:21, 52:10
**start** [2] - 12:21, 54:11
**started** [3] - 13:2, 13:3, 13:12
**STATE** [2] - 1:3, 85:3
**state** [3] - 8:13, 32:21, 58:6
**State** [20] - 1:17, 4:6, 4:19, 5:2, 5:10, 8:1, 69:5, 72:1, 73:16, 73:23, 73:25, 74:4, 75:21, 75:25, 76:1, 76:3, 76:23, 78:21, 81:19, 85:6
**State's** [7] - 4:2, 5:16, 5:25, 73:9, 80:2, 81:13, 81:15
**statement** [1] - 46:11
**stealing** [1] - 53:17
**step** [1] - 72:19
**stepping** [2] - 38:1
**still** [16] - 4:7, 5:7, 14:9, 14:20, 15:24, 19:10, 20:11, 39:22, 40:20, 42:25, 50:19, 52:24, 53:24, 66:10, 78:6
**Still** [3] - 41:5, 41:8, 54:15
**stipulate** [1] - 46:2
**stipulated** [1] - 49:6
**stipulating** [1] - 46:8
**stop** [8] - 20:22, 31:2, 52:2, 54:12, 67:5, 67:23, 69:16, 73:15
**stopped** [2] - 31:1, 34:16
**stuff** [17] - 10:9, 11:2, 11:23, 12:7, 12:9, 13:2, 13:3, 13:7, 15:24, 52:15, 55:1, 55:17, 55:19, 55:24, 67:22, 67:23
**submit** [4] - 10:23, 11:1, 11:2, 18:19
**submitted** [1] - 19:7
**subpoenas** [1] - 76:11
**suing** [5] - 5:17, 6:5, 15:5, 15:7, 15:9
**suit** [2] - 61:19, 69:14
**suits** [2] - 15:18, 19:12
**supervise** [1] - 20:9

8

suppose [1] - 56:19
supposed [7] - 13:1, 18:19, 58:9, 58:13, 58:17, 58:18, 77:18
supposing [1] - 55:8
Supreme [1] - 6:7
suspect [1] - 77:3
suspects [1] - 81:19
suspend [1] - 18:1
suspension [1] - 17:2
sustain [1] - 52:5
swear [1] - 8:2
sworn [1] - 8:9
system [12] - 5:7, 14:14, 14:19, 18:9, 20:10, 22:9, 24:16, 28:7, 51:24, 52:11, 53:25, 83:17
systems [2] - 6:2, 20:7

## T

table [1] - 41:10
tablets [3] - 10:2, 11:8
tax [2] - 33:19, 33:20
TBI [5] - 30:4, 30:10, 32:11, 33:2, 47:16
teaching [2] - 50:10, 55:11
tech [1] - 11:21
tedious [1] - 21:6
TENNESSEE [3] - 1:1, 1:3, 85:3
Tennessee [15] - 1:17, 1:19, 1:24, 6:6, 6:7, 25:11, 25:16, 29:6, 29:12, 30:13, 31:20, 51:12, 68:12, 85:6, 85:14
terminated [2] - 59:21, 59:22
termination [1] - 59:25
terms [1] - 71:3
test [1] - 79:1
testified [2] - 8:9, 56:17
testify [1] - 64:1
testifying [1] - 64:4
testimony [1] - 8:3
text [35] - 2:20, 2:22, 2:23, 10:4, 11:3, 11:18, 11:22, 18:3, 35:11, 37:15, 37:18, 38:4, 40:6, 40:20, 40:23, 41:21, 42:5, 42:8, 42:13, 42:21, 42:24, 43:12, 46:5, 46:17, 48:10, 48:14, 49:8, 49:16, 49:21,

50:14, 51:15, 56:19, 64:4, 77:21, 80:25
Text [1] - 11:5
texting [2] - 51:3, 51:15
THE [77] - 1:1, 1:9, 1:11, 4:1, 4:11, 4:16, 6:13, 7:22, 16:11, 16:13, 16:19, 17:15, 17:18, 21:21, 21:24, 23:8, 23:10, 24:10, 25:3, 28:22, 31:8, 34:6, 34:9, 36:6, 36:17, 39:13, 39:15, 42:15, 42:17, 43:16, 44:14, 44:18, 45:24, 46:10, 47:21, 48:18, 48:22, 48:25, 49:4, 49:7, 52:5, 54:3, 63:20, 64:24, 68:6, 68:16, 68:25, 69:20, 69:24, 70:5, 70:12, 70:23, 71:1, 71:16, 71:23, 72:16, 72:18, 72:20, 73:2, 73:6, 77:10, 78:22, 78:25, 79:6, 79:9, 80:6, 80:9, 80:24, 81:5, 81:20, 82:5, 82:8, 82:11, 82:19, 82:22, 83:15, 83:21
there'll [1] - 80:15
thereof [1] - 85:8
THESE [1] - 83:23
they've [2] - 47:22, 74:25
third [2] - 55:6, 79:16
this__14 [1] - 85:18
THOMPSON [3] - 82:6, 82:9, 82:18
Thompson [1] - 82:7
three [8] - 25:19, 29:20, 42:2, 57:15, 63:11, 63:17, 75:13, 76:6
thumb [2] - 22:4, 31:12
titled [1] - 33:9
TO [1] - 1:10
today [10] - 5:2, 5:10, 6:17, 6:25, 65:6, 65:15, 73:9, 74:5, 75:16, 83:6
together [1] - 25:22
took [3] - 58:6, 58:8, 58:10
top [3] - 13:21, 26:21, 61:8
touch [1] - 61:3
track [3] - 12:16,

12:19, 52:14
TRANSCRIPT [1] - 1:9
transcript [1] - 85:9
transferred [1] - 71:7
treat [1] - 82:15
trial [8] - 4:8, 4:10, 4:13, 4:14, 71:12, 75:6, 77:4
tried [6] - 31:17, 33:25, 46:25, 50:12, 51:19, 83:17
tries [1] - 34:16
true [1] - 85:9
truly [1] - 67:24
truth [3] - 8:4
try [4] - 20:5, 56:8, 75:6, 75:9
trying [11] - 15:15, 15:17, 19:11, 20:9, 56:8, 57:6, 65:20, 67:21, 67:23, 71:19, 78:13
turned [1] - 69:2
Turner [2] - 26:9, 26:11
Two [1] - 63:11
two [7] - 4:8, 4:13, 40:3, 56:17, 63:17, 73:18, 82:13
two-week [2] - 4:8, 4:13
type [1] - 20:15

## U

unable [2] - 52:2, 73:15
under [10] - 11:17, 20:23, 22:21, 29:5, 36:18, 62:11, 62:16, 63:1, 77:15
Under [1] - 51:11
Unit [1] - 45:8
unit [3] - 63:15, 63:16, 71:20
units [1] - 10:23
unless [3] - 9:23, 67:18, 71:7
unrelated [1] - 6:3
unrepresented [1] - 7:2
unsealed [1] - 14:2
unsent [2] - 2:19, 34:11
unusual [1] - 75:15
up [19] - 12:10, 16:2, 16:4, 19:20, 21:5, 21:18, 24:7, 27:23, 31:6, 35:6, 38:1, 40:9, 43:11, 45:6,

47:19, 48:9, 55:20, 71:2, 71:24
updated [1] - 67:25
usage [1] - 52:20
user [1] - 11:14
utilize [1] - 10:4
utilized [1] - 78:1
utilizing [3] - 13:2, 20:6, 38:2

## V

Van [10] - 35:17, 37:10, 37:14, 37:17, 40:16, 41:5, 41:8, 41:10, 41:16, 45:1
VEILE [1] - 1:11
verify [4] - 15:25, 19:17, 78:9, 78:18
version [1] - 11:9
via [2] - 18:3, 35:14
victim [20] - 5:9, 7:13, 7:15, 32:16, 48:1, 48:6, 52:11, 56:2, 56:3, 60:18, 61:2, 64:12, 64:17, 65:19, 66:17, 73:13, 75:2, 76:7, 76:9, 77:13
victim's [3] - 13:9, 64:6, 66:7
video [27] - 2:21, 10:5, 11:1, 11:18, 11:22, 18:4, 38:15, 38:18, 38:24, 39:3, 39:5, 39:11, 39:18, 39:21, 40:18, 43:12, 43:14, 45:9, 45:16, 45:18, 46:1, 49:3, 49:5, 72:24, 77:22, 78:2
violate [2] - 54:8, 67:20
violated [3] - 65:7, 78:1, 83:7
violating [4] - 6:20, 57:20, 57:21, 77:8
visits [2] - 11:1
vodka [1] - 64:6
volume [1] - 1:13

## W

waived [1] - 78:3
walking [1] - 38:2
wall [3] - 10:22, 39:23
wall-mounted [1] - 10:22
walls [2] - 10:1, 10:2
wants [3] - 55:23, 58:4, 79:13
watch [1] - 41:3

ways [3] - 5:5, 5:9, 21:9
week [5] - 4:8, 4:13, 53:1, 66:6, 66:10
WERE [1] - 83:23
WHEREOF [1] - 85:17
WHEREUPON [1] - 83:23
white [1] - 68:2
whole [3] - 8:4, 54:17, 59:23
Williamson [6] - 6:8, 8:18, 17:25, 18:3, 18:9, 44:1
WILLIAMSON [2] - 1:1, 85:4
willing [1] - 33:2
wish [1] - 74:11
witness [8] - 7:24, 16:21, 22:1, 24:11, 27:25, 31:9, 35:7, 72:21
WITNESS [5] - 49:7, 68:16, 71:16, 72:20, 85:17
witnesses [1] - 72:2
Woodruff [1] - 69:3
world [3] - 7:17, 7:18, 7:20
worst [1] - 47:8
write [2] - 12:8, 14:24
writing [1] - 77:24
written [3] - 32:9, 80:25, 81:3

## Y

Y-O-U-K-E-R [1] - 8:15
year [5] - 4:14, 4:22, 43:3, 70:8, 76:22
years [4] - 25:19, 73:13, 75:14, 76:6
Youker [6] - 8:1, 8:15, 22:3, 42:3, 44:21, 65:17
YOUKER [3] - 2:3, 8:6, 8:8

## Z

Zebley [7] - 2:16, 24:18, 25:5, 25:17, 25:24, 66:2, 66:3
Zebley's [1] - 25:9

## _

_ [2] - 41:2, 41:3

9