## IN THE FOURTH CIRCUIT COURT FOR DAVIDSON COUNTY, TENNESSEE
## AT NASHVILLE

EMILY A. GORDON,                    )
                                    )
      Petitioner/Mother,           )
                                    )
v.                                  )          No. 20D-162
                                    )
ROBERT COLE GORDON,                 )
                                    )
      Respondent/Father.           )

### AFFIDAVIT OF BREANNA SUESS

I, Breanna Suess, being duly sworn, makes oath as follows:

1. I am over the age of 18 years and am competent to testify as to the contents in this Affidavit.

2. I am the former girlfriend of Robert Cole Gordon.

3. I have been present during Mr. Gordon's parenting time with the child, and have seen him consume alcohol both 12 hours prior to his parenting time beginning, as well as during his parenting time when the child was present.

4. When Mr. Gordon testified in this matter on April 20, 2020, he testified in my apartment and I was present.

5. I heard Mr. Gordon repeatedly lie to the Court, and he also boasted about it afterwards. I was appalled, and this was one of the reasons why I ended our relationship.

6. I do not believe that the child is safe when he is with Mr. Gordon. He would drink and drive to my residence on multiple occasions, boasting about not getting a DWI.

7. I believe that Mr. Gordon is an alcoholic, based on the massive amounts of alcohol I saw him consume at all times of the day and night. This is another reason why I ended my relationship with Mr. Gordon.

8. Mr. Gordon told me many times that he had talked to various judges, specifically Judge Laurie Jewett about this case. Mr. Gordon also told me that Judge Laurie Jewett and his attorney, Kamie Hefner, had spoken to his appointed judge (Judge Philip Smith) on his behalf, so this case could be handled in Mr. Gordon's favor.

9. Mr. Gordon asked me to tell his attorney, Kamie Hefner, that Emily Gordon had assaulted me in the lobby of Opryland when she dropped of the child. Mr. Gordon also asked me to lie to the Court about this incident if I was called to testify. Ms. Gordon did not assault me, or threaten me, or anything of that nature.

10. Mr. Gordon initially told me that Emily Gordon got a room key to the hotel and charged alcohol to his account, which was why the bill was so high, but then asked me to bring some of my friends to Court so that they could testify that they were present when we had the child at Opryland. We did not have any friends or anyone else with us. It was me, Mr. Gordon, and the child the entire weekend.

11. I personally observed Mr. Gordon consume alcohol throughout the weekend when we stayed with the child at Opryland.

12. Mr. Gordon also told me that he had backdated text messages between him and Ms. Gordon from 2017 before the divorce was even filed and told me he was doing this because they couldn't be unseen by the Court.

13. Mr. Gordon threatened to show this Court video of me drunk and vomiting, as well as inform the Court that I have had alcohol related arrests. He said these

things after he realized that I had contacted Ms. Gordon to express my concerns. I have not had any alcohol related arrests. There was an incident where I drank wine that had gone bad, and it caused me to be physically ill. Other than that, I have not been drunk and vomiting while with Mr. Gordon.

14. After the hearing on April 20, Mr. Gordon had parenting time the following weekend. I decided to stay in the relationship with Mr. Gordon until Sunday when the child would be returned to Ms. Gordon to ensure the child's safety. I had also been the one to buy everything needed for the child including food and toys. I hid beer in my apartment when Mr. Gordon left to get the child to keep him from consuming alcohol while with the child. After the child's return to Ms. Gordon, I realized that a bottle of Vodka had been opened and ¾ of it was missing. Mr. Gordon returned to my apartment that night drunk and I asked him to gather his belongings and leave. A police report was filed that evening as he refused to leave the complex premise.

15. During this weekend, I did have wine and alcohol missing but didn't see Mr. Gordon consume alcohol while he had ██████ I could hear him blowing on the soberlink device in the bathroom.

16. Mr. Gordon claimed to have taken previous emails of successfully passing the test, modifying the dates and then send screenshots to the Mother of the email, asking her if she was receiving the results on her side. It is my belief that he did this the morning of February 29, 2020 in order to get ██████

17. Mr. Gordon even had me blow on the Soberlink device so he could get a 0.0 BAC reading to send to Ms. Gordon, so he could start his parenting time. He stated that

it wasn't working and I needed to help to test the accuracy of the device. He told me the video wasn't working so my photo would not be taken. He had me first blow into his other breathalyzer to ensure I had a level of 0.0 BAC to pass. Mr. Gordon told me that the Soberlink policy wasn't enforceable in court and that he didn't have to comply.

18. Mr. Gordon also told me that he uses a secondary breathalyzer device before blowing on the Soberlink device to make sure he is able to blow a 0.0 BAC.

19. Mr. Gordon also told Ms. Suess that he has secured a second job as a consultant with IBM, with plans to hide that money through his LLC in order to not pay child support. He claimed that if either employer (Riskconnect & IBM) knew that he was working for both companies, he would have conflict of interest and most likely let go from both. Ms. Suess received his laptop from IBM at her residence, addressed to Mr. Gordon. Additionally, Ms. Suess has witnessed him working for both companies at the same time, during the last few weeks of their relationship.

20. Mr. Gordon appears to have no end to the lengths he is willing to go to be deceptive. He is frightening.

21. I declare under penalty of perjury that the foregoing statements are true and accurate.

FURTHER AFFIANT SAITH NOT.

THIS THE ___21st___ DAY OF ___May___, 2020.

_____
BREANNA SUESS

COPY

STATE OF TENNESSEE )
COUNTY OF Davidson )

Personally appeared before me, the undersigned Notary Public, BREANNA SUESS, personally known to me (or who proved on the basis of satisfactory evidence), and who upon first being duly sworn, made oath that the statements contained in the foregoing are true and correct to the best of her knowledge, information, and belief.

This 22nd day of May 2020.

Rebecca L. McFadden
Notary Public

My Commission Expires:
22.

STATE
OF
TENNESSEE
NOTARY
PUBLIC

My Comm. Expires
July 5, 2021