ELECTRONICALLY FILED
2024 Mar 15 3:33 PM - 23CV-52319
Williamson County, Clerk & Master

IN THE CHANCERY COURT FOR WILLIAMSON COUNTY, TENNESSEE
AT FRANKLIN

| | | |
|---|---|---|
| ERIN MISHKIN, | ) | |
| | ) | |
| Plaintiff/Wife | ) | |
| | ) | |
| v. | ) | DOCKET NO. 23CV-52319 |
| | ) | |
| ROBERT COLE GORDON, | ) | |
| | ) | |
| Defendant/Husband | ) | |

## MEMORANDUM AND ORDER

This matter came to be heard on the *Motion to Determine if Marriage is Void* filed by Erin Mishkin ("Ms. Mishkin"). In this motion, Ms. Mishkin argues her marriage to Robert Gordon ("Mr. Gordon) is void because the parties did not comply with Tennessee requirements for marriage ceremonies. In the alternative, Ms. Mishkin argues the marriage is voidable because Mr. Gordon forged the signatures of both the witness to the marriage and the officiant.

## FINDINGS OF FACT

Ms. Mishkin has known Mr. Gordon for over two years. On September 17, 2021, the parties went to the Williamson County Clerk's office to obtain a marriage license. The individual at the Clerk's office instructed the parties that they needed to have a

marriage ceremony within thirty days. However, the parties never had a marriage ceremony. The very next day, Mr. Gordon began to exhibit aggressive, violent, and threatening behavior. Thus, Ms. Mishkin reconsidered marrying Mr. Gordon.

Ms. Mishkin testified she and Mr. Gordon did not carry on as a married couple because he began to get arrested and both parties went to rehabilitation. According to Ms. Mishkin, Mr. Gordon moved into her house, even though she told him not to, by slowly moving his belongings into her house. Ms. Mishkin learned Mr. Gordon considered himself to be living in her house because his mother had sent a house warming gift, which ended in the parties arguing. The Court finds Ms. Mishkin credible on these issues.

During his direct examination, Mr. Gordon testified the clerk at the Williamson County Clerk's office performed the marriage ceremony right there at the counter. Mr. Gordon never mentioned any other ceremony during his direct examination. Then, on cross-examination, Mr. Gordon claimed the parties had a marriage ceremony by a minister at Ms. Mishkin's house in the backyard and claimed Ms. Mishkin had found the minister, a man who was not called Eric Patton. Mr. Gordon could not remember how old the minister was and could not describe him. Mr. Gordon claimed he allowed Ms. Mishkin to choose between this backyard ceremony and a vacation. But, he conceded this backyard ceremony was not very expensive because there were no flowers, food, or cake and it was just the parties

2

and the officiant and was substantially less expensive than a vacation would have been. Mr. Gordon had no explanation for why he never mentioned this ceremony during direct examination and had no explanation for why there would be a need for this second ceremony if the parties had the first ceremony at the clerk's office.

On rebuttal, Ms. Mishkin denied there was ever a ceremony in her backyard. Ms. Mishkin also reiterated that the encounter at the clerk's office was merely the parties obtaining their marriage license and testified there was not a ceremony at the clerk's office. The Court finds Ms. Mishkin credible and Mr. Gordon utterly not credible.

Mr. Gordon testified the parties "lived a normal married life" immediately after September 17, 2021 and claims Ms. Mishkin asked him to move in. The Court finds Mr. Gordon not credible on this issue.

Mr. Gordon testified the parties had a joint bank account after September 17, 2021 and put each other on their credit card accounts. However, Mr. Gordon presented no admissible documentation to prove these claims. After the hearing, as permitted by the Court, Mr. Gordon submitted a copy of a check with his name and Ms. Mishkin's name on it. This document has not been authenticated. Moreover, having a joint bank account does not make someone legally married to the co-owner of the account.

3

Mr. Gordon also testified the parties filed a joint tax return and claimed Ms. Mishkin's daughter, Emma, on their joint tax return. During the hearing, Mr. Gordon failed to present any documentation to support his claim. After the hearing, Mr. Gordon submitted documents purporting to be a joint tax return for the parties. Ms. Mishkin objected to the document and the Court hereby sustains the objection.

Mr. Gordon testified he has a life insurance policy with IBM and Ms. Mishkin is the beneficiary of the policy. Mr. Gordon claims he wrote Erin Mishkin, Wife, when applying for the policy. However, Mr. Gordon provided no documentation to prove this claim. The Court finds Mr. Gordon not credible on this issue.

Mr. Gordon testified that, after September 17, 2021, the parties talked about health insurance and he added Ms. Mishkin to his medical, vision, and dental insurance. Mr. Gordon claimed he had to show the marriage documents to get Ms. Mishkin added. However, Mr. Gordon failed to show any documentation to prove this claim. The Court finds Mr. Gordon not credible on this issue.

The Court allowed Mr. Gordon to submit late filed exhibits to the trial given he was incarcerated for months prior to and at the time of the hearing. However, Mr. Gordon has failed to submit any admissible documents to support his position.

Mr. Gordon claimed he paid the mortgage on Ms. Mishkin's house. She denies that claim. The Court finds Ms. Mishkin credible on this issue and finds Mr. Gordon not credible.

Mr. Gordon testified he picked up Ms. Mishkin's children from school. However, Ms. Mishkin testified these children were home schooled at that time and Mr. Gordon has never picked her children up from school. The Court finds Ms. Mishkin credible and Mr. Gordon not credible.

Mr. Gordon admitted he has been under bond conditions to not contact Ms. Mishkin for over one year but further admits he has contacted Ms. Mishkin.

As the parties began to argue and their relationship become more volatile, Mr. Gordon began to tell Ms. Mishkin he could get her house from her because they were legally married. Ms. Mishkin did not believe they were legally married because they had not had the ceremony as instructed by the employee at the Williamson County Clerk's office. So, Ms. Mishkin and her sister went to the Williamson County Clerk's office and requested to see the marriage certificate (Exhibit 2). Ms. Mishkin saw that the certificate had a person's name on it as preacher who she did not recognize and that Mr. Gordon's father's name was on the certificate as a witness. However, Mr. Gordon's father had been dead for three years prior to the date he had allegedly signed as a witness to the marriage.

5

Ms. Mishkin testified she has no idea how the document was filed with the clerk's office. The Court finds Ms. Mishkin credible on this issue.

Pastor Eric Patton has been a minister since 2019. In about 2020, Mr. Patton performed a marriage for Mr. Gordon to a woman who is not Erin Mishkin. Mr. Patton has never performed a marriage for Erin Mishkin and Cole Gordon.

Mr. Patton testified that the signature on the marriage certificate offered as Exhibit 2 is not his signature. Moreover, the address listed for Mr. Patton on the marriage certificate was not Mr. Patton's address in September 2021; it is Mr. Patton's old address where he lived when he performed the marriage ceremony for Mr. Gordon and the other woman.

On direct examination, Mr. Gordon testified he and Ms. Mishkin went to a fertility clinic in May 2023 because she wanted to have a child. Mr. Gordon further claims they introduced themselves as Mr. and Mrs. Gordon and said they were trying to have a child. On cross-examination, when it was brought to Mr. Gordon's attention that he was under an order of protection in May 2023 and could not be around Ms. Mishkin, Mr. Gordon changed his testimony and stated the parties did a Zoom meeting with the fertility clinic and the parties were not in the same room. The Court finds Mr. Gordon not credible on this issue.

6

Exhibit 2, the marriage certificate, was filed on September 27, 2021; yet, Mr. Gordon claims a marriage ceremony was performed at the Williamson County Clerk's office on September 17, 2021. Moreover, on line 15(c) there is a signature purporting to be Eric Patton's signature. Mr. Patton has denied this is his signature and the Court finds Mr. Patton credible. On line 16(a) of the marriage certificate, Bob Gordon's signature appears and he was dead at the time the marriage certificate was allegedly signed by him. Mr. Gordon claimed he could not explain how Eric Patton's name and his deceased father's name got on Exhibit 2. The Court finds Mr. Gordon utterly not credible and finds Mr. Gordon falsified this document and forged the signatures of Mr. Patton and Bob Gordon.

Mr. Gordon claimed that, while he has been in custody, he has received cards and letters from "Erica Lane" and the return address is 525 Sneed Road, West from Holy Trinity Lutheran church. Mr. Gordon testified he does not know "Erica Lane." Mr. Gordon testified there is an "F&S" inside hearts on the cards and Ms. Mishkin always wrote that to him. Mr. Gordon claims these cards and letters are written in Ms. Mishkin's hand writing.

## LEGAL STANDARD

"All regular ministers, preachers, pastors, priests, rabbis and other spiritual leaders of every religious belief, more than eighteen (18) years of age, having the care of souls . . . may solemnize the rite

7

of matrimony." Tennessee Code Annotated, Section 36-3-301(a)(1). "No formula need be observed in such solemnization, except that the parties shall respectively declare in the presence of the minister or officer, that they accept each other as husband and/or wife." Tennessee Code Annotated, Section 36-3-302(a) (emphasis added). "The clerk shall, on each license, place the following form of certificate, to be signed by the person solemnizing the marriage: 'I solemnize the rite of matrimony between the above (or with) named parties on the day of . . . .'" Tennessee Code Annotated, Section 36-3-304.

If these requirements are not met, a marriage may be deemed voidable. Void marriages are those which are prohibited by statute and are not eligible for ratification, whereas voidable marriages may be ratified by remedying the error affecting the validity of the marriage. *See In re Estate of Meek*, 2014 WL 2553469, at *5 (Tenn. Ct. App. June 4, 2014) (citing *Coulter v. Hendricks*, 918 S.W.2d 424, 427 (Tenn. Ct. App. 1995)). In such a case, the provision of false information on a marriage license is insufficient to render the marriage void. *Id.*

In Tennessee, a marriage is void from its start if either party was already lawfully married; the parties are within a prohibited degree of kinship; or the marriage was prohibited by law. *Brown v. Brown*, 29 S.W.3d 491, 494-95 (Tenn. Ct. App. 2000). In order to have a valid, recognized marriage under Tennessee law, there must be a marriage license. *Becker v. Judd*, 646 F. Supp. 2d 923, 925 (M.D. Tenn. 2009) (applying Tennessee law). The license must be presented to a minister or authorized officer as a condition precedent to solemnization. *Id.*

8

A marriage is voidable in Tennessee if either party is insane; the complainant was under duress; the complainant was under age; the consent to marry was obtained by force, fraud, or was given by mistake; defendant was impotent; or any other reasons the marriage was not binding on the complainant. *Brown*, 29 S.W.3d at 495.

## CONCLUSIONS OF LAW

In this instance, the parties' marriage is voidable under Tennessee law, and an annulment should be granted in Ms. Mishkin's favor. Additionally, the parties' marriage is void for failure to comply with the single statutory requirement for solemnization of marriages in Tennessee.

### I. The Parties' Marriage is Voidable Due to Fraud

In this case, there is substantial evidence the parties' marriage was created by Defendant's fraudulent conduct. Accordingly, this marriage is voidable. *Brown v. Brown*, 29 S.W.3d 491, 495 (Tenn. Ct. App. 2000). Pursuant to Tennessee Code Annotated, Section 36-3-302(a), parties to a marriage must affirm their intent to be married in front of a minister or other authorized officer. Upon performing this ceremony, the officiant must sign the marriage license. Tennessee Code Annotated, Section 36-3-303(a).

First, and most compelling, Mr. Patton testified he did not perform a marriage ceremony for the parties. Additionally, the Court has found Mr. Gordon not credible in his claims that someone at the clerk's office performed the marriage ceremony and later a minister performed a marriage ceremony in Ms. Mishkin's backyard. Thus, the Court finds a marriage ceremony was never performed.

9

Moreover, Tennessee law requires a witness to the marriage to sign the marriage license alongside the officiant. The alleged witness to the parties' alleged marriage ceremony died four years before the marriage allegedly took place. The signature of Defendant's father, Bob Gordon, appears on the parties' marriage license in the place designated for a witness to the marriage. *See Mot. Default Judgment* Ex. A. However, Bob Gordon died on April 10, 2017. *See Mot. Default Judgment* Ex. B (Bob Gordon's Obituary). It would be impossible for Bob Gordon to have signed the parties' marriage license on September 17, 2021. This is another instance of fraud being used to unite the parties in matrimony, thereby rendering their marriage voidable. *Brown*, 29 S.W.3d at 495.

These errors in the validity of the parties' marriage, though serious, could easily be remedied. For instance, the parties could ratify their marriage by performing the required ceremony before an authorized officer, and having the officiant and a living witness sign the marriage license. *Id. See also In re Estate of Meek*, 2014 WL 2553469, at *5 (Tenn. Ct. App. June 4, 2014) (finding no merit in the contention a marriage was void *ab initio* due to the provision of false information on the parties' marriage license). However, Ms. Mishkin clearly does not want to take such action. Consequently, an annulment should be granted to Ms. Mishkin due to Mr. Gordon's fraudulent conduct.

## II.   The Parties' Marriage is Void Due to the Absence of a Ceremony

In addition to the parties' marriage being voidable, it is also void under Tennessee law because the parties did not comply with the statutory requirements for a valid marriage. "No formula need be observed in such solemnization, except that the parties shall respectively

10

declare, in the presence of the minister or officer, that they accept each other as husband and/or wife." Tennessee Code Annotated, Section 36-3-302(a). Though parties to a marriage are required to also execute a valid marriage license, strict compliance with the statutes governing the license is not required. *See* Tennessee Code Annotated, Section 36-3-103(c)(1); Tennessee Code Annotated, Section 36-3-104(a); Tennessee Code Annotated, Section 36-3-303; Tennessee Code Annotated, Section 36-3-306; *Aghili v. Saadatnejadi*, 958 S.W.2d 784, 788 (Tenn. Ct. App. 1997).

Accordingly, the only <u>requirement</u> for a marriage to be considered valid under Tennessee law is the solemnization before a minister or authorized officer. *See* Tenn. Op. Atty. Gen. No. 91-71, 1990 WL 513052, at *2 (Tenn. A.G., July 16, 1990) (recognizing the mandatory nature of Tennessee Code Annotated, Section 36-3-302(a) and concluding the failure to strictly comply with this requirement renders a marriage void *ab initio*). Ample case law supports this opinion. *See Smith v. North Memphis Savings Bank*, 89 S.W. 392 (Tenn. 1905) (recognizing this requirement as mandatory to render common law marriages valid).

In this case, the Court has found that a marriage ceremony for the parties was never performed. If no evidence is presented which indicates the parties complied with Tennessee Code Annotated, Section 36-3-302(a), the Court may find their marriage to be void *ab initio*. Solemnization before a minister or authorized agent is the only true requirement for a valid marriage in Tennessee, and noncompliance renders the marriage void. Tenn. Op. Atty. Gen. No 90-71, 1990 WL 513052, at *2. Based on the facts of this case and the applicable law, the Court finds the parties' marriage is void *ab initio*.

11

## CONCLUSION

The parties' marriage is void *ab initio* for lack of a ceremony performed by a minister or authorized agent to solemnize their union. Tenn. Code Ann. § 36-3-302(a); Tenn. Op. Atty. Gen. No. 91-71, 1990 WL 513052, at *2 (Tenn. A.G., July 16, 1990). Accordingly, the Court hereby declares the parties' marriage annulled and treats it as if it never existed.

Finally, in addition to the parties' marriage being void for lack of a ceremony, the marriage is also voidable due to Mr. Gordon's fraudulent execution of the marriage license. The parties' marriage license was not signed by an officiant who performed the ceremony as required by Tennessee Code Annotated, Section 36-3-303. Furthermore, the witness to the ceremony was deceased for over four years before the parties were allegedly married. Accordingly, the Court hereby declares the parties' marriage voidable and grants the annulment requested by Ms. Mishkin.

**IT IS SO ORDERED.**

**ENTERED** this the 15th day of March, 2024.

_____
DEANNA BELL JOHNSON
CHANCELLOR

12

## CLERK'S CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the foregoing Memorandum and Order was mailed, postage prepaid, and/or emailed, and/or faxed, to:

Jonathan Turner, Esq.
1284 West Main Street, Suite 104
Franklin, TN   37064
jonathant.turner13@gmail.com

Cherie Cash-Kristinus, Esq.
307 North Walnut Street
Murfreesboro, TN   37130
ccash@cashfamilylaw.com

This the _15_ day of March, 2024.

_Debra Stevens, De_

**CLERK**

13