**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **ROBERT C. GORDON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:24:CV-1121** |
| | ) | |
| **WILLIAMSON COUNTY SHERIFF'S OFFICE, CHAD YOUKER, ASHLEY LINDQUIST, f/n/u APER, CHRIS GRAY, JEFF HUGHES, and LISA CARSON,** | ) | **Judge Waverly D. Crenshaw, Jr.**<br>**Magistrate Judge Luke A. Evans**<br><br>**JURY DEMAND** |
| | ) | |
| **Defendants.** | ) | |

---

**COUNTY DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR SECOND MOTION FOR JUDGMENT ON THE PLEADINGS**

---

Pursuant to LR 7.01(2), Captain Chad Youker, Lieutenant Ashley Lindquist, Sergeant Chris Gray, and Sheriff Jeff Hughes (collectively, the "Williamson County Defendants" or the "County Defendants"), and submit to the Court this Memorandum of Law in Support of their Motion for Judgment on the Pleadings as to the First Amended Complaint (DE 77.)

## I. Procedural Background

Plaintiff filed his Complaint on September 17, 2024. (DE 1.) This Court conducted an initial screening of the Complaint and issued a Memorandum Opinion and Order filed on August 19, 2025, ordering Plaintiff to file a request for issuance of summons to the Clerks. (DE 10.) On January 2, 2026, this Honorable Court issued a Memorandum Order denying Plaintiff's Motion to Appoint Counsel and granted an extension of time for Plaintiff to effectuate process on defendants Aper, Gray, Hughes, Lindquist, and Youker. (DE 25.)

Defendant Aper has not been served. Youker, Lindquist, Gray, and Hughes were served on February 2, 2026. (DE 37.) On February 23, 2026, the County Defendants filed an Answer. (DE

40.) On March 16, 2026, the County Defendants filed a First Amended Answer (DE 49), followed by a Motion for Judgment on the Pleadings on March 26, 2026. (DE 55.) Plaintiff moved to amend his complaint, and the Court granted the motion, subject to certain limitations. (DE 64.) The Court noted that the County Defendants' Motion for Judgment on the Pleadings was rendered moot by the allowance of the Amended Complaint. (DE 64). Plaintiff filed the Amended Complaint on May 13, 2026 (DE 77), and the County Defendants filed their Answer on May 27, 2026. (DE 93.) The County Defendants filed an Amended Answer to the First Amended Complaint and exhibits supporting their Amended Answer on June 17, 2026. (DE 105; DE 105-1 – 105-10.) The County Defendants now submit this Motion for Judgment on the Pleadings.

## II. Standard of Review

R. 12(c), F.R.C.P., permits a party to move for a judgment on the pleadings after the pleadings are closed. A motion for judgment on the pleadings under R. 12(c), F.R.C.P., is governed by the same standards as a motion to dismiss under R. 12(b)(6), F.R.C.P.[1] "Under that standard, 'all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment as a matter of law.'"[2] In ruling on a Motion for Judgment on the Pleadings, the Court may consider "documents attached to the pleadings," documents that are "referred to in the pleadings and are integral to the claims," and "matters of public record" without converting a motion for judgment on the pleadings to a motion for summary judgment.[3] "And '[w]hen an exhibit contradicts the

---

[1] Brown v. Louisville-Jefferson Cnty. Metro Gov't, 135 F.4th 1022, 1030 (6th Cir. 2025) (citing Tucker v. Middleburg-Legacy Place, LLC, 539 F.3d 545, 549 (6th Cir. 2008)).
[2] Brown, 135 F.4th at 1030 (citing Tucker, quoting JPMorgan Chase Bank, N.A. v. Winget, 510 F.3d 577, 581 (6th Cir. 2007)).
[3] Brown, at 1030 (citing Com. Money Ctr, Inc. v. Ill. Union Isc. Co., 508 F.3d 327, 335-36 (6th Cir. 2007).

complaint, the exhibit trumps the allegations.'"[4] Here, the County Defendants may permissibly rely upon the grievances, incident reports, and court documents that are filed herewith, because they are public records, because they are attached to the pleadings, and/or because they are integral to and referenced in the Amended Complaint. The Court may consider these materials without converting the motion into a motion for summary judgment.

## III. Statement of Facts and Procedural History

### a. The Initial Complaint and the Court's Screening Order.

In his original Complaint, Plaintiff alleged that a Williamson County Sheriff's Office (hereinafter "WCSO") deputy told him to "go fondle himself" while he was showering. (DE 1, Compl., Page ID# 20.) Plaintiff further alleged that his grievance reporting the conduct as sexual abuse was deemed unsubstantiated and that he was subsequently placed in what he describes as involuntary segregation for more than 100 days in retaliation for reporting the alleged abuse. (DE 1, Compl., Page ID# 20-22.) On August 19, 2025, this Court filed a Memorandum Opinion and Order, permitting the following claims to move forward against the County Defendants in their individual capacities only: (1) sexual harassment as a condition of pretrial detention amounting to punishment in violation of the Fourteenth Amendment against all of the County Defendants; and (2) First Amendment retaliation against only Captain Youker. (DE 10, Screening Order, Page ID# 108, 110.)

In finding that Plaintiff's sexual harassment claim should be allowed to proceed, the Court noted as follows:

> Construing the Complaint liberally and drawing all reasonable inferences from its allegations in Plaintiff's favor, the Court finds that it plausibly claims that Plaintiff was naked in the showers with no one else in close proximity; that Deputy Aper told him to masturbate for Aper's sexual gratification and twice repeated this

---

[4] Brown, at 1030 (citing Kaplan v. Univ. of Louisville, 10 F.4th 569, 576 (6th Cir. 2021) (internal quotation marks and citation omitted).

> demand; and that Plaintiff complied[5] while Aper gazed at Plaintiff, licked his lips, and made motions to his genitals, in apparent enjoyment of Plaintiff's actions. (Doc. No. 1 at 20). This took place on May 12, 2024, and for more than 30 days—until June 15, 2024—Aper "flaunted" his abuse of Plaintiff on May 12 every day. (Id. at 21). Aper admitted his behavior when he resigned. For purposes of initial review, these allegations are sufficient to establish the objective and subjective components of Plaintiff's Fourteenth Amendment sexual harassment claim, both as to Deputy Aper and as to the Defendant officials (Youker, Lindquist, Aper, Gray, Hughes, and Carson) who are alleged to have been involved in the cover-up of Aper's abuse while allowing Aper to continue working in close proximity to Plaintiff. This claim will proceed for further development.

(DE 10, Screening Order, Page ID# 8.)

When allowing Plaintiff to amend the complaint, the Court provided, among other limitations, that any retaliation claims based on Plaintiff's housing placement must be brought against Youker only and that no claims may be brought under the PREA. (DE 64, Apr. 29 Memorandum Order, Page ID# 929.)

**b. The Amended Complaint.**

The Amended Complaint alleges that on May 12, 2024, a WCSO deputy repeatedly told Plaintiff to "fondle yourself" as the deputy gazed at Plaintiff licking his lips and making motions to his genitals. (DE 77, Amend. Compl., Page ID# 1206.) Unlike the initial Complaint, the Amended Complaint contains an allegation that Plaintiff actually masturbated at the deputy's request.[6] (DE 77, Amend. Compl., Page ID# 1206.) Plaintiff further alleges that on that same day, May 12, 2024, he reported the incident to WCSO staff. (DE 77, Amend. Compl., Page ID# 1206.)

---

[5] While the Court noted that "construing the Complaint liberally and drawing all reasonable inferences," the Complaint could be read to suggest that Plaintiff complied with the deputy's instruction that he masturbate, the original Complaint does not allege that Plaintiff actually masturbated in response to the deputy's comment. Rather, it simply states that the comment was made and repeated, and that Plaintiff filed a grievance as a result. (DE 1, Compl., Page ID# 20-21.)

[6] Only after this Court's Screening Order discussed the distinction between mere verbal harassment and sexual harassment that is severe and ongoing, specifically discussing a case in which an inmate masturbated at a guard's direction, did Plaintiff then add the allegation that he actually performed an act at the deputy's direction.

Next, Plaintiff claims that on May 14, 2024, Sergeant Gray and Lieutenant Lindquist told Plaintiff that his complaint about the deputy was found "not PREA related" and unsubstantiated. (DE 77, Amend. Compl., Page ID# 1206.) The Amended Complaint states that Plaintiff "exhausted his internal remedies" by filing a grievance on May 14, 2024 and an appeal to Captain Youker on May 15, 2024, but that Youker found the alleged conduct did not constitute sexual harassment. (DE 77, Amend. Compl., Page ID# 1206.)

Moreover, the Amended Complaint alleges that Plaintiff was placed in "the hole" on May 23, 2024, and that Captain Youker stated that he placed Plaintiff in protective custody due to his statement that he was in fear for his safety. (DE 77, Amend. Compl., Page ID# 1206-1207.) During his time in protective custody, Plaintiff avers that Deputy Aper continued to work on the same floor as Plaintiff until "sometime in June."[7] (DE 77, Amend. Compl., Page ID# 1206.) Plaintiff claims he returned to general population on August 20, 2024. (DE 77, Amend. Compl., Page ID# 1207.)

The Amended Complaint also includes entirely new allegations that were not raised in the original Complaint.[8] First, Plaintiff alleges that Captain Youker seized and banned all Bibles on January 18, 2025.[9] (DE 77, Amend. Compl., Page ID# 1207.) Plaintiff also alleges that Captain Youker provided testimony in cases pending against Plaintiff in state court involving his criminal

[7] Plaintiff makes no allegation that Deputy Aper further harassed or otherwise mistreated him during this time.

[8] The County Defendants acknowledge that they filed a response to the Amended Complaint, but did request additional screening in their Answer and Amended Answer. Nevertheless, pursuant to 28 U.S.C.S. § 1915(e)(2), the Court may dismiss a prisoner complaint that is frivolous, malicious, or fails to state a claim upon which relief may be granted *at any time*. (emphasis added). Out of an abundance of caution, the County Defendants address Plaintiff's newly asserted claims below, but respectfully request in the alternative that the Court screen the Amended Complaint and determine whether those claims should proceed.

[9] Plaintiff has a separate lawsuit addressing this issue. See Gordon v. Youker, M.D. Tenn. No. 3:26-cv-00046.

matters. (DE 77, Amend. Compl., Page ID# 1207-1208.) Finally, Plaintiff alleges that Captain Youker again placed Plaintiff in segregated housing and interfered with Plaintiff's legal mail. (DE 77, Amend. Compl., Page ID# 1208.)

**c. Relevant Facts Reflected in the Record**

As noted above, the court typically cannot consider materials outside the pleadings at this stage without converting the motion to a motion for summary judgment. "However, a court may consider 'exhibits attached [to the complaint], public records, items appearing in the record of the case and exhibits attached to [a] defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein,' without converting the motion to one for summary judgment.[10] Accordingly, the County Defendants attach Plaintiff's relevant grievances and requests as those records are both public records central to his claims. The County Defendants also attach relevant jail incident reports and state court orders entered in August 2025 and April 2026, which are public records that the Court may properly consider.[11] The grievances, state court orders, and incident reports referenced herein are also attached as exhibits to the County Defendants' Amended Answer to the First Amended Complaint (DE 105-1 – 105-10).

Plaintiff claims that Deputy Aper, who has not been served with process, repeatedly told him "go fondle yourself" while he was showering. On May 12, 2024, Plaintiff handed Corporal Johnson a handwritten grievance containing four different accusations of abuse by WCSO staff, one of which is the subject of this lawsuit. (Affidavit of Chad Youker ("Youker Aff."), ¶ 4, Exhibit A.)[12] In Plaintiff's handwritten grievance, he specifically claimed, "Deputy Aper yells at Mr.

---

[10] McIntyre v. Halen, No. 3:13-01365, 2014 U.S. Dist. LEXIS 100161, at *6 (M.D. Tenn. 2014) (quoting Bassett v. National Collegiate Athletic Ass'n, 528 F.3d 426, 430 (6th Cir. 2008)).

[11] These documents were also attached to the County Defendant's Amended Answer. (DE 49, 105.)

[12] Youker's Affidavit is included solely for the purpose of authenticating the records that may be appropriately presented to the Court, as described above. It is not intended for the purpose of

Gordon while in shower 'to fondle himself' on 3 different occasions. The entire pod heard Deputy Aper. This is sexual harassment by an authority figure/voyeurism." (Youker Aff., ¶ 4, Ex. A.) He then stated, "I am in fear for my safety." (Youker Aff., ¶ 4, Ex. A.) In response to the Plaintiff's written grievance, Lieutenant Lindquist investigated and reported that Sergeant Lockhart spoke with Deputy Aper, who admitted making a comment to Plaintiff, but advised Sergeant Lockhart that the language he used was, "why don't you stop touching yourself?" (Youker Aff., ¶ 5, Ex. B.) Deputy Aper told Sergeant Lockhart that he and Plaintiff were making remarks to each other in a "joking" manner, Plaintiff then made a remark that Sergeant Lockhart described as disrespectful, and Deputy Aper said to Plaintiff, "why don't you stop touching yourself?" (Youker Aff., ¶ 5, Ex. B.) Sergeant Lockhart interviewed Deputy Aper on May 12, 2024. (Youker Aff., ¶ 5, Ex. B.)

On May 13, 2024, Lieutenant Lindquist and Staff Sergeant Gray spoke with the Plaintiff in his cell. (Youker Aff., ¶ 5, Ex. B.) Plaintiff was disrespectful to them when they arrived, but eventually the pair were able to communicate to Plaintiff that they were there to discuss Plaintiff's May 12, 2024, allegations. (Youker Aff., ¶ 5, Ex. B.) The report states:

> Inmate Gordon claimed that [the deputy] loitered around the shower on the top tier in Pod 309 and made a sexual remark towards him. Inmate Gordon claimed that [the deputy] stated, "Fondle yourself" and loitered around the shower he was in for approximately 60 to 90 seconds. Inmate Gordon alleged that he thought he misheard and requested [the deputy] to repeat himself, Inmate Gordon claimed that [the deputy] repeated himself.

(Youker Aff., ¶ 5, Ex. B.)

On May 15, 2024, Lieutenant Lindquist and Staff Sergeant Gray spoke with Deputy Aper. (Youker Aff., ¶ 5, Ex. B.), who again admitted that he made a comment to Plaintiff, which he

providing substantive testimony, which would be outside the scope of what is permissible at this stage of the proceedings.

described as, “why don’t you stop touching yourself.” (Youker Aff., ¶ 5, Ex. B.) Deputy Aper was disciplined for failing to turn on his body camera and for making the comment, but did not resign, nor was he forced to resign, due to this incident. (Youker Aff., ¶ 5, Ex. B.) Overhead video of the incident was reviewed by Lieutenant Lindquist, who determined that Plaintiff’s claim that Deputy Aper loitered around the shower for 60-90 seconds was false. (Youker Aff., ¶ 5, Ex. B.)

On June 10, 2024, Plaintiff was placed in *protective custody* because of his incessant complaints that a substantial percentage of the individuals – inmates and jail personnel – that he engaged with during his time at the jail were jeopardizing his safety. (Youker Aff., ¶ 6, Ex. C.) Plaintiff filed grievances related to being placed in protective custody, asserting that being placed in protective custody after making dozens of complaints that he was in physical danger was an affront to Plaintiff and retaliation for his handwritten May 12, 2024, grievance and the subsequent investigation (Youker Aff., ¶ 6, Ex. C.). Plaintiff was informed that protective custody reviews were conducted quarterly. (Youker Aff., ¶ 6, Ex. C.) When the next round of quarterly reviews arrived, Plaintiff agreed to be released from protective custody, and was so released. (Youker Aff., ¶ 7, Ex. D.)

During a Williamson County Criminal Circuit Court hearing on August 20, 2025, the State asked the Court for an order prohibiting Plaintiff from contacting anyone outside the Jail except for the Public Defender’s office either by phone, text, email or written mail.[13] Youker was called to testify by the state. (State v. Gordon, Williamson County Criminal Court, Order 8.22.2025.) Following the hearing, the Court entered an “Order for Jail to Restrict Defendant’s Ability to Text/Email/Call/Video Call/Mail/Legal Mail” wherein the Court found that Plaintiff abused the

[13] The full transcript of the hearing was filed as an exhibit to the County Defendants’ Motion for Sanctions and their Amended Answer to the First Amended Complaint. (DE 111-1; DE 105-10.)

Jail's communication system and ordered that the Sheriff's Office restrict his ability to communicate outside the Jail via text, email, phone call, video call, mail, or legal mail with certain exceptions. Id. The Order specified that Plaintiff was solely permitted to correspond with his criminal attorney, civil attorney, opposing counsel in civil cases in which he represents himself pro se, and County, State, and Federal Court Clerk's Offices. Id.

Plaintiff continued to misuse the communication systems in the Jail and the State filed a motion to enforce the Court's August 22, 2025, Order.[14] Youker was again called by the State to testify. (State v. Gordon, Williamson County Criminal Court, 4.23.2026 Order Regarding Defendant's Communications.) The Court found that Plaintiff used the kiosk log-in information of other inmates to circumvent the Court's prior order restricting his electronic communications and that his housing in general population with many other inmates made it difficult for the Jail to monitor and prevent such activity. Id. The Court ordered that Plaintiff be prohibited from using all forms of electronic communication pending further orders of the Court. Id. Per the Court's order, he is now permitted to communicate with approved persons outside of the Jail by physical mail only. Id. Following the hearing, Plaintiff was moved to a smaller general population pod with fewer inmates. (Youker Aff., ¶ 8, Ex. E.) On April 23, 2026, Plaintiff filed a grievance alleging Youker placed him in solitary confinement and interfered with his mail out of retaliation. (Youker Aff., ¶ 8, Ex. E.) WCSO staff responded that Plaintiff was not being held in solitary confinement, but was instead housed with other inmates. (Youker Aff., ¶ 8, Ex. E.) WCSO staff further explained that Plaintiff's housing placement was not retaliatory and that his mail would continue to be handled in accordance with the Court's order. (Youker Aff., ¶ 8, Ex. E.)

## IV. Legal Argument

[14] The full transcript of the hearing was filed as an exhibit to the Motion for Sanctions and their Amended Answer to the First Amended Complaint. (DE 111-2; DE 105-9.)

The Claims against each of the County Defendants should be dismissed where the Defendants are entitled to qualified immunity because their conduct did not violate any clearly established law, because Plaintiff's constitutional rights were not violated, and because, for all Defendants other than Youker, Plaintiff offers no individualized allegations that would give rise to liability.

**a. Each of the County Defendants is Entitled to Qualified Immunity**

The County Defendants assert the defense of qualified immunity. The doctrine of qualified immunity protects government officials from liability from civil damages when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.[15] Although the defendant bears the burden of pleading this defense, plaintiff must show that the defendant is not entitled to qualified immunity.[16]

Determinations of qualified immunity require the court to answer two questions: (1) whether the officer violated a constitutional right, and (2) whether that right was clearly established in light of the specific context of the case.[17] "The judges of the district court and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."[18] Neither prong is met in this case, as further discussed below.

**b. The Pleadings Demonstrate that Plaintiff Could Not be Entitled to Relief Pursuant to a Fourteenth Amendment Violation for Pretrial Detention Amounting to Punishment.**

**i. The alleged harassment did not rise to the level of a cognizable claim, even taking Plaintiff's allegations as true.**

---

[15] Pearson v. Callahan, 555 U.S. 223, 231 (2009).
[16] Hayden v. Green, 640 F.3d 150, 153 (6th Cir. 2011).
[17] Id.
[18] Pearson, 555 U.S. at 236.

Pretrial detainees have a right to be free from sexual harassment that amounts to pretrial punishment.[19] Here, as the Court has already correctly recognized, Plaintiff's "claim based on sexual harassment did not involve physical contact." (DE 10, Screening Order Page ID# 107.) In order to succeed in a claim of pretrial detention amounting to punishment by sexual harassment not involving physical contact, the Court must determine (1) whether the conduct at issue posed a substantial risk of serious harm; (2) whether the defendants who perpetrated or responded to the misconduct acted deliberately as opposed to accidentally; and (3) whether the defendant acted in the face of an unjustifiable risk of harm that is either known or so obvious that it should be known.[20] If alleged harassment is merely verbal, the speech must be ongoing and/or coercive in order to pose a substantial risk of harm to Plaintiff.[21]

In Jackson v. Madery,[22] the Court noted that isolated, brief, and non-severe instances of sexual harassment are not sufficient to demonstrate a substantial risk of harm, finding that an incident in which a guard rubbed and grabbed an inmate's buttocks in a degrading and humiliating manner during a "shakedown" did not rise to the level of cruel and unusual punishment under the 8th Amendment (which, as applied to a pretrial detainee, would implicate the "amounts to punishment" line of cases under the Fourteenth Amendment), because it was "isolated, brief and not severe." Id. By contrast, in Rafferty,[23] the Sixth Circuit held that an inmate's claim would

---

[19] See Phillips v. Roane Cnty., Tenn., 534 F.3d 531, 539 (6th Cir. 2008) (finding that "the Due Process Clause of the Fourteenth Amendment is the proper starting point" for evaluating a pretrial detainee's claim of cruel and unusual punishment) (citing City of Revere v. Mass. Gen. Hosp., 463 U.S. 239, 244 (1983) ("[T]he due process rights of a [pre-trial detainee] are at least as great as the Eighth Amendment protections available to a convicted prisoner.")).

[20] Montiel v. Johnson, No. 1:25-CV-122, 2025 WL 807756, at *8 (W.D. Mich. Mar. 14, 2025) (quoting Farmer v. Brennan, 511 U.S. 825, 834 (1994); Brawner v. Scott Cnty., 14 F.4th 585, 596 (6th Cir. 2021)).

[21] Rafferty v. Trumbull Cnty., Ohio, 915 F.3d 1087, 1095 (6th Cir. 2019).

[22] Jackson v. Madery, 158 F. App'x 656, 662 (6th Cir. 2005).

[23] Rafferty, 915 F.3d at 1095.

survive summary judgment where the plaintiff complied with a guard's demands that she expose her breasts and masturbate while he watched on multiple occasions, specifically noting that the activity was not "isolated" or "brief," but rather that the same guard demanded she engage in sexual conduct on up to six occasions. Importantly, in that case it was the guard who committed the harassment, not a supervisor who merely investigated it after the fact, who was found not entitled to qualified immunity.

Here, the circumstances are significantly less severe than Rafferty, and less severe than even Madery, where the Court found no viable claim to exist. And, perhaps more importantly, Hughes, Youker, Lindquist and Gray are **not** alleged to have committed any act of sexual harassment – the claim against them is that they failed to investigate – or covered up – the claims of harassment by Aper. Unfortunately for Plaintiff, however, the factual allegations, when paired with the public records that this Court may consider at this stage, do not support such a conclusion.

**ii. There are no allegations of personal involvement in unconstitutional conduct that would give rise to a claim against Hughes, Youker, Lindquist or Gray for sexual harassment under the Fourteenth Amendment.**

The Amended Complaint does not allege participation in any act of sexual harassment by anyone other than Deputy Aper, who has not been served. Further, the Amended Complaint is completely lacking in factual allegations that would support any complicity or "cover-up" of sexual harassment by any of the County Defendants.

Personal involvement in alleged unconstitutional conduct is a threshold requirement for individual liability under §1983.[24] "In order to state a claim for monetary damages under § 1983, Plaintiffs must allege some specific, personal wrongdoing on the part of each individual

[24] Kolley v. Adult Protective Servs., 786 F. Supp. 2d 1277, 1294 (E.D. Mich. 2011).

defendant."[25] "Mere affiliation with a person who is violating § 1983 will not bring the affiliated individual within the scope of personal liability. A § 1983 claim will thus fail against parties who did not participate in the deprivations alleged."[26] To survive dismissal, a complaint must set forth allegations that a defendant "personally participated in, or otherwise authorized, approved, or knowingly acquiesced in" the alleged unlawful conduct.[27]

**1. There are no allegations of personal involvement by Sheriff Hughes.**

The Amended Complaint merely alleges that Plaintiff wrote Sheriff Hughes a letter to inform him of "the situation with Aper" on May 30, 2024 (DE 77, Page ID 1207) and makes the conclusory statement that "There is no possible way Jeff Hughes is unaware of his employees actions." (DE 77, Page ID 1210.) This falls far short of "specific, personal wrongdoing" on the part of Sheriff Hughes, and the claims against him must be dismissed.

**2. The allegation that Lindquist and Gray found the PREA allegations of Plaintiff to be unfounded, and that Youker upheld that finding on appeal, does not state a claim for a Fourteenth Amendment violation.**

The sole basis for Plaintiff's claims against Lindquist[28] and Gray appears to be that they investigated his PREA complaint and found it to be "not PREA related" and "unsubstantiated." (DE 77, Page ID 1206.) Likewise, the sole basis for Plaintiff's claim against Youker related to sexual harassment appears to be that he upheld that finding on appeal via the administrative process. (DE 77, Page ID 1206.) The County Defendants' conclusions in this regard fall far short

---

[25] Kolley, 786 F. Supp. 2d at 1294 (quoting Moorer v. Booker, No. 09-13725, 2010 U.S. Dist. LEXIS 129647, at * (E.D. Mich. 2010)).

[26] Mason v. City of Warren Police Dept., No. 10-CV-14182, 2011 U.S. Dist. LEXIS 121809, at *9 (E.D. Mich. Oct. 21, 2011)

[27] Greene v. Barber, 310 F.3d 889, 899 (6th Cir. 2002).

[28] Plaintiff also includes the conclusory allegation that Lindquist "conspired with Youker to steal legal mail" but makes no factual allegation as to any action taken by Lindquist in this regard. This conclusory allegation, lacking any factual predicate, is clearly insufficient to state a claim.

of a Fourteenth Amendment violation, especially when one takes into account that Gordon's report to these individuals was only that the Deputy made, and repeated, an inappropriate comment. At no time did Gordon report the claim he now makes – that he complied with the "order" of the deputy that he masturbate in his presence. (Youker Aff., ¶ 6, Ex. C.)

The grievances filed and the subsequent investigation revealed that the deputy either asked Plaintiff, "Why don't you stop touching yourself?" or, at worst, said to Plaintiff, "fondle yourself." Even taking Plaintiff's version of events as true and characterizing the event as "harassment", the incident reports show that the statement made by Deputy Aper to Plaintiff was precisely the sort of isolated, brief, and non-severe instance contemplated by Madery, which does not amount to the substantial risk of serious harm necessary to state a plausible claim for pretrial detention amounting to punishment under the Fourteenth Amendment.

The information available to Lindquist and Gray in their investigation did not suggest that Plaintiff masturbated *at all* during the incident in question, much less at the deputy's request. Conspicuously absent from *any* of Plaintiff's grievances and the investigation into this matter is a single, solitary, direct allegation from Plaintiff that he masturbated at the request of the deputy. Plaintiff's handwritten, May 12, 2024, grievance does not make this allegation. (Youker Aff., ¶ 4, Ex. A.) The other grievances filed by Plaintiff and the investigations into those grievances did not include the allegation that Plaintiff masturbated in the shower on May 12, 2024. (Youker Aff., ¶ 5, 6, Ex. B, C.) Plaintiff made no such claim to Lieutenant Lindquist, Sergeant Lockhart, or Staff Sergeant Gray during their in-person conversations. "When an exhibit contradicts the complaint, the exhibit trumps the allegations."[29] Thus, the Court should look to Plaintiff's grievances and the

[29] Brown, at 1030 (citing Kaplan v. Univ. of Louisville, 10 F.4th 569, 576 (6th Cir. 2021) (internal quotation marks and citation omitted).

incident report, which alleges only that the deputy made an inappropriate comment. The instant matter clearly did not rise beyond an isolated comment, and therefore it was entirely appropriate for Lindquist and Gray to address the deputy's policy violation with him while concluding that neither a PREA violation nor actionable sexual harassment had occurred. Even if the Court were to credit Plaintiff's newly minted allegation that he masturbated at Deputy Aper's request, such would not support a Fourteenth Amendment Claim against Lindquist, Gray, and Youker; where it is clear that he did not convey that claim to them, and they had every reason to believe that they were dealing with an isolated comment.

Plaintiff's allegation that Deputy Aper continued working on the same floor of the jail that Plaintiff was housed in also does not create a claim against Lindquist, Gray, or Youker where Plaintiff does not claim that he was ever again sexually harassed or otherwise mistreated by the deputy between the time of the May 12 incident and the deputy's resignation.

Applying the Fourteenth Amendment analysis to the allegations before the Court, the following is clear: (1) Plaintiff was in no way subject to substantial risk of serious harm from the deputy's comment; (2) none of the instant Defendants acted with deliberate indifference to Plaintiff's rights; and (3) that because no substantial risk of serious harm was present, the County Defendants could not have disregarded any such risk of harm. In light of all of this, the conclusions drawn by Lindquist and Gray, and by Youker upon administrative appeal, were not objectively unreasonable. The record reflects not deliberate indifference or conditions that amount to punishment, but rather a thorough investigation and appropriate remedial action.

**iii. Plaintiff's placement in protective custody did not constitute an unconstitutional punishment.**

A pretrial detainee may not be subjected to conditions or restrictions that amount to punishment before an adjudication of guilt.[30] Not every restriction imposed during pretrial detention amounts to punishment in the constitutional sense.[31] Where there is no express intent to punish, a restriction does not constitute unconstitutional punishment if it is rationally related to a legitimate governmental objective and is not excessive in relation to that purpose.[32] Here, Plaintiff expressed that he was in fear for his safety before he was placed in protective custody. His placement therefore reasonably related to the legitimate, nonpunitive objective of protecting him from the danger he reported.[33] Nothing in the allegations suggests that the placement was arbitrary, purposeless, or excessive in relation to that objective. Accordingly, Plaintiff has not plausibly alleged that his placement in protective custody amounted to unconstitutional punishment in violation of the substantive due process clause.

**c. The Pleadings Demonstrate that Plaintiff is Not Entitled to Relief for a First Amendment Retaliation Claim Against Youker.**

The Court allowed Plaintiff to proceed on a First Amendment Retaliation claim solely against Captain Youker. The Amended Complaint fails to state a claim for First Amendment retaliation where it does not state a plausible claim that a desire to punish Plaintiff for the report of harassment was the catalyst for Plaintiff's placement in protective custody, Youker's testimony in other court proceedings, Plaintiff's subsequent placement in segregated housing, or the alleged restrictions on Plaintiff's mail and religious exercise.[34]

---

[30] Friedman v. Parker, 573 F. Supp. 3d 1221, 1227-28 (M.D. Tenn. 2021) (citing Bell v. Wolfish, 441 U.S. 520, 536-37 (1979)).
[31] Bell, 441 U.S. at 537.
[32] Id. at 538-39 (citations omitted).
[33] Id. at 540. (explaining that jails have a legitimate government interest in maintaining security and order in the institution).
[34] The allegations concerning Youker's testimony in other court proceedings, Plaintiff's subsequent placement in segregated housing, and the restrictions on Plaintiff's mail and religious exercise are new allegations that have not been screened by the Court. Out of an abundance of

"To establish a First Amendment retaliation claim, an inmate must 'prove that (1) he engaged in protected conduct, (2) the defendant took an adverse action that is capable of deterring a person of ordinary firmness from continuing to engage in that conduct, and (3) the adverse action was motivated at least in part by the prisoner's protected conduct."[35] Plaintiff has not sufficiently alleged the required elements of a First Amendment retaliation claim.

**i. The Amended Complaint does not plausibly claim that Youker violated the First Amendment.**

Plaintiff's placement in protective custody did not violate the First Amendment. In Thomas v. Simpson, the court held that placement in protective custody is not an adverse action because it would not deter a person of ordinary firmness from filing a grievance, as demonstrated by the plaintiff in that case, who continued to file grievances.[36] The same is true here. Plaintiff filed multiple grievances and lawsuits after his placement in protective custody. (Youker Aff., ¶ 6, Ex. C.) Thus, Youker's conduct did not constitute an adverse action.

Moreover, the allegation that Captain Youker's decision to place Plaintiff in protective custody was motivated, even in part, by a desire to punish Plaintiff for his May 12, 2024 grievance, is simply not a plausible allegation for Iqbal and Twombly purposes. Captain Youker did not make the decision to place Plaintiff in protective custody because some of his grievances contained references to the PREA; but rather because Plaintiff constantly expressed concerns about his safety in both written and oral form. Plaintiff's handwritten grievance explicitly stated, with emphasis

---

caution, the County Defendants address these new allegations but alternatively request that the Court screen these claims. See fn 8, supra.

[35] Kratochvil v. Strada, NO. 3:24-cv-01042, 2026 U.S. Dist. LEXIS 71687, at * 17 (M.D. Tenn. 2026) (citing Hill v. Lappin, 630 F.3d 468, 472 (6th Cir. 2010)) (citation omitted).

[36] Thomas v. Simpson, No. 00-2490-MI/A, 2000 U.S. Dist. LEXIS 23893, at * 5-6 (W.D. Tenn. 2000).

added, that Plaintiff was in fear for his safety. (Youker Aff., ¶ 4, Ex. A.) Thus, Youker's decision to place Plaintiff in protective custody was not motivated by Plaintiff's protected conduct.[37]

Further, Youker's testimony in other court proceedings, the restrictions on Plaintiff's mail, and Plaintiff's housing placement were not motivated by any protected conduct by Plaintiff. Youker testified because he was called by the State to testify regarding Plaintiff's conduct while incarcerated. Likewise, the restrictions on Plaintiff's mail were imposed only after the court determined that Plaintiff was abusing the jail's communication system. (State v. Gordon, Williamson County Criminal Court, Order 8.22.2025.) When Plaintiff continued to abuse those systems, the court again ordered that his communications be limited to legal mail. (State v. Gordon, Williamson County Criminal Court, 4.23.2026 Order Regarding Defendant's Communications.) Plaintiff's subsequent housing placement was similarly based on his continued misuse of the communication systems. (Youker Aff., ¶ 8, Ex. E.) Thus, Youker's testimony, the restrictions on Plaintiff's mail, and Plaintiff's housing placement were each the result of court proceedings and orders, not a response to any constitutionally protected activity.

Finally, the alleged restrictions on Plaintiff's religious exercise were not motivated by any protected conduct by Plaintiff. Plaintiff alleges that Youker seized all Bibles on January 18, 2025 as retaliation. (DE 77.) Because Plaintiff alleges that all Bibles in the jail were confiscated, the same alleged action necessarily applied to all inmates. This uniform treatment undermines any inference that Youker singled out Plaintiff in retaliation for protected conduct.

[37] The fact that Plaintiff refers to his housing assignment as "the hole" in a conclusory fashion does not change the outcome. Plaintiff does not describe conditions of confinement consistent with "solitary confinement" and in fact, Plaintiff's own consistent use of the grievance system and filings in this Court on both his own and other inmate's behalf make clear that he was not isolated, nor was he restricted in his communications beyond what was required by state court orders.

Accordingly, none of the alleged actions constitute retaliation in violation of the First Amendment.

**ii. Even if Youker's conduct amounted to a constitutional violation, such was not clearly established.**

In Hill v. Lapin, the plaintiff alleged prison officials retaliated against him for filing grievances against prison staff by placing him in segregated housing and threatening to transfer him to a lock-down unit in another facility.[38] The Sixth Circuit held that placement in segregated housing environment may constitute an adverse action when the placement results in increased restrictions and fewer privileges.[39] Further, the Court concluded that the plaintiff sufficiently alleged a retaliatory motive based on three factors.[40] First, he was placed in segregated housing immediately after filing a grievance against a staff member.[41] Second, other inmates involved in the same investigation were returned to general population.[42] Third, the officers allegedly told the plaintiff they did not need the additional "paper-work" and that one officer would personally prepare the investigative report to ensure that the plaintiff was transferred.[43] Based on all of those allegations, the Court concluded that the plaintiff's retaliation claim could proceed.[44]

Youker did not violate any clearly established law. Plaintiff claims that he was placed in involuntary segregation because he filed a complaint alleging sexual abuse by a deputy. The record reflects otherwise. Plaintiff was placed in protective custody only after filing multiple grievances stating that he feared for his safety. (Youker Aff., ¶ 6, Ex. C.) Plaintiff later filed grievances

---

38 Hill, 630 F.3d at 469-470.
39 Id. at 474-75.
40 Id. at 476.
41 Id. (citing Holzemer v. City of Memphis, 621 F.3d 512, 526 (6th Cir. 2010) (noting that temporal proximity alone is not always enough to prove a retaliatory motive).
42 Hill, 630 F.3d at 476.
43 Id.
44 Id.

requesting a housing change and repeatedly referred to his own housing status as protective custody. (Youker Aff., ¶ 6, Ex. C.)

Even accepting Plaintiff's characterization of his placement as involuntary segregation, no clearly established law holds that placing an inmate in segregated housing in response to repeated statements that he feared for his safety violates the First Amendment. Indeed, at least one middle district decision has noted that protective custody status is not an adverse action for such purposes. Plaintiff relies primarily on the timing of his placement, asserting that he was moved shortly after making allegations against the deputy. But temporal proximity alone is generally insufficient to establish retaliatory motive, particularly where the record reflects an independent reason for the housing decision. Youker specifically informed Plaintiff that he had been placed in protective custody because of his expressed concerns for his safety. (Youker Aff., ¶ 6, Ex. C.) These facts are materially different from Hill, where the plaintiff alleged not only temporal proximity but also disparate treatment and statements by officers directly suggesting that his transfer was motivated by his grievances. No similar evidence of retaliatory motive exists here. Even if placing Plaintiff in protective custody after he expressed concerns for his safety could constitute a constitutional violation, such is not clearly established.

Nor is there any clearly established law holding that jail officials violate an inmate's constitutional rights by changing his housing assignment to better facilitate compliance with a state court order. Plaintiff attempts to characterize his housing placement as solitary confinement, but the record again reflects the opposite. Plaintiff is housed in a smaller pod with other inmates and is not confined alone. (Youker Aff., ¶ 8, Ex. E.) The record also does not support a retaliatory motive. Although Plaintiff claims he was placed in solitary confinement solely in retaliation, his housing assignment was changed after the state court entered an order restricting his

communication. (Youker Aff., ¶ 8, Ex. E.) Thus, the housing change was tied to compliance with the court's order, not retaliation.

Accordingly, Judgment on the Pleadings is proper as to the First Amendment Retaliation Claim against Youker.

#### d. The Pleadings Demonstrate that Plaintiff is Not Entitled to Relief for a Fourteenth Amendment Procedural Due Process Violation

"To state a claim for a procedural due process violation under Section 1983, a plaintiff must establish that he had a protected liberty or property interest, and that the defendants deprived him of that interest without due process."[45] Inmates have a very limited liberty interest in the manner and restrictiveness of their housing while incarcerated.[46] A protected liberty interest generally arises only when the conditions of confinement impose an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.[47] This standard is not easily met.[48] In determining whether a particular placement implicates a protected liberty interest, courts consider the nature of the conditions and the duration of the segregation.[49] Placement in segregation for administrative, rather than disciplinary, reasons generally does not implicate a protected liberty interest.[50]

Here, Plaintiff alleges that he was placed in involuntary segregation because he filed a report of sexual abuse. (DE 77.) However, Plaintiff was placed in protective custody after stating

---

[45] Montgomery v. Gentry, No. 3:20-cv-00406, 2020 U.S. Dist. LEXIS 273931, at * 10 (M.D. Tenn. 2020) (citing Hahn v. Star Bank, 190 F.3d 708, 716 (6th Cir. 1999)).
[46] Jones v. Mays, No. 3:21-cv-00666, 2024 U.S. Dist. LEXIS 148746, at *12 (M.D. Tenn. 2024) (citing Sandin v. Conner, 515 U.S. 472, 485 (1995)).
[47] Montgomery v. Gentry, 2020 U.S. Dist. LEXIS 273931, at * 10-11 (citing Sandin, 515 U.S. at 484).
[48] Jones, 2024 U.S. Dist. LEXIS 148746, at 13.
[49] Montgomery, 2020 U.S. Dist. LEXIS 273931, at 11. (citing Harden-Bey v. Rutter, 524 F.3d 789, 796 (6th Cir. 2008)).
[50] Montgomery, 2020 U.S. Dist. LEXIS 273931, at 11. (citing Jones v. Baker, 155 F.3d 810, 812 (6th Cir. 1998)).

that he feared for his safety. (Youker Aff., ¶ 6, Ex. C.) Placement in protective custody under those circumstances does not constitute an atypical and significant hardship in relation to the ordinary incidents of prison life. Moreover, Plaintiff remained in protective custody for only approximately three months. This duration is not sufficiently lengthy to constitute an atypical and significant hardship.[51] Accordingly, Plaintiff's placement in protective custody did not implicate a protected liberty interest.

Even assuming arguendo that Plaintiff's confinement in protective custody implicated a protected liberty interest, Plaintiff has not sufficiently alleged a denial of procedural due process. When confinement in segregation implicates a liberty interest, an inmate is entitled to periodic review of that placement.[52] Here protective custody placements were reviewed quarterly. (Youker Aff., ¶ 6, Ex. C.) Plaintiff was also able to challenge his confinement through the grievance and request processes while in protective custody and, in fact, did so. (Youker Aff., ¶ 6, Ex. C.) After filing a request to be removed from protective custody, Plaintiff was informed that protective custody reviews were conducted quarterly. (Youker Aff., ¶ 6, Ex. C.) When the next round of quarterly reviews arrived, Plaintiff agreed to be released from protective custody, and was so released. (Youker Aff., ¶ 7, Ex. D.) He therefore had an opportunity to raise his concerns and seek review of his placement. Nothing in the Amended Complaint suggests that Plaintiff was prevented

[51] See Jones, 155 F.3d at 812-13 (holding that two years of segregation did not implicate a liberty interest entitling the inmate to due process); Mackey v. Dyke, 111 F.3d 460, 463 (6th Cir. 1997) (holding that 117 days in administrative segregation did not implicate a protected liberty interest). See also Beasley v. Mich. Dep't of Corr., No. 2:25-cv-261, 2026 U.S. Dist. LEXIS 177383, at * 29-30 (W.D. Mich. 2026) (holding that eight months in segregation did not implicate a protected liberty interest because such confinement generally must exceed one year to constitute an atypical and significant hardship).

[52] See Beasley, 2026 U.S. Dist. LEXIS 177383, at * 32. (citations omitted).

from presenting his objections or that he was otherwise denied an opportunity to challenge the basis for his continued confinement.

Therefore, Plaintiff is not entitled to relief for a Fourteenth Amendment Procedural Due Process violation.

**e. The Pleadings Demonstrate that Plaintiff is Not Entitled to Relief for a Fourteenth Amendment Equal Protection Violation**

The Equal Protection Clause of the Fourteenth Amendment provides that no state shall deny any person the equal protection of the laws.[53] To state an equal protection claim, a plaintiff generally must allege that the government treated him differently from similarly situated individuals and that the differential treatment either burdens a fundamental right, targets a suspect class, or lacks a rational basis.[54] Where a plaintiff alleges discrimination based on a protected class, he must also allege that the state actor intentionally discriminated against him because of his membership in that class.[55] Allegations of intentional discrimination must be supported by facts and cannot rest on conclusory assertions.[56]

Plaintiff's only allegation implicating the Equal Protection Clause is that "no other 'similarly situated' inmate has been sexually abused then placed in 'the hole' for reporting the abuse." (DE 77, Amend. Compl., Page ID# 1203.) Plaintiff does not allege that he is a member of a protected class. Even construing the Amended Complaint liberally as alleging discrimination based on his status as either an inmate or a victim of sexual abuse, neither classification is a suspect or quasi-suspect class entitled to heightened scrutiny.[57] Nor does Plaintiff's placement in protective

---

[53] U.S. Const. amend XIV, § 1.
[54] ARJN #3, 517 Supp. 3d 732, 748 (M.D. Tenn. 2021) (citations omitted).
[55] Whiteside v. Smith, No. 22-1071-SHM-tmp, 2023 U.S. Dist. LEXIS 117315, at *12 (W.D. Tenn. 2023).
[56] Whiteside, 2023 U.S. Dist. LEXIS 117315, at *12.
[57] See Pennington v. Crews, No. 3:23CV-P132-JHM, 2024 U.S. Dist. LEXIS 230642, at *8 (W.D. Ky. 2024) (citations omitted); See also Doe v. City of Memphis, 928 F.3d 481, 487 (6th Cir. 2019)

custody implicate a fundamental right. Accordingly, the placement is subject only to rational basis review.[58] Plaintiff has not plausibly alleged that his placement lacked a rational basis to a legitimate governmental interest. To the contrary, the record reflects that Plaintiff expressed fear for his safety, and he was placed in protective custody for his protection. His placement therefore bore a rational relationship to the legitimate interest in maintaining inmate safety and security.

Accordingly, Plaintiff has not plausibly established a violation of his rights under the Equal Protection Clause of the Fourteenth Amendment.

## V. Conclusion

For the foregoing reasons, Youker, Hughes, Lindquist and Gray respectfully request that their Motion for Judgment on the Pleadings be granted.

Respectfully submitted,

***/s/ Emmerson Y. Marlatt***

Robert M. Burns, #15383
Emmerson Y. Marlatt, #42797
HOWELL & FISHER, PLLC
3310 West End Avenue, Suite 550
Nashville, TN 37203
rburns@howell-fisher.com
emarlatt@howell-fisher.com
*Attorneys for the Williamson County Defendants*

*(Certificate of Service on Next Page).*

---

(citation omitted) (requiring sexual assault victims alleging equal protection violations to establish that gender discrimination motivated the disparate treatment); Mazzeo v. Gibbons, No. 2:08-cv-01387-RHL-PAL, 2010 U.S. Dist. LEXIS 115044, at *21 (D. Nev. October 27, 2010) (holding that membership in a class of "all other sexual assault victims" did not constitute membership in a traditionally suspect class).

[58] ARJN #3, 517 Supp. 3d at 748 (citing Ondo v. City of Cleveland, 795 F.3d 597, 608 (6th Cir. 2015)).

## CERTIFICATE OF SERVICE

I certify that the foregoing was filed electronically on this the 17th day of September, 2026. Notice of this filing will be sent by USPS Mail, postage-prepaid to Plaintiff, to the following address:

Robert C. Gordon
#65920
Williamson County Sheriff's Office
408 Century Court
Franklin, TN 37064

**/s/ *Emmerson Y. Marlatt***
Emmerson Y. Marlatt