UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| ROBERT C. GORDON,<br><br>Plaintiff,<br><br>v.<br><br>CHAD YOUKER et al.,<br><br>Defendants. | Case No. 3:24-cv-01121<br><br>Judge Waverly D. Crenshaw, Jr.<br>Magistrate Judge Luke A. Evans |

To: The Honorable Waverly D. Crenshaw, Jr., District Judge

**REPORT AND RECOMMENDATION**

Defendants Chris Gray, Jeff Hughes, Ashley Lindquist, and Chad Youker (the Moving Defendants) have two motions pending against plaintiff Robert Gordon (Gordon): a motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure (Doc. No. 134); and a motion to sanction Gordon under the Court's inherent authority to sanction vexatious litigants (Doc. No. 110). Gordon opposes both motions. With respect to the motion for judgment on the pleadings, Gordon asserts that the case presents issues of material facts and that his pleadings demonstrate his entitlement to relief.

For the reasons below, the Court respectfully recommends granting the motion for judgment on the pleadings and denying without prejudice the motion for sanctions. The Court additionally recommends dismissing the amended complaint as to defendant Drew Aper (Aper) without prejudice for failure to complete service of process under Rule 4(m).

## I. Background

This case concerns allegations[1] that Aper sexually abused or harassed Gordon and that the Moving Defendants then retaliated against him for complaining about the incident. Gordon is a pretrial detainee at the Williamson County Jail. Gordon was arrested on a domestic violence charge on November 30, 2022. Since his first arrest date, Gordon was booked and released multiple times but has been detained continuously since September 1, 2023 following a revocation of his bond. (Doc. No. 112 at 2.)

According to the amended complaint, the events giving rise to this case began on May 12, 2024, when Aper verbally ordered Gordon to masturbate in the shower while Aper watched. (Doc. No. 77 at 6.) Gordon complied but reported the incident by 11:30 AM the same day. (*Id.*) Defendants investigated the incident, disciplined Aper, and concluded that no further action was necessary. (Doc. No. 77 at 6.)

On May 23, 2024, defendants placed Gordon in solitary confinement. (Doc. No. 77 at 6.) Gordon wrote to defendants to express concern that Aper was working in the solitary confinement area. (Doc. No. 77 at 7.) In June 2024, defendants punished Gordon in an unspecified way for submitting an unspecified freedom of information request. (Doc. No. 77 at 7.) Defendants also placed Gordon in protective custody because Gordon had expressed concerns about his safety. (Doc. No. 77 at 7.) Gordon returned to the general population in August 2024. (Doc. No. 77 at 7.) According to the amended complaint, Gordon's custody status changed two more times in 2026. In March 2026, defendants returned Gordon to protective custody "for obtaining a Bible from church with [the] permission of [the] minister" after a seizure of Bibles that defendants conducted

---

[1] For the sake of brevity in summarizing the background, and consistent with Rule 12, the Court will avoid repeated use of the terms "alleged" and "allegedly." Nothing in this Background section constitutes a finding of fact unless otherwise noted.

in 2025. (Doc. No. 77 at 7–8.) In April 2026, defendants placed Gordon in solitary confinement; the explanation is difficult to understand, but the assertion appears to be that the placement was retaliation for complaining previously about Aper's conduct and for complaining about a seizure of legal mail for use as exhibits in Gordon's state criminal case. (Doc. No. 77 at 8.) Gordon did not provide details of the use of his mail.

In the amended complaint, Gordon proceeds from his asserted chronology of events to an "Argument" section, which is not consistent with the directive in Rule 8 to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Nonetheless, and consistent with the screening of similar constitutional allegations in the original complaint (Doc. No. 10), the Court construes the amended complaint liberally to contain three claims under 42 U.S.C. § 1983: 1) sexual abuse or harassment in violation of the Due Process Clause of the Fourteenth Amendment; 2) retaliation in violation of the First Amendment; and 3) violations of due process or equal protection under the Fourteenth Amendment.

The Moving Defendants filed the pending motion for judgment on the pleadings on September 17, 2026, asserting qualified immunity. The Moving Defendants argue that the sexual abuse or harassment in question, as Gordon pled it, does not rise to the level of a constitutional violation because it was a single event involving a verbal altercation only and no physical contact. (Doc. No. 135 at 11–12.) The Moving Defendants argue further that Gordon's Fourteenth Amendment claim against them should be dismissed because Gordon has not alleged the personal involvement of anyone other than Aper. (Doc. No. 135 at 12–13.) Gordon also has not pled a Fourteenth Amendment violation, according to the Moving Defendants, because his custody placements addressed his safety concerns and because they did investigate the information that Gordon provided to them through the May 12, 2024 incident report. (Doc. No. 135 at 13–16.) With

respect to First Amendment retaliation, the Moving Defendants argue that there is no clearly established law stating that segregating Gordon in response to his own stated safety concerns or restricting communication in response to state court orders[2] creates a constitutional violation. (Doc. No. 135 at 17–21.) To the extent that the amended complaint can be read to include a claim for Fourteenth Amendment procedural due process violations, the Moving Defendants argue that no constitutional violations occurred because placing Gordon in more restricted custody occurred in response to Gordon's safety concerns and was reviewed quarterly. (Doc. No. 135 at 21–22.) Finally, to the extent that the amended complaint can be read to include a Fourteenth Amendment equal protection violation, the Moving Defendants argue that Gordon has not plausibly pled that he was a member of a protected class or that his placements in more restricted custody lacked a rational basis. (Doc. No. 135 at 23–24.)

Gordon opposes judgment on the pleadings for reasons that sound like evidence-based opposition to summary judgment. Gordon asserts that the case presents issues of material facts and that his pleadings demonstrate his entitlement to relief. (Doc. No. 151 at 1.) Gordon argues that he has proven retaliation by demonstrating that the Moving Defendants could have changed his custody to place him in many other areas but chose to place him in the same area as Aper to punish him for reporting sexual abuse. (Doc. No. 151 at 2.) Gordon also believes that he "has met his burden of establishing that his protected conduct was a 'motivating factor' behind harm." (Doc. No. 151 at 2.) Gordon argues that he has established that the Moving Defendants would not have

---

[2] On August 22, 2025, Williamson County Circuit Court issued an order in Gordon's state criminal case finding that Gordon abused the jail communication system. (Doc. No. 135-1.) The order restricted Gordon's jail communications in certain ways. On April 24, 2026, the state court issued another order restricting communications further to enforce its previous order. (Doc. No. 135-2.) The restrictions included allowing legal and non-legal mail communication only with people on a pre-approved list. (*Id.* at 2.)

placed him in solitary confinement in the absence of the reports and grievances that he filed. (Doc. No. 151 at 3.) With respect to interference with legal mail, Gordon accuses the Moving Defendants of misrepresenting state court orders that allowed him more communication than he had previously. (Doc. No. 152 at 3.)

Although a motion for judgment on the pleadings focuses on allegations as pled, the Court notes that it previously assessed Gordon's likelihood of success on the merits of the amended complaint when it addressed multiple motions from Gordon for injunctive relief. (Doc. No. 102.) In a report and recommendation that issued on June 9, 2026, the Court concluded that Gordon was unlikely to succeed on his First Amendment retaliation claim in large part because changes in his custody status occurred in response to his expression of safety concerns. (Doc. No. 102 at 8–9.) Gordon's Fourteenth Amendment claims were unlikely to succeed because Gordon did not belong to a protected class and had access to adequate grievance and review procedures. (Doc. No. 102 at 9–13.) Gordon's claims about interference with communications were likely to fail because certain restrictions resulted from the state court orders and because his numerous filings clearly showed that he was able to send and to respond to correspondence including filings in this case. (Doc. No. 102 at 14–15.) The District Judge adopted the report and recommendation in its entirety. (Doc. No. 125.)

## II. Discussion

### A. Motion for Judgment on Pleadings Generally

The standard for a motion under Rule 12(c) is the same as the standard for a motion under Rule 12(b)(6). *Donovan v. FirstCredit, Inc.*, 983 F.3d 246, 252 (6th Cir. 2020) (citations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). "We are required to construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff. Nevertheless, we need not accept as true any conclusory legal allegations that do not include specific facts necessary to establish the cause of action. The plaintiff's complaint instead must contain either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory." *Bickerstaff v. Lucarelli*, 830 F.3d 388, 396 (6th Cir. 2016) (internal quotation marks and citations omitted). While pro se litigants like plaintiff must follow all procedural rules like any other litigants, *Matthews v. Copeland*, 286 F. Supp. 3d 912, 915 (M.D. Tenn. 2017) (citations omitted), they are allowed a more liberal interpretation of their complaints under less stringent standards than formal pleadings drafted by lawyers. *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (citations omitted).

The Court also must review the principles governing the documents that that parties have filed so far in the record. "When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (citation omitted); *accord Wyser-Pratte Mgmt. Co. v. Telxon Corp.*, 413 F.3d 553, 560 (6th Cir. 2005) ("In addition to the allegations in the complaint,

the court may also consider other materials that are integral to the complaint, are public records, or are otherwise appropriate for the taking of judicial notice.") (citations omitted). "While documents integral to the complaint may be relied upon, even if they are not attached or incorporated by reference, it must also be clear that there exist no material disputed issues of fact regarding the relevance of the document." *Ouwinga v. Benistar 419 Plan Servs., Inc.*, 694 F.3d 783, 797 (6th Cir. 2012) (internal quotation marks and citation omitted).

In the specific scenario of a Rule 12 motion that raises the defense of qualified immunity, the Court has an additional reason to review exhibits in the record that are integral to the complaint and that plaintiff has cited directly or indirectly. "Qualified immunity isn't just a defense to liability—it's immunity from the costs and burdens of suit in the first place. If officers are entitled to qualified immunity and don't receive it at the earliest possible stage, then they lose its protections for as long as they continue to litigate." *Bell v. City of Southfield, Michigan*, 37 F.4th 362, 364 (6th Cir. 2022) (citations omitted). To the extent that exhibits in the record would confirm the propriety of awarding qualified immunity, they must either be undisputed or so clearly establish threshold facts that they blatantly contradict or utterly discredit plaintiff's version of events. *See Scott v. Harris*, 550 U.S. 372, 380 (2007) (party opposing summary judgment not entitled to favorable treatment of its factual narrative if that narrative "is blatantly contradicted by the record"); *Bailey v. City of Ann Arbor*, 860 F.3d 382, 387 (6th Cir. 2017) (denial of qualified immunity reversed; where the plaintiff's "pleadings internally contradict verifiable facts central to his claims, that makes his allegations implausible") (citation omitted).

Applying these principles, the Court has considered some of the parties' documents as integral to the amended complaint:

- The Court has reviewed Gordon's original May 12, 2024 grievance (Doc. No. 136-1) to confirm the description in the amended complaint that no physical contact occurred between Gordon and Aper and to confirm the references in the amended complaint to the Moving Defendants' stated reasons for changing Gordon's custody status—namely, that Gordon expressed fear for his safety because of jail staff.
- The Court additionally has considered the jail incident report that the Moving Defendants prepared in response to Gordon's May 12, 2024 grievance. (Doc. No. 136-2.) The Court has considered the jail incident report for the limited purpose of confirming the chronology of events that Gordon asserted in the amended complaint, *i.e.*, that Aper received disciplinary action for having his body camera off during the alleged incident; but that the Moving Defendants otherwise concluded that whatever happened was an isolated incident that did not implicate the Prison Rape Elimination Act of 2003 (PREA), 34 U.S.C. §§ 30301–30309.
- The Court has considered Gordon's appeal of his May 12, 2024 grievance (Doc. No. 136-3) for the limited purpose of confirming, as described in the amended complaint, that Gordon raised concerns about his safety multiple times and that the Moving Defendants reacted by telling Gordon, "Due to you being in fear for your safety, you have been placed on Protective Custody Status. This will assist us and you by reducing the interaction in which you have with staff so you will not feel threatened." (*Id.* at 6.) *Cf., e.g., Brown v. Am. Econ. Ins. Co.*, No. 1:25-CV-00834, 2025 WL 2959652, at *3 (N.D. Ohio Oct. 20, 2025) (considering email and letter correspondence attached to the complaint and central to the plaintiff's claims); *Johnson v. United States*, No. 216CV02126JTFDKV, 2017 WL 4570317, at *3 (W.D. Tenn. Mar. 31, 2017)

(considering medical records attached to the complaint "because they are, implicitly, incorporated into the complaint and because they are central to the claim that is asserted").

- As for state court records, the Court has considered the Williamson County Circuit Court orders of August 22, 2025 and April 24, 2026 because they are integral to Gordon's multiple references in the amended complaint to the Moving Defendants stealing his legal mail, holding that mail, and giving that mail to prosecutors for use in his state criminal case. (*See, e.g.*, Doc. No. 77 at 8.) To the extent that the orders required some level of interference with Gordon's mail communications, they are indirectly cited in the amended complaint and provide a comparison to Gordon's assertion that "on 4/20/26 the [state] court gave Gordon more communication, not less. The court did nothing to Gordon nor was Gordon written up." (Doc. No. 152 at 3.) *See Watermark Senior Living Ret. Communities, Inc. v. Morrison Mgmt. Specialists, Inc.*, 905 F.3d 421, 426 (6th Cir. 2018) (considering a contract, trial motions, a trial transcript, and a jury verdict without the need to convert a motion to dismiss to a motion for summary judgment); *Plassman v. City of Wauseon*, 85 F.3d 629 (6th Cir. 1996) (finding that review of state-court proceedings during a motion to dismiss was permitted and noting that "any federal court may take judicial notice of the proceedings in other courts of record") (citation omitted); *Believe Production, Inc. v. Patterson (In re Patterson)*, No. 1:22-AP-01014-SDR, 2022 WL 3588556, at *4 (Bankr. E.D. Tenn. Aug. 22, 2022) (considering a state court judgment as integral to the complaint) (citations omitted); *Burke v. Radiant Logistics Glob. Servs., Inc.*, No. 08-10581, 2008 WL 2094919, at *3 n.2 (E.D. Mich. May 16, 2008) ("[A] court does not exceed the

permissible bounds of Rule 12(b)(6) by considering records and orders from other judicial proceedings, particularly where the complaint itself makes reference to these other proceedings.") (citations omitted).

### B. Qualified Immunity

Because inquiries regarding qualified immunity often are fact-intensive, "it is generally inappropriate for a district court to grant a 12(b)(6) [or 12(c)] motion to dismiss on the basis of qualified immunity." *Wesley v. Campbell*, 779 F.3d 421, 433 (6th Cir. 2015). Nonetheless, "insubstantial claims against government officials should be resolved as early in the litigation as possible, preferably prior to broad discovery." *Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015) (citation omitted). The standard for qualified immunity at the pleadings stage is as follows:

> Since defendants raised the qualified immunity defense, [plaintiff] bears the burden of showing that defendants are not entitled to qualified immunity. At the pleading stage, this burden is carried by alleging facts making out a plausible claim that defendants' conduct violated a constitutional right that was clearly established at the time of the violation. To satisfy this requirement, the right allegedly violated must have been clearly established in a particularized sense, such that a reasonable official confronted with the same situation would have known that his actions would be in violation of that right. Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery.

*Gavitt v. Born*, 835 F.3d 623, 641 (6th Cir. 2016) (internal quotation marks and citations omitted).

Several factors weigh in favor of qualified immunity for the Moving Defendants. The most factually intensive and inconclusive part of the amended complaint concerns the alleged incident of May 12, 2024. In the jail incident report, the Moving Defendants acknowledged that "[t]he statements from Inmate Gordon and Deputy Aper are conflicting, [and] we are unable to determine the actual statement" (Doc. No. 136-2 at 2) that Aper might have said to Gordon. Aper, though, has not appeared in the case, and Gordon has not pled that the Moving Defendants had any personal involvement in the incident itself. *See Colvin v. Caruso*, 605 F.3d 282, 292 (6th Cir. 2010)

(summary judgment affirmed, where prisoner failed to allege personal involvement of prison officials in asserted constitutional violations); *Dunn v. State of Tennessee*, 697 F.2d 121, 128 (6th Cir. 1982) (dismissal affirmed against government officials who lacked personal involvement).

Gordon also has not plausibly pled that the subsequent investigation of the May 12, 2024 incident occurred in such a way that the investigative process itself violated any clearly established constitutional rights. Gordon filed a grievance; the Moving Defendants investigated the grievance and disciplined Aper; they reviewed camera footage and conducted interviews; and they concluded that the incident was an isolated incident. (Doc. No. 136-2 at 2.) *Cf. Poe v. Haydon*, 853 F.2d 418, 427 (6th Cir. 1988) (denial of summary judgment reversed, where plaintiff "did not have a clearly established constitutional or statutory right to a specific outcome following an investigation of her complaint of sexual harassment") (citation omitted); *Lintz v. Skipski*, 815 F. Supp. 1066, 1070 (W.D. Mich. 1993) (summary judgment awarded to social worker on qualified immunity grounds; social worker acted to protect foster children from alleged abuse, and "the children had a constitutional right to have protective action taken. They did not, however, have a clearly established right to the specific actions plaintiffs claim should have been taken."). In this context, even the most favorable reading of Gordon's allegations shows that Gordon is complaining about the outcome of the investigation. The outcome of the investigation simply does not rise to the level of a constitutional violation. *See Poe*, 853 F.2d at 427–28 ("Whether the results of the investigations were right or wrong is an open question, but it is clear the appellants did not stand idly by once alerted to the possibility of a problem.") (cleaned up).

Gordon's other allegations similarly do not cross the threshold for clearly established constitutional violations. Gordon asserted in the amended complaint that he feared for his safety but did not assert what else the Moving Defendants should have done other than placements in

protective custody with periodic review. *Cf. Fugate v. Philp*, No. C 06-0277 MMC (PR), 2008 WL 3915709, at *14 (N.D. Cal. Aug. 21, 2008) (prison officials entitled to qualified immunity for placing prisoner with sexually violent predator status in protective custody because "even if plaintiff's placement constituted a constitutional violation, defendants could have reasonably, albeit mistakenly, believed that their decision to house plaintiff with penal detainees and/or prisoners in the protective custody unit was lawful"). If anything, the Moving Defendants would have risked liability from not moving Gordon in response to safety concerns. *Cf. Conway v. Snider*, No. 3:20-CV-794-JD, 2022 WL 4016967, at *5 (N.D. Ind. Sept. 2, 2022) (summary judgment to prison unit manager denied, where prisoner complained of threats to safety but manager "denied his protective custody request without ever interviewing him regarding his allegations. Crediting [plaintiff's] version of events, there are disputed material facts regarding whether Unit Team Manager Schneider was deliberately indifferent for rejecting [plaintiff's] protective custody request without conducting an adequate investigation.").

With respect to communication restrictions, the state court orders explicitly established significant restrictions in response to issues that were occurring in Gordon's criminal proceedings. Gordon has not plausibly pled that the Moving Defendants restricted his communications in ways beyond what the state court orders required. *Cf. Treistman ex rel. AT v. Greene*, 754 F. App'x 44, 47 (2d Cir. 2018) (unpublished opinion) (summary judgment on qualified immunity grounds affirmed, where restricting parent's communications during supervised visits with child occurred in part because of a temporary restraining order issued by family court); *Castonguay v. Newton*, No. 8:09CV413, 2012 WL 453241, at *4 (D. Neb. Feb. 10, 2012) (complaint dismissed with prejudice on qualified immunity grounds, where jail officials restricted plaintiff's phone and

outgoing mail privileges "because they were complying with an order from the District Court of Douglas County, Nebraska").

Finally, to the extent that the amended complaint could be read to include allegations under the Fourteenth Amendment, undisputed and integral documentation shows that Gordon had ample opportunities to file grievances and to appeal the outcomes. Gordon also has not plausibly pled that he was a member of a protected class or that the Moving Defendants lacked a rational basis for managing his custody status as they did. *Cf. Wyler v. Connecticut State Univ. Sys.*, 100 F. Supp. 3d 182, 198 (D. Conn. 2015) (summary judgment awarded based on qualified immunity, where university official was not deliberately indifferent to sexual harassment allegations and where official reasonably believed that investigation conducted was reasonably sufficient).

Under the circumstances, Gordon at most has pled that he disagrees with the outcomes of the process and procedures that the Moving Defendants made available to him. Whatever the outcomes should have been, the Moving Defendants' management of the process and procedures did not rise to the level of clearly established constitutional violations. The Court accordingly will recommend dismissal by way of qualified immunity.

**C. Failure to Serve Aper Under Rule 4(m)**

The Court next will address Aper's absence from the case. The screening order for the original complaint (Doc. No. 10) directed Gordon to complete a service packet for the remaining defendants including Aper. Gordon completed the packet, using the jail address for Aper, but service was ineffective because Aper no longer worked at the jail. (Doc. No. 16 at 12.) Gordon completed a second service packet for Aper using a different address, but the second summons returned unexecuted as well. (Doc. No. 38 at 1.)

On February 25, 2026, Gordon wrote a letter to the Court asking for guidance on how to obtain Aper's address (Doc. No. 41); the letter effectively sought legal advice that the Court could

not provide. *See Nunn v. Michigan Dep't of Corr.*, No. 17-10818, 2019 WL 6210890, at *1 (E.D. Mich. Oct. 28, 2019) ("[N]otwithstanding that Marshals service is ordered, it is the prisoner-plaintiff's responsibility to properly identify a defendant in the complaint, and to provide a proper address for service.") (citations omitted), *report and recommendation adopted sub nom. Nunn v. Henderson*, No. 17-10818, 2019 WL 6174371 (E.D. Mich. Nov. 20, 2019).

Gordon filed a motion to compel Aper's contact information on March 13, 2026 (Doc. No. 47), but the Court denied it for failure to follow the requirement in Local Rule 37.01 to confer in good faith with the other parties and to file a joint discovery dispute statement if necessary. (Doc. No. 64 at 10.) Gordon filed another motion to compel contact information on May 13, 2026 (Doc. No. 78), but the Court denied it for the same noncompliance with Local Rule 37.01. (Doc. No. 102 at 17.) A third summons that Gordon prepared for Aper using a new address issued after the filing of the amended complaint but returned unexecuted. (Doc. No. 148.) The United States Marshals Service noted on the unexecuted summons that an attempt at service by certified mail failed and that an attempt at personal service uncovered that the address that Gordon provided was an abandoned house. (*Id.* at 1.)

"If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m). The time to serve Aper with the amended complaint has expired; additionally, this case is over two years old, and Gordon still has not identified a correct address that the Marshals Service can use for service of process. *See Donaldson v. United States*, 35 F. App'x 184, 185 (6th Cir. 2002) (unpublished opinion) ("[W]here a plaintiff is proceeding as a pauper, the district court bears the responsibility for issuing the plaintiff's process to a United States Marshal who must effect service

upon the defendants *once the plaintiff has properly identified the defendants in the complaint*.") (emphasis added) (citations omitted); *Peters v. Peters*, No. 1:24-CV-01150, 2025 WL 361181, at *1 (W.D. Mich. Jan. 10, 2025) (dismissal without prejudice for failure to locate a defendant), *report and recommendation adopted*, No. 1:24-CV-1150, 2025 WL 358965 (W.D. Mich. Jan. 31, 2025). Under the circumstances, this recommendation will serve as notice to Gordon under Rule 4(m), and the Court will recommend dismissing the amended complaint against Aper but without prejudice.[3]

**D. Motion for Sanctions**

The Court will address the Moving Defendants' motion for sanctions only briefly. The Moving Defendants have acknowledged that the motion "is substantially similar to a brief previously filed by separate counsel in a case involving the same Plaintiff and one of the same Defendants. *See Gordon v. Youker*, M.D. Tenn. Case No. 3:26-cv-00046, DE 37." (Doc. No. 111 at 1 n.1.) Given the recommended dismissal of this case and the continuation of the newer case that the Moving Defendants have cited, there is no need to conduct an extensive review of the sanctions arguments twice. The newer case additionally will cover a more complete history of Gordon's allegedly sanctionable conduct by the time the motion there is adjudicated. Consequently, the Court will recommend denying the motion for sanctions here but without prejudice to pursue it in the newer case that the Moving Defendants have cited.

---

3 The Court is mindful that, depending on timing and the nature of Gordon's claims, dismissal without prejudice effectively might be with prejudice if any claims against Aper turn out to be time-barred. After two years, however, of failed attempts to locate a correct address, no other remedy will help. *See Thompson v. Cheatham Cnty. Jail*, No. 3:18-CV-00227, 2019 WL 6887180, at *5 n.3 (M.D. Tenn. Oct. 15, 2019) (de facto dismissal with prejudice "would not change the outcome" of a failure to prosecute) (citations omitted), *report and recommendation adopted*, No. 3:18-CV-00227, 2019 WL 6873913 (M.D. Tenn. Dec. 17, 2019).

## III. Recommendation

For all of the foregoing reasons, the Court respectfully recommends as follows:

1) The Court recommends GRANTING the Moving Defendants' motion for judgment on the pleadings (Doc. No. 134).

2) The Court recommends DISMISSING the amended complaint as against defendant Aper under Rule 4(m).

3) The Court recommends DENYING WITHOUT PREJUDICE the Moving Defendants' motion for sanctions (Doc. No. 110).

Any party has fourteen days after being served with this Report and Recommendation to file specific written objections. Failure to file specific objections within fourteen days of receipt of this Report and Recommendation can constitute a waiver of appeal of the matters decided. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004). A party who opposes any objections that are filed may file a response within fourteen days after being served with the objections. Fed. R. Civ. P. 72(b)(2).

Entered this 8th day of October, 2026.

LUKE A. EVANS
United States Magistrate Judge